## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE WRIGHT & FILIPPIS, LLC DATA SECURITY BREACH LITIGATION | Case No: 2:22-cv-12908-SFC |
|  | Hon. Sean F. Cox |
|  | **CLASS ACTION** |
|  | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Chiquita Braggs, Scott Hamilton, Diane Huff, Shawn Kolka, and Craig Mejia (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, move this Court, pursuant to Federal Rule of Civil Procedure 23, for an Order granting preliminary approval of the proposed class action Settlement Agreement agreed to by the Parties.[1] This Motion seeks preliminary approval of Plaintiffs' agreement with W&F to settle all individual and class claims that were made, or that could have been made, in Plaintiffs' Consolidated Amended Class Action Complaint. ECF No. 13.

In support of this motion, Plaintiffs rely upon the accompanying Brief in Support, the Declaration of The Miller Law Firm, P.C., Chair of Settlement Class Counsel, which includes the contents of the Settlement Agreement and its supporting documentation, and the Declaration of Epiq Class Action & Claims Solutions, Inc., all in Support of Plaintiffs' Unopposed Motion for Preliminary Approval.

Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the Settlement Class under Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) in connection with the settlement process; (3) provisionally appoint Plaintiffs as representatives of the Settlement Class; (4) provisionally appoint The Miller Law Firm, P.C. as Chair of

---

[1] The Settlement Agreement and its exhibits are included in the accompanying Brief in Support as an exhibit to the Declaration of The Miller Law Firm, P.C.

Settlement Class Counsel and Migliaccio & Rathod LLP, Shub & Johns LLC, and Milberg Coleman Bryson Phillips Grossman, PLLC as Settlement Class Counsel; (5) find that the proposed Settlement is sufficiently fair, reasonable, and adequate to allow dissemination of notice of the settlement to the proposed Settlement Class by a settlement administrator; (6) appoint Epiq Class Action & Claims Solutions, Inc. as Settlement Administrator; (7) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice") and direct distribution of the Proposed Notice; (8) establish dates for a hearing on final approval of the proposed Settlement, Plaintiffs' service awards and Plaintiffs' Counsel's request for attorneys' fees and expenses; and (9) establish a deadline for the filing of objections by Settlement Class Members and for them to exclude themselves from the proposed Settlement Class with respect to the settlement.[2]

Pursuant to Local Rule 7.1(a)(1), on September 28, 2023, Plaintiffs' Counsel requested concurrence in the filing of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement from Defendant Wright & Filippis, LLC. Counsel for Wright & Filippis advised counsel for Plaintiffs that Wright & Filippis does not oppose the relief requested in the filing of the above Motion.

---

[2] A Proposed Order is included as an exhibit to Plaintiffs' accompanying Supporting Brief.

Dated: October 13, 2023                    Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Emily E. Hughes (P68724)
**THE MILLER LAW FIRM**
950 W. University Drive, Suite 300
Rochester, MI 48307
T: (248) 841-2200
epm@millerlawpc.com
eeh@millerlawpc.com

*Proposed Chair of Settlement Class
Counsel*

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H. St. NE, Suite 302
Washington, DC 20002
T: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

*Proposed Settlement Class Counsel*

Jonathan Shub
Benjamin F. Johns
Samantha E. Holbrook
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Ste 400
Conshohocken, PA 19428
T: (610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

*Proposed Settlement Class Counsel*

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
T: (866) 252-0878
gklinger@milberg.com

*Proposed Settlement Class Counsel*

Kevin J. Stoops (P64371)
**SOMMERS SCHWARTZ, PC**
One Towne Square, Suite 900
Southfield, MI 48076
T: (248) 355-0300
kstoops@sommerspc.com

**LYNCH CARPENTER LLP**
Gary F. Lynch
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T: (412) 253-6307
gary@lcllp.com

Adam G. Taub (P48703)
**ADAM TAUB ASSOC. CONSUMER
LAW GROUP**
17200 W. Ten Mile Road, Suite 200
Southfield, MI 48075
T: (248) 746-3790
adamgtaub@clgplc.net

**MASON LLP**
Gary E. Mason
Danielle Lynn Perry
5101 Wisconsin Avenue NW, Ste 305
Washington, DC 20016
T: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com

Edmund S. Aronowitz (P81474)
**ARONOWITZ LAW FIRM PLLC**
220 S. Main St, Suite 305
Royal Oak, MI 48067
T: (248) 716-5421
edmund@aronowitzlawfirm.com

**WILSHIRE LAW FIRM PLC**
Thiago Coelho
Jonas P. Mann
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010
T: (213) 381-9988
thiago@wilshirelawfirm.com
jmann@wilshirelawfirm.com

Caleb Marker (P70963)
**ZIMMERMAN REED LLP**
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Telephone: (877) 500-8780
caleb.marker@zimmreed.com

Brian C. Gudmundson*
Jason P. Johnston*
Michael J. Laird*
Rachel K. Tack*
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
T: (612) 341-0400
brian.gudmundson@zimmreed.com
jason.johnston@zimmreed.com
michael.laird@zimmreed.com
rachel.tack@zimmreed.com

Christopher D. Jennings*
Nathan I. Reiter III
**THE JOHNSON FIRM**
610 President Clinton Ave., Suite 300
Little Rock, AR 72201
T: (501) 372-1300
chris@yourattorney.com
nathan@yourattorney.com

*Additional Plaintiffs' Counsel*
*\*Admission Pending*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE WRIGHT & FILIPPIS, LLC DATA SECURITY BREACH LITIGATION | Case No: 2:22-cv-12908-SFC |
|  | Hon. Sean. F. Cox |
|  | **CLASS ACTION** |
|  | **JURY TRIAL DEMANDED** |

## BRIEF IN SUPPORT OF PLAINTIFFS'
## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

**STATEMENT OF ISSUES PRESENTED**

1. Does the proposed Settlement Class meet Rule 23's requirements for class certification for settlement purposes under Fed. R. Civ. P 23(b)(2) and (b)(3)?

**Plaintiffs' Answer: Yes.**

2. Should the Court appoint The Miller Law Firm, P.C. as Chair of Settlement Class Counsel and Migliaccio & Rathod LLP, Shub & Johns LLC, and Milberg Coleman Bryson Phillips Grossman, PLLC as Settlement Class Counsel?

**Plaintiffs' Answer: Yes.**

3. Should Plaintiffs be appointed as Class Representatives for the Settlement Class?

**Plaintiffs' Answer: Yes.**

4. Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant the dissemination of notice to the proposed Settlement Class?

**Plaintiffs' Answer: Yes.**

5. Should Epiq Class Action & Claims Solutions, Inc. be appointed as Settlement Administrator?

**Plaintiffs' Answer: Yes.**

6. Does the Notice Plan satisfy the requirements of Rule 23 and Due Process?

**Plaintiffs' Answer: Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

- Fed. R. Civ. P. 23

- *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

- *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1884 (2013)

- *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. ("UAW") v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

- *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................1

II.     STATEMENT OF FACTS.....................................................................4

III.    PROCEDURAL HISTORY .......................................................................5

IV.     THE SETTLEMENT TERMS ...................................................................6

V.      ARGUMENT.........................................................................................10

    A.    The Court Should Certify the Proposed Settlement Class .................11

        1.  Rule 23(a) Requirements Are Met for Settlement Purposes..........11

        2.  Rule 23(b) Requirements Are Met for Purposes of Settlement .....14

    B.    The Court Should Appoint Proposed Settlement Class Counsel........16

    C.    The Proposed Settlement is Fundamentally Fair, Reasonable, and
          Adequate and Thus Warrants Preliminary Approval..........................17

        1.  The Rule 23(e)(2) Factors Weigh in Favor of Preliminary
            Approval.........................................................................................18

        2.  The Sixth Circuit's *UAW* Factors Support Preliminary Approval.18

    D.    The Proposed Notice Plan is the Best Practicable ..............................24

VI.     CONCLUSION .......................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)............................................................ 11, 15, 16, 17
*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*,
  133 S. Ct. 1184 (2013)......................................................................11
*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) ....................................................... 13, 15
*Bert v. AK Steel Corp.*,
  2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ...................................20
*Bittinger v. Tecumseh Prods. Co.*,
  123 F.3d 877 (6th Cir. 1997) ...............................................................13
*Breneman v. Keystone Health*,
  No. 1:22-cv-01643 (Pa. Com. Pl. Apr. 11, 2023)..................... 3, 19, 20
*Calloway v. Caraco Pharm. Labs., Ltd.*,
  287 F.R.D. 402 (E.D. Mich. 2012) ....................................................16
*Curry v. SBC Commc'ns, Inc.*,
  250 F.R.D 301 (E.D. Mich. 2008) .....................................................12
*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
  604 F. Supp. 446 (E.D. Pa. 1985).....................................................24
*Fox v. Iowa Health Sys.*,
  2021 WL 826741 (W.D. Wis. Mar. 4, 2021).......................................23
*Garner Properties & Mgmt. v. City of Inkster*,
  2020 WL 4726938 (E.D. Mich. Aug. 14, 2020)................................ 9, 10, 11, 13
*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ...................23
*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ....................................................25
*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ....................................................20
*In re Fed. Skywalk Cases*,
  97 F.R.D. 380 (W.D. Mo. 1983).........................................................24
*In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013).............................................................24
*In re Packaged Ice Antitrust Litig.*,
  2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)....................................18
*In re Target Customer Data Sec. Breach Litig.*,
  No. MDL 14-2522, (D. Minn. Mar. 18, 2015) ....................................24

*In re The Home Depot, Customer Data Sec. Breach Litig.*,
   No. 1:14-MD-2583, ECF No. 181-2 (N.D. Ga. Mar. 7, 2016)............................19
*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   266 F. Supp. 3d 1 (D.D.C. 2017)....................................................................23
*In re Wawa, Inc. Data Sec. Litig.*,
   2021 WL 3276148 (E.D. Pa. July 30, 2021) ................................................22
*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ......................................................... 11, 16
*Kinder v. Nw. Bank*,
   278 F.R.D. 176 (W.D. Mich. 2011)..................................................................12
*Kritzer v. Safelite Solutions, LLC*,
   2012 WL 1945144 (S.D. Ohio May 30, 2012)............................................. 22, 23
*Machesney v. Lar-Bev of Howell, Inc.*,
   317 F.R.D. 47 (E.D. Mich. 2016) ..................................................................15
*Merenda v. VHS of Michigan, Inc.*,
   296 F.R.D. 528 (E.D. Mich. 2013) ................................................................14
*Moeller v. Wk. Publications, Inc.*,
   2023 WL 119648 (E.D. Mich. Jan. 6, 2023) ................................................10
*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
   501 F.3d 592 (6th Cir. 2007) ..........................................................................16
*Properties & Mgmt., LLC v. City of Inkster*,
   333 F.R.D. 614 (E.D. Mich. 2020) ................................................................11
*Sprague v. General Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ..........................................................................13
*Strano v. Kiplinger Washington Eds., Inc.*,
   -- F. Supp. 3d --, 2023 WL 119647 (E.D. Mich. Jan. 6, 2023) ..........................10
*Thacker v. Chesapeake Appalachia, L.L.C.*,
   259 F.R.D. 262 (E.D. Ky. 2009)................................................................. 18, 20
*Thomsen v. Morley Companies, Inc.*,
   639 F.Supp.3d 758 (E.D. Mich. 2022) ............................................................9
*Thomsen v. Morley Companies, Inc.*,
   2023 WL 3437802 (E.D. Mich. May 12, 2023) ..................................................10
*Trombley v. Nat'l City Bank*,
   759 F. Supp. 2d 20 (D.D.C. 2011)....................................................................22
*UAW v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) .................................................................. passim
*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)..........................................................................12

**Other Authorities**

*Manual for Complex Litigation,* § 21.632 (4th ed. 2004)......................................18
*Newberg on Class Actions,* § 11.41 (4th ed. 2002) ................................................18
*Newberg on Class Actions*, § 11:53 (4th ed. 2002) ...............................................25

**Rules**

Fed. R. Civ. P. 23(a)........................................................................................... 11, 14
Fed. R. Civ. P. 23(a)(1)............................................................................................12
Fed. R. Civ. P. 23(a)(2)............................................................................................12
Fed. R. Civ. P. 23(a)(3)............................................................................................13
Fed. R. Civ. P. 23(a)(4)............................................................................................13
Fed. R. Civ. P. 23(b)................................................................................................14
Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 8, 25
Fed. R. Civ. P. 23(e)(1)............................................................................................25
Fed. R. Civ. P. 23(e)(2)............................................................................................18
Fed. R. Civ. P. 23(g)(1)(A)(i-iv)..............................................................................17
Fed. R. Civ. P. 23(g)(1)(B) ......................................................................................17

## I.    INTRODUCTION

This case arises from a data breach[1] (the "Data Breach") experienced by Defendant Wright & Filippis, LLC ("W&F") on or about January 26–28, 2022 involving the potential unauthorized access of Personally Identifiable Information ("PII") of certain individuals. *See* Declaration of The Miller Law Firm, P.C. in support of Plaintiffs' Motion ("Miller Decl."), ¶ 7 (**Exhibit A**). On or about May 2, 2022, W&F discovered that the data breach resulted in the potential unauthorized access of the PII of roughly 877,584 persons. *See, e.g.*, Consolidated Amended Complaint ("CAC"), ¶ 35–40; *see also* Notice of Data Breach, ECF No. 13-2; § II *infra*.

Shortly after W&F publicly disclosed the breach, eight putative class actions were filed in this Court against W&F.[2] Plaintiffs' counsel in these cases have worked collaboratively in prosecuting this matter, joining in the action filed under this case number and filing the operative CAC on February 24, 2023. ECF No. 13.

After the filing of W&F's motion to dismiss the CAC and Plaintiffs' Response (ECF Nos. 25 & 29), the Parties agreed to mediate the case to see whether they could

---

[1] The defined terms have the same definition as set forth in the S.A., dated 8/22/23.
[2] *Braggs v. Wright & Filippis*, No. 22-cv-12908; *Mejia v. Wright & Filippis*, No. 22-cv-12914; *Cullin v. Wright & Filippis*, No. 22-cv-12917; *Thomason v. Wright & Filippis*, No. 22-cv-12946; *Hamilton v. Wright & Filippis*, No. 22-cv-12961; *Kolka v. Wright & Filippis*, No. 22-cv-12982; *Eckel v. Wright & Filippis*, No. 22-cv-13023; & *Hayes v. Wright & Filippis*, No. 23-cv-10428 (consolidated 3/3/23) (the "Related Cases").

reach an early resolution of the matter. To that end, the parties exchanged documents and informal discovery relevant to their claims and defenses.

On August 9, 2023, the Parties participated in a mediation with a neutral, Judge Wayne Andersen (ret.) of JAMS. Miller Decl., ¶ 14. The Parties reached a resolution that – if approved by the Court – will resolve the litigation and provide substantive relief to Settlement Class Members ("SCMs"). The Parties negotiated a Settlement Agreement ("S.A."), providing for a $2,900,000 non-revisionary Settlement Fund ("SF") for the exclusive source of payment to the Settlement Class ("SC"), for Administrative Expenses, Notice, Costs, and any Fee and Service Awards. Miller Decl., ¶ 16; *see also* S.A. § 3.1.

SCMs benefit from the S.A. in many ways, as they may submit a claim for one of the following: (a) up to $5,000 in Documented Loss Payment (*see* S.A. § 3.2(a)); (b) Credit Monitoring and Insurance Services ("CMIS") (*id.* § 3.2(b)); or (c) Cash Fund Payment, a pro rata cash payment (*id.* § 3.2(c)); *see also* § IV *infra*. Any residual funds—after payment of all class benefits, settlement administration fees, attorneys' fees and costs, and service awards—shall be used for a *pro rata* payment to all SCMs who elect to receive a Cash Fund Payment. *See* S.A. § 3.9. The SF is non-revisionary—no funds will revert back to W&F. The S.A. requires W&F to implement measures designed to improve its data security practices. S.A. § 2.1.

The results achieved by the S.A. are outstanding given the litigation risks faced by Plaintiffs and compare favorably with that achieved in other data breach cases, especially given the size of the SC here.[3] Accordingly, Plaintiffs respectfully move this Court enter an Order which does as follows: (1) grant preliminary approval of the S.A.; (2) provisionally certify the SC under Rules 23(b)(2) and 23(b)(3) in relation to the settlement process; (3) provisionally appoint Plaintiffs as representatives of the SC; (4) provisionally appoint The Miller Law Firm, P.C. as Chair of Settlement Class Counsel and Migliaccio & Rathod LLP, Shub & Johns LLC, and Milberg Coleman Bryson Phillips Grossman, PLLC as Settlement Class Counsel; (5) find that the proposed S.A. is sufficiently fair, reasonable, and adequate to allow dissemination of notice of the settlement to the proposed SC by a settlement administrator; (6) appoint Epiq Class Action & Claims Solutions, Inc. ("Epic") as Settlement Administrator ("Administrator"); (7) approve the Notice Plan described in the S.A. and its Exhibits, and the Notice of Class Action and Proposed Settlement ("Proposed Notice") and direct distribution of the Proposed Notice; (8) establish dates for a hearing on final approval of the proposed S.A. and Plaintiffs' Counsel's

---

[3] The S.A. produces a class member result of roughly $3.30 for the 877,584 SCMs. *Cf., e.g.*, *Breneman v. Keystone Health*, No. 1:22-cv-01643 (Pa. Com. Pl. Apr. 11, 2023) (preliminarily approving award of $3.83 for 235,237 class members).

request for service awards, attorneys' fees, and expenses; and (9) establish a deadline for filing of objections requests for exclusion by SCMs from the proposed SC.

## II.   STATEMENT OF FACTS

W&F is a Michigan limited liability company with its principal place of business in Rochester Hills, Michigan. CAC, ¶ 30. Plaintiffs allege that on or about May 2, 2022, W&F observed that its computer network and the sensitive PII of Plaintiffs and the Class had been subject to a cybersecurity attack from January 26–28. *Id.*, ¶ 6. As noted above, the Data Breach involved roughly 877,584 individuals, including W&F patients, customers, current/former employees, and job applicants. *Id.*, ¶¶ 1, 50, 51. The information allegedly compromised in the Data Breach included Class Members' sensitive PII including, but not limited to: Social Security numbers ("SSNs"), first and last names, dates of birth, financial account numbers, health insurance information, and driver's license numbers. *Id.*, ¶ 50–51.

Plaintiffs allege that their PII was compromised due to W&F's negligent acts and omissions and failure to protect the sensitive personal data of SCMs. CAC, *e.g.*, ¶¶ 63, 88, 246. They also contend that W&F unreasonably delayed notifying them after becoming aware of the breach. *Id.* ¶¶ 7, 56, 303. W&F denies these allegations.

Plaintiffs allege that they and the Class have suffered injury as a result of W&F's conduct, including, e.g.: (i) identity theft; (ii) theft of their PII; (iii) imminent injury from fraud; (iv) risks of having compromised confidential medical

information; (iv) damages flowing from delayed notification of the Data Breach; (v) loss of privacy; (vi) out-of-pocket expenses and time-value reasonably expended to mitigate the effects of the Data Breach; (vii) improper access to their credit score, accounts, and/or funds; and (viii) increased costs related to reduced credit score, including costs of borrowing and insurance. *See* CAC, ¶ 144 (full list).

## III.   PROCEDURAL HISTORY

Plaintiff Chiquita Braggs initiated this action against W&F by filing a class action complaint on November 30, 2022. ECF No. 1. Subsequently, seven other Related Cases were filed. After discussion among counsel for the plaintiffs in the Related Cases, on January 9, 2023, the Related Cases Plaintiffs filed a motion to consolidate the cases under this case number. Joint Motion to Consolidate, ECF No. 8. On January 25, 2023, the Court granted this relief. Order Granting Consolidation, ECF No. 9. On February 24, 2023, Plaintiffs filed the CAC. ECF No. 13.

On April 10, 2023, W&F filed a motion to dismiss the CAC; Plaintiffs filed their opposition on May 10. ECF Nos. 25, 29. The Court scheduled oral argument on the motion for July 6, but then vacated the hearing after the parties advised that they had scheduled a mediation with Judge Andersen. *See* ECF Nos. 31, 34.

Prior to the mediation, Plaintiffs served W&F with written questions seeking information relevant to the Data Breach. Miller Decl., ¶ 11. W&F served its own requests for information on each of the Plaintiffs. On August 9, 2023, the Parties

participated in an hours-long mediation with Judge Andersen. *Id.* ¶ 14. The parties were unable to reach a resolution. However, at the conclusion of the mediation, Judge Andersen made a mediator's proposal that was ultimately accepted by both sides on August 14, 2023. *Id.* ¶ 15. The Parties have since negotiated the details of the S.A. and its exhibits, executing the S.A. on October 13, 2023. *See* S.A. generally.

## IV.    THE SETTLEMENT TERMS

*Proposed Settlement Class.* The S.A. will provide substantial relief for the following SC: "all natural persons whose Private Information was compromised in the Data Breach, including all individuals who were sent the Notice of Data Privacy Incident on or around November 18, 2022." S.A. § 1.43 (exclusions *id.*). The SC contains roughly 877,584 individuals. S.A. (Recitals); CAC, ¶ 1.

*The Settlement Fund.* W&F has agreed to create a non-reversionary SF in the amount of $2,900,000, which will be used to make payments to SCMs and to pay the costs of Administration, Costs, and any Fees and Service Awards. S.A. § 3.1. As noted, SCMs may submit a claim for one of the following: (1) *Documented Loss Payment*: SCMs may submit a claim for up to $5,000 and must attest to the loss and submit supporting documentation (S.A. § 3.2(a)); (2) *Credit Monitoring and Insurance Services ("CMIS")*: SCMs may elect 3 years of CMIS, and this benefit will provide at a minimum three credit bureau monitoring services and $1 million in identity theft insurance (S.A. § 3.2(b)); or (3) *Cash Fund Payment*: SCMs may

submit a claim to receive a pro rata Settlement Payment in cash (S.A. § 3.2(c)). Any residual funds after payment of SC benefits, administration and other costs, and any attorneys' and service fees, shall be used to make an equal payment to all SCMs who elected a Cash Fund Payment. *See* S.A. § 3.9 for full conditions.

***Remedial Measures and Security Enhancements.*** W&F has adopted measures to enhance it data security. S.A. § 2.1(1)–(4). These changes will benefit SCMs whose PII remains in W&F's possession as these changes will provide enhanced protection of the Class's PII from unauthorized access.

***Class Notice and Settlement Administration.*** The Parties have selected Epiq as Administrator through a competitive bidding process. Epiq is experienced in administering data breach class claims. S.A. § 1.41; Declaration of Cameron R. Azari, Esq. on Settlement Notice Plan and Notices ("Epiq Decl.") (**Exhibit B** here).

Within 14 days after the issuance of the Preliminary Approval Order, W&F will provide to the Administrator a list of any and all names, addresses, telephone numbers, and email addresses of Class Members that it has in its possession, custody, or control. S.A. § 6.4. Notice will begin within thirty-five (35) days after entry of a Preliminary Approval Order. S.A. § 1.28. Using the list provided by W&F, the Administrator will run the postal addresses of SCMs through the USPS Change of Address database to update any change of address on file. Epiq Decl., ¶ 16. The "Short Notice" will then be mailed to SCMs, and if returned to Epiq with a

7

forwarding address, Epiq will promptly remail it. *Id.* ¶¶ 15–17.

The Administrator also will establish and maintain a Settlement Website ("Website") that will host a traditional "Long Form" notice. S.A. § 6.7; Epiq Decl., ¶ 22. The Notices will refer SCMs to the Website at which SCMs will be able to learn about the S.A. and their rights in relation to it. S.A. § 6.7. The Website shall contain information regarding Claim Form submission (i.e., through the Website) and downloadable documents, including the Long Form Notice, Claim Form, the S.A., the Preliminary Approval Order upon entry by the Court, and the operative CAC, and will notify the SC of the date, time, and place of the Final Approval Hearing. S.A. §§ 6.7, 7.1. The Website shall also provide the number and address to contact the Administrator directly. S.A. § 6.7. The Website shall also allow for submission of Requests of Exclusion through the Website. *Id.*

The Notices will be clear and concise and directly apprise SCMs of claim, objection, and opt-out information. Fed. R. Civ. P. 23(c)(2)(B). The Administrator shall provide 90 days following the Notice Date for submission of Claim Forms. S.A. § 3.4. To the extent any submitted claims are incomplete or deficient, SCMs shall have 30 days to cure. S.A. § 3.5. And within 90 days after: (i) the Effective Date (the date on which all required conditions of the S.A. are satisfied prior to disbursement, *see* S.A. § 10.1); or (ii) all Claim Forms have been processed subject to the terms and conditions of this Agreement, whichever date is later, the

Administrator shall cause funds to be distributed to each SCM who is entitled to funds based on the selection made on their given Claim Form. S.A. § 3.6.

***Attorneys' Fees and Expenses.*** Plaintiffs will also separately seek an award of attorneys' fees not to exceed one-third (1/3) of the SF (i.e., $966,666.66), and reimbursement of reasonable costs and litigation expenses, which shall be paid from the SF. S.A. § 9.1. Class Counsel's fee request is reasonable for settlements of this nature and size. *See, e.g.*, *Thomsen v. Morley Companies, Inc.*, 639 F.Supp.3d 758, 768 (E.D. Mich. 2022) (in data breach case resolved through mediation, court preliminarily approved fee request of 33%, finding it to be "adequate"); *Garner Properties & Mgmt. v. City of Inkster*, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (court found fee request of 1/3 of settlement fund to be reasonable). Plaintiffs' motion for attorneys' fees will be filed in advance of the objection deadline, and uploaded to the Website promptly after filing.

***Service Awards to Named Plaintiffs.*** Plaintiffs in this case support the S.A., have been personally involved, and have been vital in this case. Miller Decl., ¶ 27. Plaintiffs assisted Counsel with their investigation, sat through multiple interviews, and provided supporting documentation and personal information. *Id.* Plaintiffs will separately petition for awards of $1,500 each, recognizing their time, effort, and expense incurred pursuing claims that benefited all SCMs. S.A. § 8.1.

The amount requested here is reasonable and common in settled class actions.

*See, e.g.*, *Thomsen v. Morley*, 2023 WL 3437802, at *3 (E.D. Mich. May 12, 2023) (granting final approval of service awards of $1,500 in similarly situated data breach case); *Garner*, 2020 WL 4726938 at *12 (approving $1,000 service award); *Strano v. Kiplinger Washington Eds., Inc.*, -- F. Supp. 3d ---, 2023 WL 119647, at *10 (E.D. Mich. Jan. 6, 2023) (preliminarily approving $1,000 service award).

> ***Release and Dismissal With Prejudice.*** Plaintiffs and the SC, upon entry of Final Approval Order, will be deemed to have released all claims against W&F related to the Data Breach. S.A. § 4.1; *Id.* § 1.36, Released Claims definition. The parties at that time will request that the Court dismiss the action with prejudice.

## V.    ARGUMENT

"The question at the preliminary-approval stage is 'simply whether the settlement is fair enough' to begin the class-notice process." *Moeller v. Wk. Publications, Inc.*, 2023 WL 119648, at *2 (E.D. Mich. Jan. 6, 2023) (citing *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)). And a settlement agreement itself should be preliminarily approved if it (1) "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys," and (2) "appears to fall within the range of possible approval." *Garner*, 333 F.R.D. at 621.[4] And "it is clear the bar is lower

---

[4] Unless otherwise noted, all citations and internal quotations are omitted.

for preliminary approval than it is for final approval." *Id.*

## A.     The Court Should Certify the Proposed Settlement Class

Before granting preliminary approval of a proposed settlement, a Court must determine that the proposed settlement class is appropriate for certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements. Fed. R. Civ. P. 23(a). Because certification is sought under Rule 23(b)(3), Plaintiffs must demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615–16. District courts have broad discretion to determine whether certification is appropriate. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As explained below, the SC satisfies Rule 23(a) and 23(b)(3) and should be certified.

### 1. Rule 23(a) Requirements Are Met for Settlement Purposes

***Numerosity and Ascertainability.*** The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). "In most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008). The SC includes roughly 877,584 individuals identified by W&F, thus satisfying the numerosity requirement for purposes of settlement. The Class is also ascertainable. *See Kinder v. Nw. Bank*, 278

F.R.D. 176, 182 (W.D. Mich. 2011) (class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member"). And W&F has already identified the 877,584 SCMs.

**Commonality.** Rule 23(a)(2) is satisfied when questions of law or fact are common to the class, the resolution of which will bring a class-wide resolution. Fed. R. Civ. P. 23(a)(2). It may be shown when the claims all "depend upon a common contention," with a single common question sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The common contention must be capable of class-wide resolution and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Here, Plaintiffs' claims turn on the adequacy of W&F's data security in protecting SCMs' PII. Evidence to resolve that claim does not vary among class members, and so can be fairly resolved, for purposes of settlement, for all SCMs at once.

**Typicality.** A class representative's claims must be typical of those of other class members. Fed. R. Civ. P. 23(a)(3). Plaintiffs satisfy the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Typicality assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly

attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). The claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). The "court must inquire whether the interests of the named plaintiff are aligned with those of the represented group, such that in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'" *Garner*, 333 F.R.D. at 623. Plaintiffs allege that each SCM had their PII compromised as a result of the Data Breach, and were thus impacted by the same allegedly inadequate data security that they allege harmed the rest of the SC. Thus, Plaintiffs' pursuit of their own claims necessarily advances the interests of the SC, satisfying the typicality requirement.

**Adequacy.** Class representatives must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel . . . which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007). The proposed Representatives have no conflict, have participated actively, and are represented by attorneys experienced in class actions, including data breach cases. Plaintiffs' Counsel regularly engage in consumer privacy cases, have the resources

necessary to prosecute this case, and have frequently been appointed lead class counsel in data breach cases and other class actions. *See* Miller Decl. ¶¶ 32–39. Plaintiffs' Counsel have devoted substantial resources to this action: investigating Plaintiffs' claims; obtaining and analyzing Plaintiffs' detailed personal records; analyzing the scope of the W&F Data Breach, its privacy policies, remedial steps, and financial condition; participating in mediation; and, ultimately, negotiating a S.A. that provides meaningful relief for the SC, despite substantial litigation risks. Miller Decl. ¶¶ 25–28. Plaintiffs' Counsel have vigorously prosecuted this case and will work diligently on behalf of the SC throughout the administration process.

### 2. Rule 23(b) Requirements Are Met for Purposes of Settlement

After satisfying Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) for a court to certify a class. Fed. R. Civ. P. 23(b); *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013).

Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "A plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. This requirement considers

"the difficulties likely to be encountered in the management of a class action" and issues with individual litigation. *Id.*; *see also Amchem*, 521 U.S. at 617 ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action[.]"). The proposed SC satisfies the above.

**Common Questions of Law and Fact Predominate.** Predominance focuses on whether the defendant's alleged liability is common enough to warrant class-wide adjudication. *Amchem*, 521 U.S. at 623. The proposed class must be "sufficiently cohesive to warrant adjudication by representation." *Id.* Though similar to the commonality requirement of Rule 23(a), Rule 23(b)(3) "contains the more stringent requirement that common issues predominate over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). Predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Data breach cases present questions of law and fact central to liability and predominate over any individual issues. W&F's alleged course of conduct was uniform across the SC, so the claims "will prevail or fail in unison." *Whirlpool*, 722 F.3d at 859. Since class-wide determination of this issue will be the same for all, predominance is satisfied.

**A Class Action Is the Superior Method of Adjudication.** Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently

resolve the claims here. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). Such is especially true in situations which "vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. Adjudicating individual actions here is impracticable: the amount in dispute per person is too small given the complexity, including costs for document review, technical issues, and experts. Individual damages are insufficient to allow such actions—at least not with the aid of adequate counsel. Such prosecution would delay resolution, and may lead to inconsistent rulings.[5] Thus, the Court should certify the Class pursuant to Rule 23(b)(3). W&F does not oppose class certification for settlement purposes.

## B. The Court Should Appoint Proposed Settlement Class Counsel

The next step when deciding whether to preliminarily approve a settlement is to appoint Class Counsel, "a court that certifies a class must appoint class counsel" who "fairly and adequately represent the interests of the class." Rule 23(g)(1)(B). Courts generally consider the following: (1) proposed class counsel's work in investigating potential claims; (2) proposed counsel's experience in handling class

---

[5] The Court need not consider trial manageability. *Amchem*, 521 U.S. at 620 ("with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

actions or other complex litigation, and the types of claims asserted; (3) proposed counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the class. Rule 23(g)(1)(A)(i-iv).

The Proposed Chair of Settlement Class Counsel and Settlement Class Counsel have extensive experience prosecuting data breach and other complex cases, and dedicated substantial resources to this case, including negotiating this Settlement. Miller Decl., ¶¶ 26–39. The Court should thus appoint the Proposed Chair of Settlement Class Counsel and Proposed Settlement Class Counsel.

### C.    The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate and Thus Warrants Preliminary Approval

Settlement of class actions is favored. *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). A court makes an initial fairness evaluation of this settlement based on written submissions and informal presentations from the settling parties. *Manual for Complex Litigation* § 21.632 (4th ed. 2004). The Court must "ensur[e] that the proposed settlement is not illegal or collusive" based upon the "issues and evidence" and "the arms-length nature of the negotiations prior to the proposed settlement." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009).

17

Rule 23(e)(2) provides factors for the Court to consider to determine if a settlement is "fair, reasonable, and adequate," examining whether: (A) class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the class relief is adequate, reviewing: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing class relief, including the processing of class-member claims; (iii) the terms of any proposed attorney's fee, including timing; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitable to each other. Fed. R. Civ. P. 23(e)(2). The Sixth Circuit provides its own factors to consider: (1) risk of fraud or collusion; (2) complexity, expense and likely duration of the litigation; (3) amount of discovery engaged in by the parties; (4) likelihood of success on the merits; (5) opinions of class counsel and class representatives; (6) reaction of absent class members; and (7) public interest. *UAW*, 497 F.3d at 631. The S.A. meets each consideration.

### 1.  The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval

<u>First</u>, Plaintiffs and Plaintiffs' Counsel have adequately represented the Class, securing a per-class member recovery of roughly $3.30 for the 877,584 SCMs. This is on par with comparable data breach class settlements. *See, e.g.*, *Keystone supra* n.2 (roughly $3.83 each for 235,237 person class); *In re The Home Depot, Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583, ECF No. 181-2 (N.D. Ga. Mar. 7,

2016) (roughly $0.51 each for 40 million class members).

<u>Second</u>, the S.A. was negotiated at arm's-length through the use of a neutral as mediator, Judge Andersen, after exchanging information sufficient to assess the strengths and weaknesses of each Party's position. *See supra*.

<u>Third</u>, the relief is adequate. SCMs may elect for one of three avenues of recovery: Documented Loss Payment, CMIS, or Cash Fund Payment, described *supra*. S.A. ¶¶ 3.2(a)–(c). And the structure of proposed attorneys' fees, service awards, and costs are consistent with other data breach settlements. *See supra*.

<u>Fourth</u>, the S.A. treats SCMs equitably. Each SCM may elect one of the three avenues of recovery (S.A. ¶¶ 3.2(a)–(c)), such as a *pro rata* payment identical those who make that choice. S.A. ¶ 3.2(c). This settlement structure has received preliminary and final approval in other data breach cases. *See, Keystone*, *supra*.

<u>Finally</u>, the S.A. and its terms are available for review by all SCMs.

## 2. The Sixth Circuit's *UAW* Factors Support Preliminary Approval

<u>First</u>, the S.A. is the result of informed, non-collusive, arm's length negotiations between the Parties. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker*, 695 F.Supp.2d at 531. Negotiations overseen by a neutral mediator are given extra weight. *See Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("participation of an independent mediator in settlement negotiations virtually

insures that the negotiations were conducted at arm's length and without collusion between the parties"). This case was settled through the assistance and oversight of a respected mediator; Judge Andersen has substantial experience mediating complex class cases, including data breach cases, and his active involvement ensured that the negotiations proceeded at arm's length. And the mediation process allowed Plaintiffs' Counsel to confirm the size of the SC. *See* S.A. (class of 877,584 persons).

Second, the complexity, expense and likely duration of the litigation favors S.A. approval. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement"). "For class actions in particular, courts view settlement favorably because it avoids the costs, delays and multitudes of other problems associated." *Id.* Absent early resolution, this case has the capacity to persist for years. Pre-trial litigation would be extensive, with voluminous discovery needed from W&F and third-parties used in an information technology capacity. Experts would be required to testify regarding W&F's data security practices and industry standard practices. Fact-finding would be required into what PII was taken, how, and what impact this had and will have on the SC. Plaintiffs would need to survive dispositive motions and prevail on a motion for class certification. Such motion practice, and appeals, could consume years, during which the law could change and threaten the claims. Given the complexity of the claims

and arguments here, a lengthy trial would follow. Litigation would be extraordinarily complex, and it could take several years for the Class to see any real recovery, if any at all. Rather than pursuing protracted and uncertain litigation, Plaintiffs and their counsel negotiated a S.A. that provides immediate, certain, and meaningful relief. This factor weighs in favor of finding the S.A. fair, reasonable, and adequate.

Third, the Parties engaged in sufficient fact-finding, and Plaintiffs had enough information to "adequately assess their case and the desirability of the proposed settlement[.]" *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). Courts often "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding." *Id.* Plaintiffs' Counsel made an informed decision regarding the appropriateness of settlement. Prior to mediation, Plaintiffs served and received informal discovery pertaining to: cyber-forensic reports, the number and type of persons affected, security measures taken post-Data Breach, internal investigations, the type of PII that was potentially compromised, and the amount of insurance coverage. Miller Decl., ¶ 24; *see also In re Wawa, Inc. Data Sec. Litig.*, 2021 WL 3276148, at *9 n.4 (E.D. Pa. July 30, 2021) ("the [parties] did not engage in 'formal' discovery, that is not necessarily an obstacle for preliminary approval of a class action settlement, especially where, as here, the parties have exchanged important informal discovery."); *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20,

26 (D.D.C. 2011) ("Although the Court will consider the timing of the settlement and the amount of discovery conducted at the final approval stage, the Court will not deny preliminary approval due to the absence of significant discovery.").

Plaintiffs' Counsel thoroughly evaluated damages and all relevant issues and obtained an excellent settlement for the SC. Miller Decl. at ¶¶ 24–25; *see also UAW*, 2008 WL 2968408, at *26 (E.D. Mich. July 31, 2008) (use of informal discovery an adequate tool for class counsel to make informed decision). Combined with their experience, Plaintiffs' Counsel had the information needed to "adequately assess the[] case and the desirability of the proposed settlement." *See Kritzer*, 2012 WL 1945144, at *7. Plaintiffs' Counsel conducted sufficient fact-finding.

Fourth, weighed against the likelihood of success on the merits, the S.A. provides favorable relief. To "judge fairness" of a proposed settlement, courts "weigh the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631. While Plaintiffs are confident, there is risk, as is true in all complex class actions. Data breach cases face substantial hurdles in advancing past the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *2–4 (S.D.N.Y. June 25, 2010) (collecting cases). Cases implicating data far more sensitive have been found lacking at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) (factual allegations found

insufficient to establish standing), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing). As another court recently observed in finally approving a settlement with similar class relief, "[d]ata breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex"). *Fox v. Iowa Health Sys*., 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021). Given this risk, settlement is the more prudent course when a reasonable one can be reached. The damages methodologies, while sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is uncertain. *See, e.g.*, *In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013). The $2,900,000 SF for the 877,584 SCMs, or $3.30 each, provides ample compensation for individual and the aggregate class-wide claims, and exceeds that of other exemplary data breach settlements. *See, e.g.*, *In re Target Customer Data Sec. Breach Litig.*, No. MDL 14-2522, (D. Minn. Mar. 18, 2015) ($0.17 each). This underscores the exemplary resolution here.

<u>Fifth</u>, Settlement Class Counsel and Class Representatives support approval. *See* Miller Decl. ¶ 40. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *26. This *UAW* factor, therefore, favors preliminary approval.

Sixth, reaction of absent SCMs is inapplicable prior to notice. SCMs have not had the chance to voice opposition or support. Nonetheless, Plaintiffs and Plaintiffs' Counsel strongly support the S.A., which they believe is fair, reasonable, and adequate and in the SC's best interest. *See In re Fed. Skywalk Cases*, 97 F.R.D. 380, 389 (W.D. Mo. 1983) ("While the Court cannot blindly accept the recommendation of class counsel, the Court is entitled to and does place considerable weight on their recommendations."); *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 552 (E.D. Pa. 1985) ("[T]he professional judgment of counsel involved in the litigation is entitled to significant weight."). This factor also favors approval.

Seventh, the S.A. is in the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously different and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). The settlement of an action affecting roughly 877,584 persons surely does the above, ensuring uniformity. All of the *UAW* factors weigh in favor of approval.

### D.    The Proposed Notice Plan Is The Best Practicable

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances" who "can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed

settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood by the average class member." NEWBERG, § 11:53 at 167. As shown by the proposed notices and Epiq's Declaration, the Notice plan developed by both Parties satisfies the requisite criteria. *See also* § IV above.

## VI.   CONCLUSION

Plaintiffs respectfully request the Court certify the class, appoint Plaintiffs as Class Representatives, appoint the Proposed Chair of Settlement Class Counsel and Proposed Settlement Class Counsel, grant preliminary Settlement approval, approve the Notice as described, and schedule a Final Fairness hearing.

Dated: October 13, 2023               Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Emily E. Hughes (P68724)
**THE MILLER LAW FIRM**
950 W. University Drive, Suite 300
Rochester, MI 48307
T: (248) 841-2200
epm@millerlawpc.com
eeh@millerlawpc.com

*Proposed Chair of Settlement Class Counsel*

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H. St. NE, Suite 302
Washington, DC 20002
T: (202) 470-3520
nmigliaccio@classlawdc.com

jrathod@classlawdc.com

*Proposed Settlement Class Counsel*

Jonathan Shub
Benjamin F. Johns
Samantha E. Holbrook
**SHUB & JOHNS LLC**
Four Tower Bridge,
200 Barr Harbor Drive, Ste 400
Conshohocken, PA 19428
T: (610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

*Proposed Settlement Class Counsel*

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
T: (866) 252-0878
gklinger@milberg.com

*Proposed Settlement Class Counsel*

Kevin J. Stoops (P64371)
**SOMMERS SCHWARTZ, PC**
One Towne Square, Suite 900
Southfield, MI 48076
T: (248) 355-0300
kstoops@sommerspc.com

**LYNCH CARPENTER LLP**
Gary F. Lynch
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T: (412) 253-6307

26

gary@lcllp.com

Adam G. Taub (P48703)
**ADAM TAUB ASSOC. CONSUMER
LAW GROUP**
17200 W. Ten Mile Road, Suite 200
Southfield, MI 48075
T: (248) 746-3790
adamgtaub@clgplc.net

**MASON LLP**
Gary E. Mason
Danielle Lynn Perry
5101 Wisconsin Avenue NW, Ste 305
Washington, DC 20016
T: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com

Edmund S. Aronowitz (P81474)
**ARONOWITZ LAW FIRM PLLC**
220 S. Main St, Suite 305
Royal Oak, MI 48067
T: (248) 716-5421
edmund@aronowitzlawfirm.com

**WILSHIRE LAW FIRM PLC**
Thiago Coelho
Jonas P. Mann
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010
T: (213) 381-9988
thiago@wilshirelawfirm.com
jmann@wilshirelawfirm.com

Caleb Marker (MI Bar No. P70963)
**ZIMMERMAN REED LLP 6420**
Wilshire Blvd., Suite 1080
Los Angeles, CA 90048

27

T: (877) 500-8780
caleb.marker@zimmreed.com

Brian C. Gudmundson*
Jason P. Johnston*
Michael J. Laird*
Rachel K. Tack*
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
T: (612) 341-0400
brian.gudmundson@zimmreed.com
jason.johnston@zimmreed.com
michael.laird@zimmreed.com
rachel.tack@zimmreed.com

Christopher D. Jennings*
Nathan I. Reiter III
**THE JOHNSON FIRM**
610 President Clinton Ave., Suite 300
Little Rock, AR 72201
T: (501) 372-1300
chris@yourattorney.com
nathan@yourattorney.com

*Additional Plaintiffs' Counsel*
*\*Admission Pending*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 13, 2023, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com