# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE WRIGHT & FILIPPIS, LLC
DATA SECURITY BREACH
LITIGATION

Case No: 2:22-cv-12908-SFC

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## DECLARATION OF E. POWELL MILLER OF THE MILLER LAW FIRM, P.C.  IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, E. Powell Miller  of The Miller Law Firm P.C., declare as follows, pursuant to 28 U.S.C. § 1746:

1.      I am an attorney admitted to practice before this Court. I make the foregoing declaration based upon personal knowledge and, if compelled to testify as a witness, would testify competently thereto.

2.      My firm, The Miller Law Firm, P.C. is privileged to serve as the Proposed Chair of Settlement Class Counsel on behalf of the Plaintiffs and the putative class ("Class") in this litigation. I am the founder and managing partner of The Miller Law Firm, P.C., and my firm regularly litigates class actions and data breach cases in Michigan and throughout the United States. I submit this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. I have attached the executed Settlement Agreement (or,

1

"S.A.") as **Exhibit 1** to this Declaration.

3.      This case arises from a data incident (the "Data Incident") experienced by Defendant Wright & Filippis, LLC ("W&F").

4.      Plaintiff Chiquita Braggs initiated this action against W&F by filing a complaint on behalf of herself and a class of all others similarly situated on November 30, 2022 (initially titled as *Braggs v. Wright & Filippis, Inc.*), the first complaint filed against W&F in relation to the Data Incident. ECF No. 1.

5.      Subsequently, beginning on December 1, 2022, additional related complaints were filed against W&F. *See Mejia v. Wright & Filippis*, No. 22-cv-12914, filed 12/1/22; *Cullin v. Wright & Filippis*, No. 22-cv-12917, filed 12/1/22; *Thomason v. Wright & Filippis*, No. 22-cv-12946, filed 12/5/22; *Hamilton v. Wright & Filippis*, No. 22-cv-12961, filed 12/7/22; *Kolka v. Wright & Filippis*, No. 22-cv-12982, filed 12/8/22; and *Eckel v. Wright & Filippis*, No. 22-cv-13023, filed 12/14/22.

6.      The plaintiffs in the above cases, in the interests of judicial economy, coordinated with each other and with defense counsel, and, on January 9, 2023, the Plaintiffs jointly filed a motion to consolidate all related cases under this case number. *See* Joint Motion to Consolidate, ECF No. 8. On January 25, 2023, the Court granted the relief requested therein, consolidating the related cases and directing consolidation of any subsequently filed related action. Order Granting

Consolidation, ECF No. 9.[1]

7.     Thereafter, on February 24, 2023, Plaintiffs filed a Consolidated Amended Complaint ("CAC"), on behalf of themselves and on behalf of all others similarly situated.[2] The Operative CAC alleges that on or about January 26–28, 2022, W&F experienced the potential unauthorized access of Personally Identifiable Information ("PII") of approximately 877,584 individuals. CAC, ¶¶ 4, 6, 48.

8.     On April 10, 2023, W&F filed its motion to dismiss the action, ECF No. 25, and Plaintiffs filed their response on May, 10, 2023. ECF No. 29.

9.     Throughout the course of the litigation here, the Parties discussed the possibility of exploring an early resolution via mediation. The Parties ultimately agreed to use the Honorable Wayne Andersen (Ret.) of JAMS as the mediator for this matter.

10.    Thereafter, the Parties submitted a stipulation informing the Court of the selection of Judge Andersen as mediator for an August 9, 2023 mediation, and requested a stay pending mediation; on May 26, 2023, the Court entered an Order staying the case pending mediation. ECF No. 34.

---

[1] On February 21, 2023, an additional related case was filed against W&F, *Hayes v. Wright & Filippis*, No. 23-cv-10428; the Court issued an Order of Consolidation on March 3, 2023, consolidating it with the present case. ECF No. 15.
[2] The Plaintiffs who joined in filing the Joint Motion to Consolidate (ECF No. 8) are now all added as named Plaintiffs here. *See* CAC, ECF No. 13.

11.     Prior to attending mediation, Plaintiffs served W&F with written questions seeking information relevant to the Data Breach and potential resolution. Additionally, the Parties engaged in pre-mediation discovery under Fed. R. Evid. 408, which included the following areas of inquiry: cyber-forensic reports, internal investigations, correspondence with government regulatory agencies, number of persons affected by the Data Incident, security measures taken post-Data Incident, the types of PII compromised during the Data Incident, and the amount of insurance coverage.

12.     W&F produced the above information with sufficient time for Plaintiffs' Counsel to thoroughly evaluate and include it in their analysis of damages. Through informal discovery, Plaintiffs uncovered that the Data Incident potentially disclosed the personal information of approximately 877,584 individuals. Through informal discovery, the Parties were able to draft and exchange mediation briefs outlining each Party's respective position.

13.     To further assist in reaching a resolution among the Parties, Judge Andersen convened telephone calls with both sides prior to the mediation.

14.     On August 9, 2023, the Parties mediated the matter with Judge Andersen.

15.     The parties were unable to reach a resolution during the mediation; however, following the conclusion of the mediation, Judge Andersen made a

mediator's proposal that was ultimately accepted by both sides.

16.     The Parties agreed to resolve all claims asserted in the Consolidated Amended Complaint. W&F has agreed to provide a non-reversionary Settlement Fund of $2,900,000.00. The Settlement Fund will be distributed to Settlement Class Members pursuant to the distribution plan (S.A. § 3), from which the Settlement Administrator will provide benefit(s) to Settlement Class Members (less any amounts used to pay for Administrative Expenses, including Notice, Costs, and any Fee and Service awards).

17.     Settlement Class Members may elect to receive one of the following: (1) *Documented Loss Payment*- in which Settlement Class Members may submit a claim for up to $5,000, upon attesting to the loss and submitting supporting documentation (*see* S.A. § 3.2(a)); (2) *Credit Monitoring and Insurance Services ("CMIS")*- in which Settlement Class Members may elect 12 months of monitoring services with $1 million in identity theft insurance (*see* S.A. § 3.2(b)); or, (3) *Cash Fund Payment*- in which Settlement Class Members may submit a claim to receive a *pro rata* Settlement Payment in cash (*see* S.A. § 3.2(c)).

18.     The per-class member recovery equals roughly $3.30 for the 877,584 Settlement Class Members. The ultimate amount will depend on how many claims are submitted and for which options (credit monitoring, cash payments, or extraordinary expense reimbursement).

19.     The Parties have selected Epiq Class Action & Claims Solutions, Inc. ("Epic") to be the Settlement Claims Administrator. Within 14 days of Preliminary Approval, the Administrator will be provided with the Class List, which the Settlement Agreement defines as the list of any and all names, mailing addresses, telephone numbers, and email addresses of any and all Settlement Class Members that W&F has in its possession, custody, or control. S.A. § 6.4.

20.     Using these lists, Epiq will run the postal addresses of Settlement Class Members through the USPS National Change of Address database to update any change of address on file with the USPS.

21.     In the event that a Short Notice is returned to Epiq and the envelope contains a forwarding address, Epiq will promptly remail the Short Notice to the forwarding address.

22.     In the event that a Short Notice is returned to Epiq and it is at least fourteen (14) days prior to the Opt-Out Date and Objection Date, and there is no new forwarding address, Epiq will use a third-party lookup service to ascertain a better address for mailing, and upon successfully locating better addresses, Postcard Notices will be promptly remailed.

23.     Epiq is also responsible for establishing and maintaining a Settlement Website that will host a traditional "Long Form" notice. At the Website, Settlement Class Members will be able to learn about the Settlement Agreement,

be advised of key dates and deadlines, and review important settlement documents. Settlement Class Members will also be able to use the Settlement Website to download claim forms for mailing and to submit such claim forms electronically.

24.     The global resolution achieved by the Parties in the Settlement Agreement came about through well-informed Parties and their counsel. Plaintiffs' Counsel received and reviewed voluminous documentation produced by W&F. These documents confirmed Plaintiffs' analysis of the legal merits in this case. Based on their experience in numerous prior data breach cases, Plaintiffs' Counsel were confident that the evidence would establish W&F's liability and prove damages on a class-wide basis.

25.     While Plaintiffs are confident, there is risk, as is true in all complex class actions. And data breach cases in particular face substantial hurdles in advancing past the pleading stage. The damages methodologies, for example, while sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is uncertain.

26.     In view of the contested issues involved, the risks, uncertainty, and costs of further prosecution of the litigation, the parties agreed to mediate under the guidance of Judge Andersen, who facilitated rigorous negotiations over the course of the mediation session. The mediation was highly contested, with counsel

for each side advancing their respective arguments zealously on behalf of the best interests of their clients while demonstrating their willingness to continue to litigate rather than accept a settlement not in the best interests of their clients. The negotiations were hard-fought throughout and the settlement process was conducted at arm's length and, while conducted in a highly professional and respectful manner, was adversarial. Given the risks, the ultimate resolution, a $2,900,000.00 non-reversionary Settlement Fund, is an excellent result for Settlement Class Members. And Plaintiffs here support the Settlement Agreement.

27.    Throughout this litigation, Plaintiffs' Counsel has kept in close contact with Plaintiffs through numerous emails and personal telephone calls. Plaintiffs actively assisted Plaintiffs' Counsel with their investigation. Plaintiffs sat through multiple interviews and provided supporting documentation and personal information throughout the process. In sum, Plaintiffs' personal involvement in this case has been vital in litigating this matter.

28.    As noted, Plaintiffs' Counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, including: obtaining, reviewing and analyzing Plaintiffs' detailed personal records; analyzing W&F's records, privacy policies, and any remedial steps; analyzing the scope and number of persons impacted by the Data Breach; analyzing W&F's financial condition; participating in mediation; and,

8

ultimately, negotiating a settlement that provides meaningful relief for the Settlement Class, despite the substantial litigation risks that were present.

29.    Plaintiffs' Counsel will request up to a $1,500 service award to each Named Plaintiff in recognition of the time, effort, and expense they incurred in pursuing claims benefiting the Settlement Class.

30.    Plaintiffs collectively request that the Court appoint The Miller Law Firm, P.C. as Chair of Settlement Class Counsel and Migliaccio & Rathod LLP, Shub & Johns LLC, and Milberg Coleman Bryson Phillips Grossman, PLLC as Settlement Class Counsel (collectively, "Settlement Class Counsel" or "Class Counsel").

31.    A copy of The Miller Law Firm, P.C.'s firm resume, Proposed Chair of Settlement Class, is attached to this Declaration (**Exhibit 2**).

32.    My firm, The Miller Law Firm, P.C. ("Miller Law"), has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. Miller Law is the leading class action firm in Michigan with more than $3 billion in settlements. Personally, I was the first and only class action attorney in Michigan to be elected by the judges of the Eastern District of Michigan to receive the Cook-Friedman Civility Award, which is given to one attorney per year. In 2020 and, just recently, in 2023 as well, I was recognized by Super Lawyers as the number one ranked attorney in Michigan, and have been honored

to have been selected in the Top 10 every year since 2009. (*See* Firm Resume of

The Miller Law Firm, P.C., a true and accurate copy of which is attached hereto

as **Ex. B**). I have been appointed as class counsel in numerous cases in this District,

*see, e.g.*, *In Re: Ford Motor Co. F-150 and Ranger Truck Fuel Economy*

*Marketing and Sales Practices Litigation*, (E.D. Mich. No. 22, 2019) (No. 2:19-

md-02901 PageID.1158) ("The Court concludes that E. Powell Miller with the

Miller Law Firm is the applicant best able to represent the interests of the putative

class based upon: E. Powell Miller and the Miller Law Firm's prior experience in

handling class actions and other complex litigation, counsel's knowledge of the

applicable law, the work that E. Powell Miller and the Miller Law Firm have done

in identifying and investigating the potential claims in this action, and the

resources that counsel will commit to representing the putative class. The Court

also notes that half of the motions it reviewed explicitly recognized E. Powell

Miller's qualifications and fitness for the position of interim counsel."). And just

recently, Judge Ludington appointed me and my firm as class counsel in a similar

case involving protection of person information, finding that "E. Powell Miller of

the Miller Law Firm, P.C., could best represent the class. He has invested

significant time in the case, has extensive class-action experience, knows the

applicable law, and is resourced to represent the class." *Pratt v. KSE Sportsman*

*Media, Inc.*, 2023 WL 5500832, at *5 (E.D. Mich. Aug. 25, 2023) (Ludington, J.).

33.     A copy of Migliaccio & Rathod LLP's firm resume, Proposed Settlement Class Counsel, is attached to this Declaration (**Exhibit 3**).

34.     Migliaccio & Rathod LLP is particularly experienced in data breach and privacy class actions. The firm has been appointed or has served in a leadership capacity in a number of data breach and privacy class actions. *See, e.g., In Re LastPass Data Security Incident Litigation*, Case No. 1:22-cv-12047-PBS (D. Mass) (interim co-lead counsel); *Bickham et al. v. Reprosource Fertility Diagnostics*, Inc., 1:21-CV-11879-GAO (D. Mass.) (serving as *de facto* interim co-lead counsel); *In re Practice Resources*, LLC Data Security Breach Litigation, Case No. 22-CV-0890 (N.D.N.Y.) (interim co-lead counsel), *McHenry v. Advent Health Partners, Inc*., Case No. 3:22-cv-00287 (M.D. Tenn.) (executive committee member), *In Re Netgain Technology, LLC, Consumer Data Breach Litigation*, Case No. 21-cv-1210 (SRN/LIB) (D. Minn.) (executive committee member), *In re Eskenazi Health Data Incident Litigation*, No. 49D01-2111-PL-038870 (Ind. Sup. Ct.) (executive committee member), and *In Re Rutter's Inc. Data Security Breach Litigation*, Case No. 1:20-cv-382 (M.D. Pa.) (executive committee member). Finally, Migliaccio & Rathod LLP attorneys were interim co-lead counsel for the Sprint subscriber class in *In re National Security Agency Telecommunications Records Litigation*, Case No. 3:06- md-01791 (N.D. Cal.), a privacy suit against telecom companies to enjoin the alleged illegal disclosure of call records to the

11

National Security Agency.

35.    A copy of Shub & Johns LLC's firm resume, Proposed Settlement Class Counsel, is attached to this Declaration (**Exhibit 4**).

36.    Shub & Johns LLC regularly engages in consumer privacy cases, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel in data breach actions as well as other class actions. *See Meyers v. Onix Grp., LLC*, No. CV 23-2288-KSM, 2023 WL 4630674, at *2 (E.D. Pa. July 19, 2023) (". . . the Court finds that Mr. Johns . . . possess[es] extensive experience with class actions and the types of claims asserted, as well as considerable knowledge of the applicable law in this case. Mr. Johns . . . has almost 20 years of experience with complex class action cases and has been appointed Lead Counsel in data breach cases over a dozen times in various jurisdictions across the country[.]") (citations omitted). Shub & Johns LLC is qualified to serve as Settlement Class Counsel in this litigation due to his history of successfully prosecuting complex class action cases (including data breach litigation), and because of his significant involvement in the prosecution of the instant case. He was appointed as one of four co-lead counsel in *In re Wawa, Inc. Data Security Litig.*, Lead Case No. 2:19-cv-06019GEKP (E.D. Pa.). More recently, Mr. Johns was appointed co-lead counsel in the following data breach cases: *Nelson v. Connexin Software Inc. d/b/a Office Practicum*, No. 2:22-cv-04676-JDW (E.D.

Pa.); *In re NCB Management Services, Inc. Data Breach Litig.*, No. 2:23-cv-1236-KNS (E.D. Pa.); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR (E.D. Ky.); and *Nelson v. Webster Bank, N.A.*, No. CV-23-6171285-S (Conn. Super. Ct.). He has previously been appointed to serve as co-lead counsel in other data breach cases across the country. *See* Ex. D; *see also Udeen v. Subaru of Am., Inc.*, No. 18-17334 (RBK) (JS) (D.N.J.) (Mr. Johns was co-lead counsel in this consumer class action involving allegedly defective infotainment systems in certain Subaru automobiles, which resulted in a settlement valued at $6.25 million. At the hearing granting final approval of the settlement, the district court commented that the plaintiffs' team "are very skilled and very efficient lawyers… They've done a nice job."); *In re Onix Group, LLC Data Breach Litigation*, No. 23-2288 (E.D. Pa. July 19, 2023).

37.    A copy of Milberg Coleman Bryson Phillips Grossman, PLLC's firm resume, Proposed Settlement Class Counsel, is attached to this Declaration (**Exhibit 5**).

38.    Gary Klinger and Milberg Coleman Bryson Phillips Grossman PLLC are well qualified to serve as Settlement Class Counsel. Milberg Attorneys have served as Lead Counsel, Co-Counsel, or Class Counsel on hundreds of complicated and complex class actions.  With respect to privacy cases, Milberg is presently litigating more than fifty (50) cases across the country involving violations of the

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, privacy violations, data breaches and ransomware attacks. Milberg Attorneys have served as Lead Counsel, Co-Counsel or Class Counsel on data breach and privacy litigations, including *In re Blackbaud, Inc. Consumer Data Security Breach Litigation*, MDL 2972, Case No. 3:20-mn-02972 (D.S.C. 2020) (appointed co-lead counsel; case on-going). Mr. Klinger has settled on a class-wide basis more than forty class actions, the majority of which were privacy cases, as lead or co-lead counsel recovering more than a hundred million dollars for consumers in the process. Some of Mr. Klinger's representative cases include the following: *Carrera Aguallo v. Kemper Corp.,* Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger obtained final approval of a class-wide settlement valued at $17.6 million for a major class action involving more than six million consumers); *Heath v. Insurance Technologies* Corp., No. 21-cv-01444 (N.D. Tex.) (where Mr. Klinger obtained approval of a class-wide settlement for $11 million); *In Re: Procter & Gamble Aerosol Products Marketing and Sales Practices Litigation*, 2:22-md-03025-MHW-CMV (N.D. Ohio) (where Mr. Klinger serves as one of the lead attorneys in multi-district litigation against Procter & Gamble and successfully reached a settlement valued over $10 million); *Smid v. Nutranext, LLC*, Case No. 20L0190 (Cir. Ct. St. Clair, County) (class counsel in consumer class action involving heavy metals in prenatal vitamins; final approval granted to $7M settlement); *In re: Herff*

14

*Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.) (where Mr. Klinger obtained approval of a class-wide settlement for $4.35 million); *In re: CaptureRx Data Breach Litigation,* No. 5:21-cv-00523-OLG (W.D. Tex.) (where Mr. Klinger obtained approval of a class-wide settlement for $4.75 million); and, *In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.) (where Mr. Klinger serves as appointed co-lead counsel to represent more than 3 million class members in a major class action).

39.     The Plaintiffs are also represented in this matter by numerous other attorneys and law firms with a vast amount of class action and data breach litigation experience.

40.     In addition to Plaintiffs, Settlement Class Counsel, and all Plaintiffs' Counsel, recommends, for the Court's consideration, preliminary approval of the Settlement Agreement because it is well within the range of possible approval and represents a fair, reasonable, and adequate settlement and is in the best interests of the Settlement Class.

41.     A proposed order granting the relief requested in Plaintiffs' Motion is attached hereto as **Exhibit 6**.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

Executed this 13th day October 2023, in Rochester, Michigan.

_/s/ E. Powell Miller_
E. Powell Miller (P39487)

# EXHIBIT 1

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

This Class Action Settlement Agreement and Release, dated October 13, 2023, is made and entered into by and among Plaintiffs, for themselves individually and on behalf of the Settlement Class (as defined below), and Defendant Wright & Filippis, LLC ("Wright & Filippis"). This Settlement Agreement fully and finally resolves and settles all of Plaintiffs' and the Settlement Class's Released Claims, upon and subject to the terms and conditions hereof, and subject to the Court's approval.

## RECITALS

**WHEREAS**, between January 26 to January 28, 2022, Wright & Filippis experienced a targeted cybersecurity attack culminating in ransomware, which Wright & Filippis learned may have impacted Personal Information on or around May 2, 2022 (the "Data Breach").

**WHEREAS**, during the period of the Data Breach, an unauthorized third party may have gained access to the names, dates of birth, patient numbers, Social Security numbers, driver's license numbers or state ID financial accounts numbers, and/or medical health insurance information (collectively, "Private Information") of approximately 877,584 individuals.

**WHEREAS,** Wright & Filippis began notifying impacted individuals about the Data Breach on or around November 18, 2022.

**WHEREAS,** the initial complaint arising out of the Data Breach was filed in the United States District Court for the Eastern District of Michigan on November 30, 2022.

**WHEREAS**, after several additional complaints were filed in the ensuing weeks, counsel for Plaintiffs conferred and, on January 9, 2023, submitted a proposed order consolidating the cases and setting a schedule for the filing of a single amended complaint.

**WHEREAS**, a Consolidated Amended Complaint (U.S. Eastern District of Michigan Case No. 2:22-cv-12908-SFC) was filed on February 24, 2023.

**WHEREAS,** Wright & Filippis filed a motion to dismiss on April 10, 2023. Plaintiffs filed an opposition on May 10, 2023.

**WHEREAS**, after considerable meet and confer efforts, the Parties agreed to mediate the case.

**WHEREAS**, the Court thereafter stayed the case pending mediation.

**WHEREAS**, in preparation for the scheduled mediation, the Parties exchanged certain information related to the Action. The Parties also prepared for mediation by laying out their respective positions on the litigation, including with respect to the merits, class certification and settlement, to each other and the mediator.

**WHEREAS**, in the weeks prior to the mediation, the Parties maintained an open dialogue concerning the contours of a potential agreement to begin settlement negotiations.

**WHEREAS**, on August 9, 2023, the Parties engaged in a mediation session before the Honorable Wayne Anderson (ret.). The mediation assisted the parties in resolving their outstanding differences and resulted in an agreement to settle this matter in principle. In the time that followed that mediation session, the Parties were able to finalize all the terms of this Settlement Agreement.

**WHEREAS**, pursuant to the terms set forth below, this Agreement resolves all actual and potential claims, actions, and proceedings as set forth in the release contained herein, by and on behalf of members of the Settlement Class defined herein, but excludes the claims of all Class Members who opt out from the Settlement Class pursuant to the terms and conditions herein.

**WHEREAS**, Proposed Settlement Class Counsel ("Class Counsel"), on behalf of Plaintiffs and the Settlement Class, have thoroughly examined the law and facts relating to the matters at issue in the Action, Plaintiffs' claims, and Wright & Filippis's potential defenses, including conducting independent investigation and confirmatory discovery, conferring with defense counsel through the settlement negotiation process, as well as conducting an assessment of the merits of expected arguments and defenses throughout the litigation, including on a motion for class certification. Based on a thorough analysis of the facts and the law applicable to Plaintiffs' claims in the Action, and taking into account the burden, expense, and delay of continued litigation, including the risks and uncertainties associated with litigating class certification and other defenses Wright & Filippis may assert, a protracted trial and appeal(s), as well as the opportunity for a fair, cost-effective, and assured method of resolving the claims of the Settlement Class, Plaintiffs and Class Counsel believe that resolution is an appropriate and reasonable means of ensuring that the Class is afforded important benefits expediently. Plaintiffs and Class Counsel have also taken into account the uncertain outcome and the risk of continued litigation, as well as the difficulties and delays inherent in such litigation.

**WHEREAS**, Plaintiffs and Class Counsel believe that the terms set forth in this Settlement Agreement confer substantial benefits upon the Settlement Class and have determined that they are fair, reasonable, adequate, and in the best interests of the Settlement Class.

**WHEREAS**, Wright & Filippis has similarly concluded that this Agreement is desirable in order to avoid the time, risk, and expense of defending protracted litigation, and to resolve finally and completely the claims of Plaintiffs and the Settlement Class.

**WHEREAS**, this Agreement, whether or not consummated, and any actions or proceedings taken pursuant to this Agreement, are for settlement purposes only, and Wright & Filippis specifically denies any and all wrongdoing. The existence of, terms in, and any action taken under or in connection with this Agreement shall not constitute, be construed as, or be admissible in evidence as, any admission by Wright & Filippis of (i) the validity of any claim, defense, or fact asserted in the Action or any other pending or future action, or (ii) any wrongdoing, fault, violation of law, or liability of any kind on the part of the Parties.

**WHEREAS**, the foregoing Recitals are true and correct and are hereby fully incorporated in, and made a part of, this Agreement.

**NOW, THEREFORE**, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of them to be

2

satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree, as follows:

## 1.    DEFINITIONS

As used in this Agreement, the following terms shall be defined as follows:

1.1    "Action" means the class action captioned *In re Wright & Filippis, LLC Data Security Breach Litigation*, No. 22-cv-12908, filed on February 24, 2023 in the United States District Court for the Eastern District of Michigan.

1.2    "Administrative Expenses" means all charges and expenses incurred by the Settlement Administrator in the administration of this Settlement, including, without limitation, all expenses and costs associated with claims administration, the Notice Plan and providing Notice to the Settlement Class. Administrative Expenses also include all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

1.3    "Agreement" or "Settlement Agreement" means this Class Action Settlement Agreement and Release. The terms of the Settlement Agreement are set forth herein including the exhibits hereto.

1.4    "Approved Claim(s)" means a claim as evidenced by a Claim Form submitted by a Class Member that (a) is timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement; (b) is physically signed or electronically verified by the Class Member; (c) satisfies the conditions of eligibility for a Settlement Benefit as set forth herein; and (d) has been approved by the Settlement Administrator.

1.5    "Business Days" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the federal government.

1.6    "CAFA Notice" means the notice to be disseminated to appropriate federal and state officials pursuant to the requirements of 28 U.S.C. § 1715(b) and in accordance with Section 5.2 of this Agreement.

1.7    "Claimant" means a Class Member who submits a Claim Form for a Settlement Payment.

1.8    "Claim Form" means the form attached hereto as **Exhibit A**, as approved by the Court. The Claim Form must be submitted physically (via U.S. Mail) or electronically (via the Settlement Website) by Class Members who wish to file a claim for their given share of the Settlement Benefits pursuant to the terms and conditions of this Agreement. The Claim Form shall be available for download from the Settlement Website. The Settlement Administrator shall mail a Claim Form, in hardcopy form, to any Class Member who so requests.

1.9     "Claims Deadline" means the date by which all Claim Forms must be received to be considered timely and shall be set as the date ninety (90) days after the Notice Date. The Claims Deadline shall be clearly set forth in the Long Form Notice, the Summary Notice, the Claim Form, and the Court's order granting Preliminary Approval.

1.10    "Claims Period" means the period of time during which Class Members may submit Claim Forms to receive their given share of the Settlement Benefits and shall commence on the Notice Date and shall end on the date ninety (90) days thereafter.

1.11    "Class Counsel" means The Miller Law Firm as Chair of Settlement Class Counsel and Migliaccio & Rathod LLP, Shub & Johns LLP, and Milberg Coleman Bryson Phillips Grossman PLLC as Settlement Class Counsel (collectively "Class Counsel" or "Settlement Class Counsel")

1.12    "Class Member" means a member of the Settlement Class.

1.13    "Class Representatives" and "Plaintiffs" means Chiquita Braggs, Scott Hamilton, Diane Huff, Shawn Kolka, and Craig Mejia.

1.14    "Court" means the United States District Court for the Eastern District of Michigan.

1.15    "Data Breach" refers to the unauthorized access that is the subject of the Action and which Wright & Filippis learned may have impacted Personal Information on or around May 2, 2022, and disclosed publicly on or around November 18, 2022.

1.16    "Documented Loss" refers to monetary losses incurred by a Class Member and supported by Reasonable Documentation for attempting to remedy or remedying issues that are more likely than not a result of Data Breach, as further described in Section 3.2(a) below. Documented Loss must be supported by Reasonable Documentation that a Class Member actually incurred unreimbursed losses and consequential expenses that are more likely than not traceable to the Data Breach and incurred on or after January 26, 2022.

1.17    "Effective Date" means the date upon which the Settlement contemplated by this Agreement shall become effective as set forth in Section 10.1 below.

1.18    "Entity" means any person, corporation, partnership, limited liability company, association, trust, agency, or other organization of any type.

1.19    "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of reasonable litigation costs and expenses awarded by the Court to Class Counsel, to be paid from the Settlement Fund.

1.20    "Final Approval Order" means the order to be entered by the Court after the Final Approval Hearing, which approves the Settlement Agreement. The Final Approval Order must be substantially similar to the form attached hereto as **Exhibit B**.

1.21   "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to the Federal Rules of Civil Procedure and whether to issue the Final Approval Order and Judgment.

1.22   "Wright & Filippis's Counsel" or references to counsel for Wright & Filippis means attorney Allan S. Rubin and other attorneys at the law firm Jackson Lewis P.C.

1.23   "Wright & Filippis" or "Defendant" means Defendant Wright & Filippis, LLC and its current and former affiliates, parents, subsidiaries, and successors.

1.24   "Judgment" means the judgment to be entered by the Court, to be substantially similar to the form of **Exhibit C**.

1.25   "Long Form Notice" means the long form notice of settlement substantially in the form attached hereto as **Exhibit D**.

1.26   "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) reasonable Administrative Expenses incurred pursuant to this Settlement Agreement, (ii) Service Awards approved by the Court, (iii) any amounts approved by the Court for the Fee Award and Costs, and (iv) applicable taxes, if any.

1.27   "Notice" means notice of the proposed class action settlement to be provided to Class Members pursuant to the Notice Plan approved by the Court in connection with preliminary approval of the Settlement. The Notice shall consist of the Summary Notice, the Long Form Notice, and the Settlement Website and toll-free telephone line.

1.28   "Notice Date" means the date upon which Settlement Class Notice is initially disseminated to the Settlement Class by the Settlement Administrator, which shall be no later than thirty-five (35) days after entry of the Preliminary Approval Order.

1.29   "Notice Plan" means the settlement notice program, as approved by the Court, developed by the Settlement Administrator and described in this Agreement for disseminating Notice to the Class Members of the terms of this Agreement and the Final Approval Hearing.

1.30   "Objection Deadline" means the date by which Class Members must file and postmark required copies of any written objections, pursuant to the terms and conditions herein, to this Settlement Agreement and to any application and motion for (i) the Fee Award and Costs, and (ii) the Service Awards, which shall be sixty (60) days following the Notice Date.

1.31   "Opt-Out Period" means the period in which a Class Member may submit a Request for Exclusion, pursuant to the terms and conditions herein, which shall expire sixty

5

(60) days following the Notice Date. The deadline for filing a Request for Exclusion will be clearly set forth in the Settlement Class Notice.

1.32     "Parties" means the Plaintiffs and Defendant Wright & Filippis.

1.33     "Personal Information" means information compromised in the Data Breach, including names, dates of birth, patient number, Social Security numbers, driver's license number or state ID financial account number, and/or medical health insurance information.

1.34     "Preliminary Approval Order" means an order by the Court that preliminarily approves the Settlement (including, but not limited to, the forms and procedure for providing Notice to the Settlement Class), permits Notice to the proposed Settlement Class, establishes a procedure for Class Members to object to or opt out of the Settlement, and sets a date for the Final Approval Hearing, without material change to the Parties' agreed-upon proposed preliminary approval order attached hereto as **Exhibit E**.

1.35     "Reasonable Documentation" means documentation supporting a claim for Documented Loss including, but not limited to, credit card statements, bank statements, invoices, telephone records, and receipts. Documented Loss costs cannot be documented solely by a personal certification, declaration, or affidavit from the Claimant; a Class Member must provide supporting documentation.

1.36     "Released Claims" means any claim, liability, right, demand, suit, obligation, damage, including consequential damage, loss or cost, punitive damage, attorneys' fees, costs, and expenses, action or cause of action, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that was or could have been asserted on behalf of the Settlement Class in the Action related to or arising from the Data Breach regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they are foreseen or unforeseen, suspected or unsuspected, or fixed or contingent, arising out of, or related or connected in any way with the claims or causes of action of every kind and description that were brought, alleged, argued, raised or asserted in any pleading or court filing in the Action. "Released Claims" do not include any claims against any entity other than Released Parties and are subject to Section 4 below.

1.37     "Released Parties" means Defendant and its respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of its past, present, and future officers, directors, employees, equity holders, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing. Each of the Released Parties may be referred to individually as a "Released Party."

1.38    "Request for Exclusion" is the written communication by a Class Member in which he or she requests to be excluded from the Settlement Class pursuant to the terms of the Agreement.

1.39    "Service Awards" means the amount awarded by the Court and paid to the Class Representatives in recognition of their role in this litigation, as set forth in Section 8 below.

1.40    "Settlement" means this settlement of the Action by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

1.41    "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the third-party class action settlement administrator to selected by the Parties subject to the approval of the Court. Under the supervision of Class Counsel, the Settlement Administrator shall oversee and implement the Notice Plan and receive any requests for exclusion from the Class. Class Counsel and Wright & Filippis may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

1.42    "Settlement Benefit(s)" means any Settlement Payment, the Credit Monitoring and Insurance Services, the Documented Loss Payments, the Cash Fund Payments, the Prospective Relief set forth in Sections 2 and 3 herein, and any other benefits Class Members receive pursuant to this Agreement, including non-monetary benefits and relief, the Fee Award and Costs, and Administrative Expenses.

1.43    "Settlement Class" and "Class" means all natural persons whose Private Information was compromised in the Data Breach, including all individuals who were sent the Notice of Data Privacy Incident on or around November 18, 2022. Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their immediate families and their staff; (2) Wright & Filippis, its subsidiaries, parent companies, successors, predecessors, and any entity in which Wright & Filippis or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

1.44    "Settlement Fund" means the sum of Two Million, Nine Hundred Thousand Dollars and No Cents ($2,900,000.00), to be paid by Wright & Filippis, as specified in Section 3.1 of this Agreement.

1.45    "Settlement Payment" means any payment to be made to any Class Member on Approved Claims pursuant to Section 3.2 herein.

1.46    "Settlement Website" means the Internet website to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of Claim Forms and Requests for Exclusion, and provides access to relevant case documents including the Settlement Class Notice, information about

7

the submission of Claim Forms, and other relevant documents, including downloadable Claim Forms.

1.47    "Summary Notice" means the summary notice of the proposed Settlement herein, substantially in the form attached hereto as **Exhibit F**.

1.48    "Taxes" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties and the reasonable expenses of tax attorneys and accountants). All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this Agreement (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Agreement ("Tax Expenses"), shall be paid out of the Settlement Fund. Further, Taxes and Tax Expenses shall be treated as, and considered to be, an Administration Expense and shall be timely paid by the Settlement Administrator, out of the Settlement Fund, without prior order from the Court and the Settlement Administrator shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Class Members with Approved Claims any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Agreement. For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the Settlement Administrator shall be the "administrator." The Settlement Administrator shall timely and properly file or cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the escrow account (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in this Agreement) shall be consistent with this Section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in this Agreement.

1.49    "Unknown Claims" means any and all Released Claims that Wright & Filippis or any Class Representative or Class Member does not know or suspect to exist in his, her, or its favor as of the Effective Date and which, if known by him, her, or it, might have materially affected his, her, or its decision(s) with respect to the Settlement. Class Representatives and Class Counsel acknowledge, and each Class Member by operation of law shall be deemed to have acknowledged, that the

inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

**2.    SECURITY COMMITMENTS; PROSPECTIVE RELIEF**

2.1    Wright & Filippis agrees to adopt, continue, and/or implement the following (or substantially similar) data and information security measures, at its expense, which are designed to strengthen Wright & Filippis's data and information security. The parties have agreed that Wright & Filippis will implement the measures for at least two years from the Effective Date of this Agreement:

    1.    External vulnerability scanning

    2.    Internal vulnerability management system

    3.    Biannual penetration testing

    4.    24/7 SOC monitoring

2.2    Upon request, Wright & Filippis will provide Class Counsel with sufficient information to confirm that each of these measures has been or will be implemented, including through a confirmatory interview conducted with one of Wright & Filippis's IT professionals who can attest to the measures that Wright & Filippis has or will take in accordance with this Agreement. Wright & Filippis further agrees to provide Class Counsel with ongoing status reports as needed at their request.

**3.    SETTLEMENT FUND / MONETARY PAYMENT / BENEFITS DETAILS**

3.1    Wright & Filippis agrees to make or cause to be made a payment of Two Million, Nine Hundred Thousand Dollars and No Cents ($2,900,000.00). Wright & Filippis agrees to create the Settlement Fund within ten (10) days after the later of (a) entry of the Preliminary Approval Order, which shall include an order establishing the Settlement Fund pursuant to Treasury Regulation § 1.468B-1(c)(1), or (b) receipt from the Settlement Administrator of detailed wire instructions and a completed W-9 form, by making or causing to be made a deposit of Six Hundred Thousand Dollars and No Cents ($600,000.00), to be deposited in an interest-bearing bank escrow account established and administered by the Settlement Administrator (the "Escrow Account") to defray the actual expenses of notice of claims administration. Wright & Filippis agrees to make or cause to be made a payment of Two Million, Three Hundred Thousand Dollars and No Cents ($2,300,000.00) to be deposited in the Escrow Account within thirty (30) days following the Effective Date. The Escrow Account shall be held in a Qualified Settlement Fund (defined below) in interest-bearing bank account deposits with commercial banks with excess capital exceeding One Billion United States Dollars and Zero Cents ($1,000,000,000.00), with a rating of "A" or higher by S&P and in an account that is fully insured by the United States Government or the FDIC. The Settlement Fund will be used to pay Approved Claims, Administrative Expenses (to be agreed upon by both parties),

the Fee Award and Costs, and Service Awards. For the avoidance of doubt, and for purposes of this Settlement Agreement only, Wright & Filippis's liability shall not exceed Two Million, Nine Hundred Thousand Dollars and No Cents ($2,900,000.00).

(a)   All interest on the funds in the Escrow Account shall accrue to the benefit of the Settlement Class. Any interest shall not be subject to withholding and shall, if required, be reported appropriately to the Internal Revenue Service by the Settlement Administrator. The Administrator is responsible for the payment of all Taxes.

(b)   The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1 at all times after the creation of the Escrow Account. All Taxes shall be paid out of the Escrow Account. Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the Taxes. The Escrow Account shall indemnify and hold Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification). For the purpose of the Internal Revenue Code and the Treasury regulations thereunder, the Settlement Administrator shall be designated as the "administrator" of the Settlement Fund. The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in the previous paragraph) shall be consistent with this paragraph and in all events shall reflect that all taxes (including the Taxes, any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. The Settlement Administrator shall maintain control over the Settlement Fund and shall be responsible for all disbursements. The Settlement Administrator shall not disburse any portion of the Settlement Fund except as provided in this Agreement and with the written agreement of Class Counsel and Defendant's Counsel or by order of the Court. All funds held by the Settlement Administrator shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement or further order of the Court.

3.2   Settlement Payments: Each Class Member may qualify and submit a claim for one of the following:

(a)   Documented Loss Payment. Class Members may submit a claim for a Settlement Payment of up to $5,000 (Five Thousand Dollars) for reimbursement in the form of a Documented Loss Payment. To receive a Documented Loss Payment, a Class Member must choose to do so on their Claim Form and submit to the Settlement Administrator the following: (i) a

valid Claim Form electing to receive the Documented Loss Payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss made under penalty of perjury; and (iii) Reasonable Documentation that demonstrates the Documented Loss to be reimbursed pursuant to the terms of the Settlement. If a Class Member does not submit Reasonable Documentation supporting a Documented Loss Payment claim, or if a Class Member's claim for a Documented Loss Payment is rejected by the Settlement Administrator for any reason, and the Class Member fails to cure his or her claim, the claim will be rejected and the Class Member's claim will instead be automatically placed into the Cash Fund Payment category below.

(b)     Credit Monitoring and Insurance Services ("CMIS"). In the alternative to the Documented Loss Payment or the Cash Fund Payment, class members may elect to claim three years of CMIS to be provided by a vendor agreed upon by the parties. The CMIS benefit will provide at a minimum three credit bureau monitoring services and $1 million in identity theft insurance. Said CMIS benefits will be available to class members irrespective of whether they took advantage of any previous offering of credit monitoring from Wright & Filippis. Individuals who elected to utilize a previous offering of CMIS from Wright & Filippis, or who obtained CMIS services from another provider as a result of the Data Breach, will be permitted to postpone activation of their CMIS settlement benefit for up to 12 months.

(c)     Cash Fund Payment. In the alternative to the Documented Loss Payment or the CMIS benefit, Class Members may submit a claim to receive a pro rata Settlement Payment in cash ("Cash Fund Payment"). The amount of the Cash Fund Payment will be calculated in accordance with Section 3.7 below. Class Members who submit a Claim for a Cash Fund Payment will not be entitled to select any of the other Settlement Benefits provided for under Section 3.2(a)-(b).

3.3     Settlement Payment Methods. Class Members will be provided the option to receive any Settlement Payment due to them pursuant to the terms of this Agreement via various digital methods. In the event that Class Members do not exercise this option with the Settlement Administrator, they will receive their Settlement Payment via a physical check sent to them by U.S. Mail.

3.4     Deadline to File Claims. Claim Forms must be received postmarked or electronically within ninety (90) days after the Notice Date.

3.5     The Settlement Administrator. The Settlement Administrator shall have the authority to determine whether a Claim Form is valid, timely, and complete. To the extent the Settlement Administrator determines a claim is deficient for a reason other than late posting, within a reasonable amount of time, the Settlement Administrator shall notify the Claimant (with a copy to Class Counsel) of the deficiencies and notify the Claimant that he or she shall have thirty (30) days to

11

cure the deficiencies and re-submit the claim. No notification is required for late-posted claims. The Settlement Administrator shall exercise reasonable discretion to determine whether the Claimant has cured the deficient claim. If the Claimant fails to cure the deficiency, the claim shall stand as denied, and the Class Member shall be so notified if practicable.

3.6    <u>Timing of Settlement Benefits.</u> Within ninety (90) days after: (i) the Effective Date; or (ii) all Claim Forms have been processed subject to the terms and conditions of this Agreement, whichever date is later, the Settlement Administrator shall cause funds to be distributed to each Class Member who is entitled to funds based on the selection made on their given Claim Form.

3.7    <u>Distribution of Settlement Payments</u>: The Settlement is designed to exhaust the Settlement Fund. The Settlement Fund shall be used to make payments for the following: (i) Administrative Expenses, (ii) Fee Award and Costs, (iii) Service Award, and (iv) taxes. The remaining amount is the Net Settlement Fund. The Settlement Administrator will first apply the Net Settlement Fund to pay for CMIS claimed by Class Members. If Net Settlement Funds remain after paying for the CMIS, the Settlement Administrator will next use it to pay valid claims for Documented Loss Payments. The amount of the Net Settlement Fund remaining after all Documented Loss Payments are applied and the payments for the CMIS are made shall be referred to as the "Post CM/DL Net Settlement Fund." The Settlement Administrator shall then utilize the Post CM/DL Net Settlement Fund to make all Cash Fund Payments pursuant to Section 3.2(c) herein. The amount of each Cash Fund Payment shall be calculated by dividing the Post CM/DL Net Settlement Fund by the number of valid claims submitted for Cash Fund Payments.

In the event the Net Settlement Fund is insufficient to cover the payment for the CMIS claimed by Class Members, the duration of the CMIS coverage will be reduced to exhaust the fund. In such an event, no Net Settlement Funds will be distributed to Claimants for Approved Claims for Documented Loss Payments or for Cash Fund Payments. In the event that the aggregate amount of all Documented Loss Payments and payments for the CMIS exceeds the total amount of the Net Settlement Fund, then the value of the Documented Loss Payment to be paid to each Class Member shall be reduced, on a pro rata basis, such that the aggregate value of all Documented Loss Payments and payments due for CMIS does not exceed the Net Settlement Fund. In such an event, no Net Settlement Funds will be distributed to Claimants with Approved Claims for Cash Fund Payments. All such determinations shall be performed by the Settlement Administrator.

3.8    <u>Deadline to Deposit or Cash Physical Checks</u>. Class Members with Approved Claims who receive a Documented Loss Payment or a Cash Fund Payment, by physical check, shall have sixty (60) days following distribution to deposit or cash their benefit check.

3.9    <u>Residual Funds</u>. The Settlement is designed to exhaust the Settlement Fund. To the extent any monies remain in the Net Settlement Fund more than 120 days after the

distribution of all Settlement Payments to the class members, a subsequent Settlement Payment will be evenly made to all Class Members with approved claims for Cash Fund Payments who cashed or deposited the initial payment they received, provided that the average check amount is equal to or greater than Three Dollars and No Cents ($3.00). The distribution of this remaining Net Settlement Fund shall continue until the average check or digital payment in a distribution is less than three dollars ($3.00), whereupon the amount remaining in the Net Settlement Fund, if any, shall be distributed by mutual agreement of the Parties to a Court-approved non-profit recipient. Should it become necessary to distribute any remaining amount of the Net Settlement Fund to a Court-approved non-profit recipient, the Parties shall petition the Court for permission to do so, providing the Court with details of the proposed non-profit recipient.

3.10    <u>Returned Payments</u>. For any Settlement Payment returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make one additional effort to make any digital payments and engage in a reasonable efforts to find a valid address (in the case of physical checks) and resend the Settlement Payment within thirty (30) days after the physical check is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall make one attempt to repay or resend a Settlement Payment.

3.11    <u>Residue of Settlement Fund</u>. No portion of the Settlement Fund shall ever revert or be repaid to Wright & Filippis after the Effective Date.

3.12    <u>Custody of Settlement Fund</u>. The Settlement Fund shall be deposited into the Escrow Account but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or returned to those who paid the Settlement Fund in the event this Settlement Agreement is voided, terminated, or cancelled. In the event this Settlement Agreement is voided, terminated, or cancelled due to lack of approval from the Court or any other reason, any amounts remaining in the Settlement Fund after payment of all Administrative Expenses incurred in accordance with the terms and conditions of this Agreement, including all interest earned on the Settlement Fund net of any Taxes, shall be returned to Wright & Filippis and/or its insurer, and no other person or entity shall have any further claim whatsoever to such amounts.

3.13    <u>Non-Reversionary</u>. This is a non-reversionary settlement. As of the Effective Date, all rights of Wright & Filippis and/or its insurer in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is voided, cancelled, or terminated, as set forth herein. In the event the Effective Date occurs, no portion of the Settlement Fund shall be returned to Wright & Filippis and/or its insurers.

3.14    <u>Use of the Settlement Fund</u>. As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for: (i) all Administrative Expenses; (ii) any Taxes; (iii) any Service Awards; (iv) any Fee Award and Costs;

and (v) the Settlement Payments and/or Settlement Benefits, pursuant to the terms and conditions of this Agreement.

3.15   <u>Payment / Withdrawal Authorization</u>. No amounts from the Settlement Fund may be withdrawn unless (i) expressly authorized by the Settlement Agreement or (ii) approved by the Court. The Parties, by agreement, may authorize the periodic payment of actual reasonable Administrative Expenses from the Settlement Fund as such expenses are invoiced without further order of the Court. The Settlement Administrator shall provide Class Counsel and Wright & Filippis with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Settlement Fund before the Effective Date at least seven (7) Business Days prior to making such withdrawal or payment.

3.16   <u>Payments to Class Members</u>. The Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and/or oversee distribution of the Settlement Fund to Class Members pursuant to this Agreement.

3.17   <u>Taxes</u>. All Taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, shall be considered an Administrative Expense, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Taxes do not include any federal, state, and local tax owed by any Claimant, Class Representative, or Class Member as a result of any benefit or payment received as a result of the Settlement. Each Claimant, Class Representative, and Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

3.18   <u>Limitation of Liability</u>.

(a)   Wright & Filippis and its Counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs

14

incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

(b)     Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

(c)     The Settlement Administrator shall indemnify and hold Class Counsel, the Settlement Class, Class Representatives, and Wright & Filippis, and Wright & Filippis's Counsel harmless for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

## 4.     RELEASE

4.1     Upon the Effective Date, and in consideration of the Settlement Benefits described herein, the Class Representatives and all Class Members identified in the settlement class list in accordance with Section 6.4, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Data Breach or otherwise arises out of the same facts and circumstances set forth in the class action complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement.

15

4.2     The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes that risk of such possible difference in facts and agrees that this Agreement shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

## 5.    REQUIRED EVENTS AND COOPERATION BY PARTIES

5.1     <u>Preliminary Approval</u>. Class Counsel shall submit this Agreement to the Court and shall promptly move the Court to enter the Preliminary Approval Order, in the form attached as **Exhibit E**.

5.2     <u>CAFA Notice</u>. Within ten (10) days after Plaintiffs file the motion for preliminary approval of the Settlement, Defendant shall provide CAFA Notice to the appropriate officials of the United States, the State of Michigan, the other forty-nine states, and U.S. territories. Defendant shall bear the costs of such notice. When Defendant provides CAFA Notice in accordance with Section 11(a) of this Agreement, they shall provide copies of the CAFA Notice to Plaintiffs.

5.3     <u>Cooperation</u>. The Parties shall, in good faith, cooperate, assist, and undertake all reasonable actions and steps in order to accomplish all requirements of this Agreement on the schedule set by the Court, subject to the terms of this Agreement. If, for any reason, the Parties determine that the schedule set by the Court is no longer feasible, the Parties shall use their best judgment to amend the schedule to accomplish the goals of this Agreement.

5.4     <u>Certification of the Settlement Class</u>. For purposes of this Settlement only, Plaintiffs and Wright & Filippis stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date. Should: (1) the Settlement not receive final approval from the Court, or (2) the Effective Date not occur, the certification of the Settlement Class shall be void. Wright & Filippis reserves the right to contest class certification for all other purposes. Plaintiffs and Wright & Filippis further stipulate to designate the Class Representatives as the representatives for the Settlement Class.

5.5     <u>Final Approval</u>. The Parties shall request that the Court schedule the Final Approval Hearing for a date that is no earlier than one hundred twenty (120) days after the entry of the Preliminary Approval Order. The Parties may file a Motion for Final Approval no later than fourteen (14) days prior to the Final Approval Hearing, and a Response to any objections to the Settlement or a Supplement to the Motion for Final Approval no later than seven (7) days prior to the Final Approval Hearing.

6.      **CLASS NOTICE, OPT-OUTS, AND OBJECTIONS**

6.1     Notice shall be disseminated pursuant to the Court's Preliminary Approval Order.

6.2     The Settlement Administrator shall oversee and implement the Notice Plan approved by the Court. All costs associated with the Notice Plan shall be paid from the Settlement Fund.

6.3     <u>Direct Notice</u>. No later than the Notice Date, or such other time as may be ordered by the Court, the Settlement Administrator shall disseminate Notice to the Class Members via direct mail.

6.4     <u>Settlement Class List</u>. Within five (5) days after the issuance of the Preliminary Approval Order, and contingent upon the Settlement Administrator executing a Data Protection Agreement that is acceptable to Wright & Filippis, Wright & Filippis will provide to the Settlement Administrator a list of any and all names, mailing addresses, telephone numbers, and email addresses of any and all Class Members that it has in its possession, custody, or control.

6.5     <u>Confidentiality</u>. Any information relating to Class Members provided to the Settlement Administrator pursuant to this Agreement shall be provided solely for the purpose of providing Notice to the Class Members (as set forth herein) and allowing them to recover under this Agreement; shall be kept in strict confidence by the Parties, their counsel, and the Settlement Administrator; shall not be disclosed to any third party; shall be destroyed after all distributions to Class Members have been made; and shall not be used for any other purpose. Moreover, because the Class Member list and information contained therein will be provided to the Settlement Administrator solely for purposes of providing the Class Notice and Settlement Benefits and processing opt-out requests, the Settlement Administrator will execute a confidentiality and non-disclosure agreement and Data Protection Agreement with Class Counsel and Wright & Filippis's Counsel, and will ensure that any information provided to it by Class Members, Class Counsel, Wright & Filippis, or Wright & Filippis's Counsel, will be secure and used solely for the purpose of effecting this Settlement. The Data Protection Agreement will, at minimum, require the Settlement Administrator to: implement reasonable safeguards to secure the Settlement Class List and related data; require the Settlement Administrator to notify Wright & Filippis within 48 hours of a data security incident involving Wright & Filippis' data; and indemnify Wright & Filippis for any costs associated with a data security incident involving the Settlement Administrator or its vendors, including but not limited to all costs associated with investigating the data security incident and the cost of providing notice to affected individuals.

6.6     <u>Fraud Prevention</u>. The Settlement Administrator shall use reasonable and customary fraud-prevention mechanisms to prevent (i) submission of Claim Forms by persons other than potential Class Members, (ii) submission of more than one Claim Form per person, and (iii) submission of Claim Forms seeking amounts to

which the claimant is not entitled. In the event a Claim Form is submitted without a unique Class Member identifier, the Settlement Administrator shall employ reasonable efforts to ensure that the Claim is valid.

6.7    <u>Settlement Website</u>. Prior to any dissemination of the Summary Notice and prior to the Notice Date, the Settlement Administrator shall cause the Settlement Website to be launched on the Internet in accordance with this Agreement. The Settlement Administrator shall create the Settlement Website. The Settlement Website shall contain information regarding how to submit Claim Forms (including submitting Claims Forms electronically through the Settlement Website) and relevant documents, including, but not limited to, the Long Form Notice, the Claim Form, this Agreement, the Preliminary Approval Order entered by the Court, and the operative Consolidated Class Action Complaint in the Action, and will (on its URL landing page) notify the Settlement Class of the date, time, and place of the Final Approval Hearing. The Settlement Website shall also provide the toll-free telephone number and mailing address through which Class Members may contact the Settlement Administrator directly.

6.8    <u>Opt-Out/Request for Exclusion</u>. The Notice shall explain that the procedure for Class Members to opt out and exclude themselves from the Settlement Class is by notifying the Settlement Administrator in writing, postmarked no later than sixty (60) days after the Notice Date. Any Class Member may submit a Request for Exclusion from the Settlement at any time during the Opt-Out Period. To be valid, the Request for Exclusion must be postmarked or received by the Settlement Administrator on or before the end of the Opt-Out Period. In the event a Class Member submits a Request for Exclusion to the Settlement Administrator via US Mail, such Request for Exclusion must be in writing and must identify the case name "*In re Wright & Filippis, LLC Data Security Breach Litigation*"; state the name, address, telephone number and unique identifier of the Class Member seeking exclusion; identify any lawyer representing the Class Member seeking to opt out; be physically signed by the person(s) seeking exclusion; and must also contain a statement to the effect that "I hereby request to be excluded from the proposed Settlement Class in '*In re Wright & Filippis, LLC Data Security Breach Litigation*.'" Any person who elects to request exclusion from the Settlement Class shall not (i) be bound by any orders or Judgment entered in the Action, (ii) be entitled to relief under this Agreement, (iii) gain any rights by virtue of this Agreement, or (iv) be entitled to object to any aspect of this Agreement. Requests for Exclusion may only be done on an individual basis, and no person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs.

In the event that within ten (10) days after the Opt-Out Date as approved by the Court, there have been more than 150 timely and valid individual opt-outs (exclusions) submitted, Wright & Filippis may, by notifying Class Counsel and the Court in writing, void this Agreement. If Wright & Filippis terminates the Agreement under this section, Wright & Filippis shall be obligated to pay the Administrative Expenses incurred by the Settlement Administrator to that date for work performed in connection with the Agreement.

6.9  <u>Objections</u>. The Notice shall explain that the procedure for Class Members to object to the Settlement is by submitting written objections to the Court no later than sixty (60) days after the Notice Date (the "Objection Deadline"). Any Class Member may enter an appearance in the Action, at their own expense, individually or through counsel of their own choice. Any Class Member who wishes to object to the Settlement, the Settlement Benefits, Service Awards, and/or the Fee Award and Costs, or to appear at the Final Approval Hearing and show cause, if any, for why the Settlement should not be approved as fair, reasonable, and adequate to the Class, why a final judgment should not be entered thereon, why the Settlement Benefits should not be approved, or why the Service Awards and/or the Fee Award and Costs should not be granted, may do so, but must proceed as set forth in this paragraph. No Class Member or other person will be heard on such matters unless they have filed in this Action the objection, together with any briefs, papers, statements, or other materials the Class Member or other person wishes the Court to consider, within sixty (60) days following the Notice Date. All written objections and supporting papers must clearly (a) identify the case name and number; (b) state the Class Member's full name, current mailing address, and telephone number; (c) contain a statement by the Class Member that he or she believes themself to be a member of the Settlement Class; (d) include proof that the Class Member is a member of the Settlement Class (e.g., copy of the settlement notice, copy of the original notice of the Data Breach); (e) identify the specific factual and legal grounds for the objection; (f) identify whether the Objection is an objection to the Settlement in part or in whole; (g) state whether the objection applies only to the objector, a subset of the Settlement Class, or the entire Settlement Class; (h) identify all counsel representing the Class Member, if any; (i) include a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past five (5) years; (j) include all documents or writings that the Class Member desires the Court to consider; (k) contain a statement regarding whether the Class Member (or counsel of his or her choosing) intends to appear at the Final Approval Hearing; and (l) contain the signature of the Class Member or the Class Member's duly authorized attorney or representative. All objections must be submitted to the Settlement Administrator, Class Counsel identified below, and to the Court either by mailing them to: Clerk, Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan 48226, or by filing them in person at the Courthouse. All objections must be filed or postmarked on or before the Objection Deadline, as set forth above. Any Class Member who does not make their objections in the manner and by the date set forth in this paragraph shall be deemed to have waived any objections and shall be forever barred from raising such objections in this or any other action or proceeding, absent further order of the Court. Without limiting the foregoing, any challenge to the Settlement Agreement, the Order Granting Preliminary Approval of the Class Action Settlement Agreement, and the Final Approval Order and Judgment shall be pursuant to appeal under the applicable rules of appellate procedure and not through a collateral attack.

7.      **SETTLEMENT ADMINISTRATION**

7.1     <u>Submission of Claims</u>.

(a)     <u>Submission of Electronic and Hard Copy Claims</u>. Class Members may submit electronically verified Claim Forms to the Settlement Administrator through the Settlement Website or may download Claim Forms to be filled out, signed, and submitted physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline. The Settlement Administrator shall reject any Claim Forms that are incomplete, inaccurate, or not timely received and will provide Claimants notice and the ability to cure defective claims, unless otherwise noted in this Agreement.

(b)     <u>Review of Claim Forms</u>. The Settlement Administrator will review Claim Forms submitted by Class Members to determine whether they are eligible for a Settlement Payment.

7.2     <u>Settlement Administrator's Duties</u>.

(a)     <u>Cost Effective Claims Processing</u>. The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Agreement by processing Claim Forms in a rational, responsive, cost effective, and timely manner, and calculate Settlement Payments in accordance with this Agreement.

(b)     <u>Dissemination of Notices</u>. The Settlement Administrator shall disseminate the Notice Plan as provided for in this Agreement.

(c)     <u>Maintenance of Records</u>. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and Wright & Filippis's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. Upon request, the Settlement Administrator shall provide Class Counsel and Wright & Filippis's Counsel with information concerning Notice, administration, and implementation of the Settlement. Without limiting the foregoing, the Settlement Administrator also shall:

(i)      Receive Requests for Exclusion from Class Members and provide Class Counsel and Wright & Filippis's Counsel a copy thereof no later than five (5) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion or other requests from Class Members after expiration of the Opt-Out Period, the Settlement Administrator shall promptly

20

provide copies thereof to Class Counsel and Wright & Filippis's Counsel;

(ii) Provide weekly reports to Class Counsel and Wright & Filippis's Counsel that include, without limitation, reports regarding the number of Claim Forms received, the number of Claim Forms approved by the Settlement Administrator, the amount of Claims Forms received (including a breakdown of what types of claims were received and approved), and the categorization and description of Claim Forms rejected by the Settlement Administrator. The Settlement Administrator shall also, as requested by Class Counsel or Wright & Filippis's Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

(iii) Make available for inspection by Class Counsel and Wright & Filippis's Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice;

(iv) Cooperate with any audit by Class Counsel or Wright & Filippis's Counsel, who shall have the right but not the obligation to review, audit, and evaluate all Claim Forms for accuracy, veracity, completeness, and compliance with the terms and conditions of this Agreement.

7.3 <u>Requests For Additional Information</u>: In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Class Member who submits a Claim Form.

## 8. SERVICE AWARDS

8.1 Class Representatives and Class Counsel may seek Service Awards to the Class Representatives of up to $1,500 (One Thousand Five Hundred Dollars) per Class Representative. Class Counsel may file a motion seeking Service Awards for the Class Representatives on or before fourteen (14) days prior to the Objection Deadline.

8.2 The Settlement Administrator shall pay the Service Awards approved by the Court to the Class Representatives from the Settlement Fund. Such Service Awards shall be paid by the Settlement Administrator, in the amount approved by the Court, within five (5) Business Days after the Effective Date.

8.3 In the event the Court declines to approve, in whole or in part, the payment of the Service Award in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the

amount of the Service Award shall constitute grounds for cancellation or termination of this Agreement.

8.4    The Parties did not discuss or agree upon the amount of the maximum amount of Service Awards for which Class Representatives can apply for, until after the substantive terms of the Settlement had been agreed upon.

## 9.    ATTORNEYS' FEES, COSTS, AND EXPENSES

9.1    Class Counsel may file a motion seeking an award of attorneys' fees of up to (33 1/3%) (thirty-three and one-third percent) of the Settlement Fund, and, separately, reasonably incurred litigation expenses and costs (i.e., Fee Award and Costs), no later than fourteen (14) days prior to the Objection Deadline. The motion for a Fee Award and Cost shall be posted on the Settlement Website. The Settlement Administrator shall pay any attorneys' fees, costs, and expenses awarded by the Court to Class Counsel in the amount approved by the Court, from the Settlement Fund, within five (5) Business Days after the Effective Date.

9.2    Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst themselves.

9.3    The Settlement is not conditioned upon the Court's approval of an award of Class Counsel's Fee Award and Costs or Service Awards.

## 10.    EFFECTIVE DATE, MODIFICATION, AND TERMINATION

10.1    The Effective Date of the Settlement shall be the first day after all of the following conditions have occurred:

(a)    Wright & Filippis and Class Counsel execute this Agreement;

(b)    The Court enters the Preliminary Approval Order attached hereto as **Exhibit E**, without material change;

(c)    Notice is provided to the Settlement Class consistent with the Preliminary Approval Order;

(d)    The Court enters the Final Approval Order and Judgment attached hereto as **Exhibit B** and **Exhibit C**, respectively, without material change; and

(e)    The Final Approval Order and Judgment have become "Final" because: (i) the time for appeal, petition, rehearing or other review has expired; or (ii) if any appeal, petition, request for rehearing or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired.

22

10.2  In the event that the Court declines to enter the Preliminary Approval Order, declines to enter the Final Approval Order and Judgment, or the Final Approval Order and Judgment does not become Final (as described in Paragraph 10.1(e) of this Agreement), Wright & Filippis may at its sole discretion terminate this Agreement on five (5) Business Days written notice from Wright & Filippis's Counsel to Class Counsel.

10.3  In the event the terms or conditions of this Settlement Agreement are materially modified by any court, any Party in its sole discretion to be exercised within fourteen (14) days after such modification may declare this Settlement Agreement null and void. In the event of a material modification by any court, and in the event the Parties do not exercise their unilateral options to withdraw from this Settlement Agreement pursuant to this Paragraph, the Parties shall meet and confer within seven (7) days of such ruling to attempt to reach an agreement as to how best to effectuate the court-ordered modification. For the avoidance of doubt, a "material modification" shall not include any reduction by the Court of the Fee Award and Costs and/or Service Awards.

10.4  Except as otherwise provided herein, in the event the Settlement is terminated, the Parties to this Agreement, including Class Members, shall be deemed to have reverted to their respective status in the Action immediately prior to the execution of this Agreement, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In addition, the Parties agree that in the event the Settlement is terminated, any orders entered pursuant to the Agreement shall be deemed null and void and vacated and shall not be used in or cited by any person or entity in support of claims or defenses.

10.5  In the event this Agreement is terminated pursuant to any provision herein, then the Settlement proposed herein shall become null and void (with the exception of 10.5, and 10.6 herein) and shall have no legal effect, and the Parties will return to their respective positions existing immediately before the execution of this Agreement.

10.6  Notwithstanding any provision of this Agreement, in the event this Agreement is not approved by any court, or terminated for any reason, or the Settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur (collectively, a "Termination Event"), Class Members, Plaintiffs, and Class Counsel shall not in any way be responsible or liable for any of the Administrative Expenses, or any expenses, including costs of notice and administration associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs. In the event of a Termination Event, then (a) this Settlement Agreement shall be null and void and of no force and effect; (b) the Settlement Fund and any and all interest earned thereon, less monies expended toward settlement administration, will be returned to Defendant within 10 days after the date the Settlement Agreement becomes null and void; and (c) any release shall be of no force or effect. In such event, unless the Parties can negotiate a modified settlement agreement, the Action will revert to the status that existed before the Settlement Agreement's execution date; the Parties will each be returned to their respective procedural postures in the litigation, and neither the Settlement Agreement nor any facts

23

concerning its negotiation, discussion or terms will be admissible in evidence for any purpose in the Action (or in any other litigation).

## 11.    NO ADMISSION OF WRONGDOING OR LIABILITY

11.1    This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to the Agreement:

(a)    shall not be offered or received against Wright & Filippis as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by Wright & Filippis with respect to the truth of any fact alleged by any Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of Wright & Filippis;

(b)    shall not be offered or received against Wright & Filippis as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Wright & Filippis;

(c)    shall not be offered or received against Wright & Filippis as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against Wright & Filippis, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

(d)    shall not be construed against Wright & Filippis as an admission or concession that the consideration to be given hereunder represents the relief that could be or would have been awarded after trial; and

(e)    shall not be construed as or received in evidence as an admission, concession or presumption against the Class Representatives or any Class Member that any of their claims are without merit, or that any defenses asserted by Wright & Filippis have any merit.

## 12.    REPRESENTATIONS

12.1    Each Party represents that: (i) such Party has full legal right, power, and authority to enter into and perform this Agreement, subject to Court approval; (ii) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly

authorized by such Party; (iii) this Agreement constitutes a valid, binding, and enforceable agreement; and (iv) no consent or approval of any person or entity is necessary for such Party to enter into this Agreement.

13. **NOTICE**

13.1    All notices to Class Counsel provided for in this Agreement shall be sent by email (to all email addresses set forth below) and by First-Class mail to all of the following:

>**THE MILLER LAW FIRM**
>E. Powell Miller
>950 W. University Drive, Suite 300
>Rochester, MI 48307
>epm@millerlawpc.com
>
>*Chair of Settlement Class Counsel*
>
>**MIGLIACCIO & RATHOD LLP**
>Nicholas A. Migliaccio
>412 H. St. NE, Suite 302
>Washington, DC 20002
>T: (202) 470-3520
>nmigliaccio@classlawdc.com
>
>*Settlement Class Counsel*
>
>**SHUB & JOHNS LLC**
>Benjamin F. Johns
>Four Tower Bridge,
>200 Barr Harbor Drive, Ste 400
>Conshohocken, PA 19428
>bjohns@shublawyers.com
>
>*Settlement Class Counsel*
>
>**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
>Gary M. Klinger
>227 W. Monroe Street, Suite 2100
>Chicago, IL 60606
>T: (866) 252-0878
>gklinger@milberg.com
>*Settlement Class Counsel*

13.2    All notices to Wright & Filippis or Wright & Filippis's Counsel provided for in this Agreement shall be sent by email and First Class mail to the following:

Allan S. Rubin
**JACKSON LEWIS P.C.**
2000 Town Center
Suite 1650
Southfield, MI 48075
Allan.rubin@jacksonlewis.com

13.3    All notices to the Settlement Administrator provided for in this Agreement shall be sent by email and First Class mail to the following address:

Epiq Class Action & Claims Solutions, Inc.
P.O. Box: *To Be Determined*
Address: *To Be Determined*
Email: *To Be Determined*

13.4    The notice recipients and addresses designated in this Section may be changed by written notice.

## 14.    MISCELLANEOUS PROVISIONS

14.1    <u>Representation by Counsel</u>. The Class Representatives and Wright & Filippis represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and have been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein.

14.2    <u>Best Efforts</u>. The Parties agree that they will make all reasonable efforts needed to reach the Effective Date and fulfill their obligations under this Agreement.

14.3    <u>Contractual Agreement</u>. The Parties understand and agree that all terms of this Agreement, including the Exhibits thereto, are contractual and are not a mere recital, and each signatory warrants that he, she, or it is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that they or it represents.

14.4    <u>Integration</u>. This Agreement constitutes the entire agreement among the Parties and no representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

14.5    <u>Drafting</u>. The Parties agree that no single Party shall be deemed to have drafted this Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentum*. This Settlement Agreement is a collaborative effort of the Parties and their attorneys that was negotiated on an arm's-length basis between parties of equal bargaining power. Accordingly, this Agreement shall be neutral, and no ambiguity shall be construed in favor of or against any of the Parties. The

26

Parties expressly waive any otherwise applicable presumption(s) that uncertainties in a contract are interpreted against the party who caused the uncertainty to exist.

14.6    Modification or Amendment. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the persons who executed this Agreement or their successors-in-interest.

14.7    Waiver. The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

14.8    Severability. Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

14.9    Successors. This Settlement Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the Parties thereto.

14.10   Survival. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

14.11   Governing Law. All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the State of Michigan, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

14.12   Interpretation.

  (a)    Definitions apply to the singular and plural forms of each term defined.

  (b)    Definitions apply to the masculine, feminine, and neuter genders of each term defined.

  (c)    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

14.13   No Precedential Value. The Parties agree and acknowledge that this Agreement carries no precedential value.

14.14   Fair and Reasonable. The Parties and their counsel believe this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties,

27

and have arrived at this Agreement as a result of arm's-length negotiations with the assistance of an experienced mediator.

14.15   <u>Retention of Jurisdiction</u>. The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.

14.16   <u>Headings</u>. Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

14.17   <u>Exhibits</u>. The exhibits to this Agreement and any exhibits thereto are an integral and material part of the Settlement. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

14.18   <u>Counterparts and Signatures</u>. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts. Digital signatures shall have the same force and effect as the original.

14.19   <u>Facsimile and Electronic Mail</u>. Transmission of a signed Agreement by facsimile or electronic mail shall constitute receipt of an original signed Agreement by mail.

14.20   <u>No Assignment</u>. Each Party represents and warrants that such Party has not assigned or otherwise transferred (via subrogation or otherwise) any right, title or interest in or to any of the Released Claims.

14.21   <u>Deadlines</u>. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next Business Day. All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

14.22   <u>Dollar Amounts</u>. All dollar amounts are in United States dollars, unless otherwise expressly stated.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their duly authorized counsel:

(signatures on following page(s))

28

**THE MILLER LAW FIRM**

Dated: , 2023

_____
E. Powell Miller
*Proposed Chair of Settlement Class Counsel*

**MIGLIACCIO & RATHOD LLP**

Dated: , 2023

_____
Nicholas A. Migliaccio
*Proposed Settlement Class Counsel*

**SHUB & JOHNS LLC**

Dated: , 2023

_____
Benjamin F. Johns
*Proposed Settlement Class Counsel*

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**

Dated: , 2023

_____
Gary M. Klinger
*Proposed Settlement Class Counsel*

**JACKSON LEWIS P.C.**

Dated: , 2023

_____
Allan S. Rubin

*Counsel for Defendant, Wright & Filippis*

29

**THE MILLER LAW FIRM**

Dated:   10/13/2023

_____
E. Powell Miller
*Proposed Chair of Settlement Class Counsel*

**MIGLIACCIO & RATHOD LLP**

Dated:   10/13/2023

_____
Nicholas A. Migliaccio
*Proposed Settlement Class Counsel*

**SHUB & JOHNS LLC**

Dated:   10/13/2023

_____
Benjamin F. Johns
*Proposed Settlement Class Counsel*

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**

Dated:   10/13/2023

*/s/ Gary M. Klinger*
_____
Gary M. Klinger
*Proposed Settlement Class Counsel*

**JACKSON LEWIS P.C.**

Dated:

_____
Allan S. Rubin

*Counsel for Defendant, Wright & Filippis*

# Exhibit A

**CLAIM FORM FOR WRIGHT & FILIPPIS DATA BREACH BENEFITS**
*In re Wright & Filippis, LLC Data Security Breach Litigation*,
Case No. 2:22-cv-12908-SFC-EAS (E.D. Mich.)

---

COMPLETE AND SIGN THIS FORM AND FILE ONLINE NO LATER THAN **[DUE DATE]**
AT **www.xxxxxxxxxx.com** OR FILE BY MAIL POSTMARKED BY **[due date].**

*You **must** use this form to make a claim for a Documented Loss Payment, Credit Monitoring and Insurance Services, or for a Cash Fund Payment.*

Questions? Call 1-888-xxx-xxxx or visit the website, www.xxxxxxxxx.com

---

## CLASS MEMBER INFORMATION

Full Name: _____

Mailing Address: _____

City: _____ State: _____ ZIP: _____

Telephone Number: _____

Email Address: _____
(This field is required to receive free credit monitoring. If provided, we will also communicate with you about your claim primarily by email.)

Unique Claim Form Identifier: _____

*Failure to add your Unique Claim Form Identifier will result in denial of your claim.  If you received a notice of this Settlement by U.S. mail, your Unique Claim Form Identifier is on the envelope or postcard. If you misplaced your notice, please contact the claim administrator at* 1-888-xxx-xxxx or [email address].

## SETTLEMENT OVERVIEW

Compensation for a Documented Loss Payment: Settlement Class Members who submit a valid and timely Claim Form are eligible to receive reimbursement of up to $5,000 per Settlement Class Member a Documented Loss Payment that is reasonably traceable to the Data Breach. These Documented Losses include: (a) unreimbursed losses relating to fraud or identity theft; (b) professional fees including attorneys' and accountants' fees, and fees for credit repair services; (c) costs associated with freezing or unfreezing credit with any credit reporting agency; (d) credit monitoring costs that were incurred on or after November 18, 2022, that you attest were caused or otherwise incurred as a result of the Data Breach; and (e) miscellaneous expenses such as notary, data charges (if charges based on the

1

amount of data used), fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges. You must submit documentation of the Documented Losses as part of your Documented Loss Payment claim. This may include receipts or other documentation and may not be "self-prepared." "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity or support to other submitted documentation.

<u>Credit Monitoring and Insurance Services</u>: In the alternative to the Documented Loss Payment or the Cash Fund Payment, Settlement Class Members may elect to claim three (3) years of 3-credit bureau credit monitoring and $1 million in identity theft insurance, irrespective of whether they took advantage of any previous offering of credit monitoring from Wright & Filippis.

<u>Cash Fund Payment</u>: In the alternative to the Documented Loss Payment or the CMIS benefit, Class Members may submit a claim to receive a pro rata Settlement Payment in cash ("Cash Fund Payment"). Class Members who submit a Claim for a Cash Fund Payment will not be entitled to select any of the other Settlement Benefits.

**<u>Failure to provide all required information will result in your claim being rejected by the <u>Settlement Administrator.</u></u>**

> 1.  Did you receive a notice that your information may have been impacted in the Wright & Filippis Data Breach?
>     Yes ☐ (*Proceed to Question 2*) No ☐ (*You are not eligible to submit a claim if you were not sent a notice from Wright & Filippis concerning the Data Breach. If you are not certain whether you were sent that notice, please contact the claim administrator at 1-888-xxx-xxxx or [email address]. )*

**<u>You may select *yes* for only ONE of the following options below:</u>**

**CLAIM FOR REIMBURSEMENT FOR A DOCUMENTED LOSS PAYMENT**

| |
|---|
| 2. Do you wish to receive Reimbursement for a Documented Loss Payment?<br>Yes ☐  No ☐ (*Please proceed to Question 3)* |

| Loss Type<br>(Check all that apply) | Date of Loss | Amount of Loss | Description of Expense or Money Spent and Supporting Documents<br>(Identify what you are attaching and why it is related to the Data Breach) |
|---|---|---|---|
| ☐ Unreimbursed losses relating to fraud or identity theft | | | |
| ☐ Professional fees including attorneys' and accountants' fees, and fees for credit repair services | | | |
| ☐ Costs associated with freezing or unfreezing credit with any credit reporting agency | | | |

| Loss Type (Check all that apply) | Date of Loss | Amount of Loss | Description of Expense or Money Spent and Supporting Documents (Identify what you are attaching and why it is related to the Data Breach) |
|---|---|---|---|
| ☐ Credit monitoring costs that were incurred on or after November 18, 2022, that you attest were caused or otherwise incurred as a result of the Data Breach | | | |
| ☐ Miscellaneous expenses such as notary, data charges (if charged based on the amount of data used), fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges | | | |

## CLAIM FOR CREDIT MONITORING AND INSURANCE SERVICES

3. Do you wish to receive three (3) years of three-bureau credit monitoring?
Yes ☐ *(Please include your email address on the first page)* No ☐ *(Please proceed to Question 4)*

## CLAIM FOR A CASH FUND PAYMENT

4. Do you wish to receive a Cash Fund Payment?
Yes ☐ *(Please include your mailing  address on the first page)* No ☐

**CERTIFICATION AND SIGNATURE**

By submitting this Claim Form, I certify that I am a Settlement Class Member and am eligible to make a claim in this settlement and that the information provided in this Claim Form and any attachments is true and correct. I do hereby swear (or affirm), under penalty of perjury, that the information provided above is true and accurate to the best of my knowledge and that any cash compensation or benefits I am claiming are based on losses or expenses I reasonably believe, to the best of my knowledge, were incurred as a result of the Data Breach.

I understand that this claim may be subject to audit, verification, and Court review and that the Settlement Administrator may require supplementation of this Claim or additional information from me. I also understand that all claim payments are subject to the availability of settlement funds and may be reduced, depending on the type of claim and the determinations of the Settlement Administrator.

Name:           _____

Signature:      _____

Date:           _____

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

|  |  |
|---|---|
| IN RE WRIGHT & FILIPPIS, LLC DATA SECURITY BREACH LITIGATION | Case No.: 2:22-cv-12908-SFC<br><br>Hon. Sean F. Cox<br><br>JURY TRIAL DEMANDED |

## <u>ORDER GRANTING FINAL APPROVAL</u>

WHEREAS, on [*month day, year*], a Preliminary Approval Order was entered by the Court preliminarily approving the proposed Settlement pursuant to the terms of the Parties' Settlement Agreement, and directing that Notice be given to the Settlement Class.

WHEREAS, pursuant to the notice requirements set forth in the Settlement Agreement and in the Preliminary Approval Order, the Settlement Class was notified of the terms of the proposed Settlement, of the right of members of the Settlement Class to object or opt-out, and of the right of members of the Settlement Class to be heard at a Final Approval Hearing to determine, *inter alia*: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release of the claims contemplated by the Settlement Agreement; and (2) whether

the Final Approval Order and Judgment should be entered dismissing this Action with prejudice;

WHEREAS, a Final Approval Hearing was held on [*month day, year*]. Settlement Class Members were notified of their right to appear at the Final Approval Hearing in support of or in opposition to the proposed Settlement, the award of attorney's fees, costs, and expenses to Class Counsel, and requested Service Awards to Class Representatives.

NOW, THEREFORE, the Court having heard the presentation of Settlement Class Counsel and counsel for Defendant, having reviewed all of the submissions presented with respect to the proposed Settlement, having determined that the Settlement is fair, reasonable, and adequate, having considered the application for attorney's fees, expenses, and costs made by Settlement Class Counsel and the application for Service Awards to the Class Representatives, and having reviewed the materials in support thereof, and good cause appearing:

**THIS COURT FINDS AND ORDERS AS FOLLOWS:**

1.     This Final Approval Order hereby incorporates by reference the definitions in the Settlement Agreement and all terms used herein, except as otherwise expressly defined herein, shall have the same meanings as set forth in the Settlement Agreement.

2.     For purposes only of the settlement of the Released Claims as to the Released Parties set forth in the Settlement Agreement (the "Settlement"), the Court hereby finally certifies the Settlement Class, as defined in the Court's [*month day, year*] Preliminary Approval Order. ECF No. [*xx*]. Based on the record, the Court reconfirms the applicable provisions of Rule 23 of the Federal Rules of Civil Procedure have been satisfied for purposes only of the Settlement.

3.     In so holding, the Court finds that, solely for purposes of settlement, the Settlement Class meets all of the applicable requirements of Fed. R. Civ. P. 23(a) and (b)(3).

4.     The Court hereby finds, in the specific context of this Settlement, that: (i) the Settlement Class is so numerous that joinder of all Settlement Class Members is impracticable, Fed. R. Civ. P. 23(a)(l); (ii) common questions of law and fact exist with regard to the Settlement Class, Fed. R. Civ. P. 23(a)(2); (iii) Plaintiffs' claims in this litigation are typical of those of Settlement Class Members, Fed. R. Civ. P. 23(a)(3); and (iv) Plaintiffs' interests do not conflict with, and are coextensive with, those of absent Settlement Class Members, all of whose claims arise from the identical factual predicate, and Plaintiffs and Settlement Class Counsel have adequately represented the interests of all Settlement Class Members, Fed. R. Civ. P. 23(a)(4).

5.     The Court also finds that common issues of fact and law predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Fed. R. Civ. P. 23(b)(3).

6.     This Court has personal jurisdiction over Plaintiffs, Wright & Filippis, LLC (in this Action only and for purposes of this Settlement), and all Settlement Class Members and subject matter jurisdiction over the Action to approve the Settlement Agreement and all exhibits attached thereto under 28 U.S.C. § 1332(d)(2).

7.     The Court finds that the Class Notice, website, and Notice Plan implemented pursuant to the Settlement Agreement and the Court's Preliminary Approval Order: (a) constituted the best practicable notice; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of this Action, of their right to exclude themselves from or object to the proposed Settlement, of their right to appear at the Final Approval Hearing, of Plaintiffs Counsel's application for an award of attorneys' fee and expenses, and of Plaintiffs' application for a Service Award associated with the Action; (c) provided a full and fair opportunity to all Settlement Class Members to be heard with respect to the foregoing matters; and (d) met all applicable

requirements of Federal Rule of Civil Procedure 23, due process, and any other applicable rules or law.

8.     There are [*xx*] objections and [*xx*] request for exclusion (i.e., opt-outs) to the Settlement. Any Settlement Class Members who timely and properly opted out from the settlement are identified in Exhibit [*xx*].

9.     The Settlement Class, which will be bound by this Final Approval Order, shall include all members of the Settlement Class who did not submit timely and valid requests to be excluded from the Settlement Class.

10.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally approves the Settlement, as set forth in the Settlement Agreement.

11.    This Court finds that the Settlement meets all requirements of Rule 23(e) of the Federal Rules of Civil Procedure and is, in all respects, fair, reasonable and adequate, and in the best interests of the Settlement Class, including Plaintiffs.

12.    This Court further finds that the Settlement set forth in the Settlement Agreement is the result of arm's-length negotiations between experienced counsel representing the interests of the Parties, that Settlement Class Counsel and Plaintiffs adequately represented the Settlement Class for the purpose of entering into and implementing the Settlement Agreement, that the relief provided for the Settlement Class is adequate, and that the Settlement Agreement treats Settlement Class Members equitably relative to each other.

13.   Accordingly, the Settlement embodied in the Settlement Agreement is hereby approved in all respects. The Parties are hereby directed to carry out the Settlement Agreement in accordance with all of its terms and provisions, including the termination provisions.

14.   Notwithstanding the entry of this Final Approval Order, if the Settlement Agreement is validly terminated by Plaintiffs or Wright & Filippis, LLC, is disapproved or materially modified in whole or in part by the Court, any appellate court, or any other court of review, or does not become final, then the provisions of this Final Approval Order dismissing Plaintiffs' claims shall be null and void with respect to such Settlement; Plaintiffs' claims shall be reinstated; Wright & Filippis, LLC's defenses shall be reinstated; the certification of the Settlement Class and final approval of the proposed Settlement, and all actions associated with them, including but not limited to any requests for exclusion from the Settlement previously submitted and deemed to be valid, shall be vacated and be of no force and effect; the Settlement Agreement, including its exhibits, and any and all negotiations, documents, and discussions associated with it and the releases set forth herein, shall be without prejudice to the rights of any Party, and of no force or effect; and the Parties shall be returned to their respective positions as of the Execution Date of the Settlement Agreement. Notwithstanding the language in this Paragraph, any provision(s) in the Settlement Agreement that the Parties have agreed shall survive

its termination shall continue to have the same force and effect intended by the Parties.

15.     The Escrow Account defined in the Settlement Agreement shall be established as a trust and as a fiduciary account (the "Settlement Fiduciary Account"). The Court approves the establishment of the Settlement Fiduciary Account under the Settlement Agreement as a qualified settlement fund pursuant to Section 468B of the Internal Revenue Code of 1986, and the Treasury Regulations promulgated thereunder.

16.     Without affecting the finality of the Final Approval Order for purposes of appeal, the Court reserves exclusive jurisdiction over the implementation and enforcement of the Settlement Agreement and the Settlement contemplated thereby and over the enforcement of this Final Approval Order. The Court also retains exclusive jurisdiction over the Settlement, the Settlement Agreement, enforcement of Court orders relating to the Settlement and the Settlement Agreement, and the administration and consummation of the Settlement.

17.     In addition, without affecting the finality of this Final Approval Order, Plaintiffs, Wright & Filippis, LLC, and the Settlement Class hereby irrevocably submit to the exclusive jurisdiction of the U.S. District Court for the Eastern District of Michigan for any suit, action, proceeding, or dispute arising out of or relating to this Final Approval Order or the Settlement Agreement. Any disputes involving

Plaintiffs, Wright & Filippis, LLC, or Settlement Class Members concerning the implementation of the Settlement Agreement shall be submitted to the Court.

18.    Each Settling Class Member must execute a release and covenant not to sue in conformity with the Settlement Agreement, set forth in the Claim Form and Release, in order to receive any Settlement Relief defined in the Settlement Agreement. Notwithstanding the foregoing, each Settling Class Member's claim shall be released pursuant to Section 4 of the Settlement Agreement, regardless of whether the Settling Class Member executes a release and covenant not to sue pursuant to this paragraph.

19.    The Court hereby confirms the appointment of The Miller Law Firm, P.C. as Chair of Settlement Class Counsel, and Migliaccio & Rathod LLP, Shub & Johns LLC, and Milberg Coleman Bryson Phillips Grossman, PLLC as Settlement Class Counsel.

20.    The Court hereby confirms the appointment of Plaintiffs Chiquita Braggs, Scott Hamilton, Diane Huff, Shawn Kolka, and Craig Mejia as Class Representatives.

21.    The Court hereby confirms the appointment of Epiq Class Action & Claims Solutions, Inc. and/or its affiliate Hilsoft Notifications as Settlement Administrator.

22.    The Court hereby approves the Releasing Parties' release of their

Released Claims as set forth in the Settlement Agreement and this Final Approval

Order as of the Effective Date.[1]

23.    As of the Effective Date as defined in the Settlement Agreement, the

release set forth in the Settlement Agreement shall be binding upon Plaintiffs, the

Settlement Class, and the Releasing Parties as to Wright & Filippis, LLC and the

Released Parties.

24.    The Court declares that the Settlement Agreement and the Final

Approval Order shall be binding on, and shall have *res judicata* and preclusive effect

in, all pending and future lawsuits or other proceedings against Wright & Filippis,

LLC involving Released Claims(s), and shall also be binding on the Releasing

Parties and their respective successors and assigns, regardless of whether the

---

[1]    The release under the Settlement Agreement, Section 4, provides as follows:
Upon the Effective Date, and in consideration of the Settlement Benefits described
herein, the Class Representatives and all Class Members identified in the settlement
class list in accordance with Section 6.4, on behalf of themselves, their heirs, assigns,
executors, administrators, predecessors, and successors, and any other person
purporting to claim on their behalf, release and discharge all Released Claims,
including Unknown Claims, against each of the Released Parties and agree to refrain
from instituting, directing or maintaining any lawsuit, contested matter, adversary
proceeding, or miscellaneous proceeding against each of the Released Parties that
relates to the Data Breach or otherwise arises out of the same facts and circumstances
set forth in the class action complaint in this Action. This Settlement releases claims
against only the Released Parties. This Settlement does not release, and it is not the
intention of the Parties to this Settlement to release, any claims against any third
party. Nor does this Release apply to any Class Member who timely excludes
himself or herself from the Settlement.

Releasing Party previously initiated or subsequently initiates individual litigation or other proceedings involving the Released Claims, and even if such Releasing Party never received actual notice of the Action or the Settlement.

25.    The Court permanently bars and enjoins Releasing Parties from: (a) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction against Wright & Filippis, LLC or any of the Released Parties based on the Released Claims; (b) filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Members (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), against Wright & Filippis, LLC or any of the Released Parties based on the Released Claims; or (c) organizing Settlement Class Members into a separate group, class, or subclass for purposes of pursuing as a purported class action any lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) against Wright & Filippis, LLC or any of the Released Parties based on the Released Claims.

26.    Neither the Settlement Agreement (nor its exhibits), whether or not it shall become final, nor any negotiations, documents exchanged among Class

Counsel and Wright & Filippis, LLC in connection with settlement discussions, and discussions associated with them, nor the Final Approval Order and Final Judgment are or shall be deemed or construed to be an admission, adjudication, or evidence of: (a) any violation of any statute or law or of any liability or wrongdoing by Wright & Filippis, LLC or any Released Party; (b) the truth of any of the claims or allegations alleged in the Action; (c) the incurrence of any damage, loss, or injury by any Person; or (d) the propriety of certification of a class other than solely for purposes of the Settlement. Further, the Settlement negotiations, including any documents exchanged among Settlement Class Counsel and Wright & Filippis, LLC and any discussions associated with them, may not be discoverable, offered or received in evidence, or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding of any nature, by any Person, except if warranted by existing law in connection with a dispute under the Settlement Agreement or an action (including this Action) in which the Settlement Agreement is asserted as a defense.

27.    The Parties, without the need for approval from the Court, may adopt such amendments, modifications, and expansions of the Settlement Agreement and all exhibits thereto as (i) shall be consistent in all material respects with the Final Approval Order; and (ii) do not limit the rights of Settling Class Members.

28.     Any data or other information provided by Settlement Class Members in connection with the submission of claims shall be held in strict confidence, available only to the Settlement Administrator, Class Counsel, Wright & Filippis, LLC's Counsel and experts or consultants acting on behalf of the Settlement Class. In no event shall a Settlement Class Member's data or personal information be made publicly available, except as provided for herein or upon Court Order for good cause shown.

29.     The Claim Form and Release referenced in the Settlement Agreement in Section 7.1(a) & exhibit A thereto is approved as fair, reasonable, and adequate.

30.     Settlement Class Counsel's request for attorneys' fees and expenses and Plaintiffs' application for Service Awards shall be the subject of a separate order by the Court.

31.     Should any remaining amount of the Net Settlement Fund be economically not distributable, the Parties shall petition the Court for permission to distribute the remaining funds to an approved non-profit recipient, providing the Court with details of the proposed non-profit recipient.

**SO ORDERED** this _____ day of _____, _____.


                                        _____
                                        HON. SEAN F. COX
                                        United States District Judge

# Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE WRIGHT & FILIPPIS, LLC DATA SECURITY BREACH LITIGATION | Case No.: 2:22-cv-12908-SFC<br>Hon. Sean F. Cox<br><br>JURY TRIAL DEMANDED |

## FINAL JUDGMENT AND ORDER OF DISMISSAL

After conducting a final approval hearing on [*month day, year*], the Court granted Plaintiffs' motion for final approval of the Class Action Settlement with Wright & Filippis, LLC, and Plaintiffs' motion for an award of attorney's fees, costs, and payment of Service Awards to the Settlement Class Representatives. Judgment is hereby **ENTERED**.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1. This Final Judgment hereby incorporates by reference the definitions in the Settlement Agreement with Wright & Filippis, LLC dated [*month day, year*] (the "Settlement Agreement"), and all terms used herein, except as otherwise expressly defined herein, shall have the same meanings as set forth in the Settlement Agreement.

1

2.     The Court finds that it has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) to enter this Final Judgment and that it has personal jurisdiction over Plaintiffs, Wright & Filippis, LLC (in this Action only and for purposes of this Settlement), and all Settlement Class Members.

3.     Upon the Settlement Agreement becoming effective in accordance with its terms, all of the following claims shall be released. Specifically, per Section 4 of the Settlement Agreement:

> Upon the Effective Date, and in consideration of the Settlement Benefits described herein, the Class Representatives and all Class Members identified in the settlement class list in accordance with Section 6.4, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Data Breach or otherwise arises out of the same facts and circumstances set forth in the class action complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement.

4.     The Action and all Released Claims against Wright & Filippis, LLC and the Released Parties are hereby dismissed with prejudice and without fees or costs, other than as specified in the Settlement Agreement, including those costs of

Notice and administration; Service Awards to the Class Representatives; and Attorneys' Fee Award and Costs.

5.      The Court, finding no just reason for delay, directs pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that the judgment of dismissal as to Hope College shall be final and entered forthwith.

**SO ORDERED** this _____ day of _____, _____.

_____
HON. SEAN F. COX
United States District Judge

# Exhibit D

# If you were notified of a Data Breach occurring on or about January 26 to January 28, 2022 involving Wright & Filippis, you may be entitled to benefits from a settlement.

*A federal court has authorized this Notice.*
*This is <u>not</u> a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit against Wright & Filippis, LLC ("W&F" or "Defendant") regarding a ransomware-type cybersecurity attack on W&F's network and computer systems (the "Data Breach"), that potentially resulted in unauthorized access to names, dates of birth, patient numbers, social security numbers, driver's license numbers or state ID financial account numbers, and/or medical health insurance information (the "Private Information") of Settlement Class Members.

- You are a "Settlement Class Member" if you were mailed a notice letter notifying you that your Private Information was potentially compromised in the Data Breach that occurred on or about January 26 to January 28, 2022.

- Settlement Class Members can submit a Claim Form for one of the following:

  1. **Documented Loss Payment:** Reimbursement of up to $5,000 in the form of a Documented Loss Payment related to the Data Breach; or

  2. **Credit Monitoring and Insurance Services ("CMIS"):** Three (3) years of 3-credit bureau credit monitoring and $1 million in identity theft insurance, irrespective of whether they took advantage of any previous offering of credit monitoring from Wright & Filippis; or

  3. **Cash Fund Payment:** A pro rata Settlement Payment in cash ("Cash Fund Payment"). Class Members who submit a Claim for a Cash Fund Payment will not be entitled to select any of the other Settlement Benefits.

**This Notice may affect your rights. Please read it carefully.**

| Your Legal Rights and Options | | Deadline |
|---|---|---|
| **Submit a Claim Form** | To get Settlement benefits for a Documented Loss Payment, Credit Monitoring and Insurance Services, or a Cash Fund Payment, you must submit a Claim Form. You do <u>not</u> need to submit a Claim Form to receive Automatic Benefits. | **-DATE-** |
| **Exclude Yourself** | Get no Settlement benefits. Keep your right to file your own lawsuit against the Defendant about the legal claims in this case. | **-DATE-** |
| **Object** | Tell the Court why you do not like the Settlement. You will still be bound by the Settlement if the Court approves it. | **-DATE-** |
| **Do Nothing** | Get no Settlement benefits. Be bound by the Settlement. | |

**Questions? Go to www.xxxxxxxxxx.com or call 1-888-XXX-XXXX**

- These rights and options, **and the deadlines to exercise them**, are explained in this Notice.

- The Court in charge of this case must still decide whether to approve the Settlement and the requested attorneys' fees and costs. No Settlement benefits or payments will be provided unless the Court approves the Settlement and it becomes final.

**BASIC INFORMATION** ................................................................................**PAGE 4**
    1.  Why is this Notice being provided?
    2.  What is this lawsuit about?
    3.  Why is the lawsuit a class action?
    4.  Why is there a Settlement?

**WHO IS INCLUDED IN THE SETTLEMENT?** ................................................**PAGE 5**
    5.  How do I know if I am part of the Settlement?
    6.  Are there exceptions to being included in the Settlement?
    7.  What if I am still not sure whether I am part of the Settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY**................................**PAGE 5**
    8.  What does the Settlement provide?
    9.  What am I giving up to receive Settlement benefits or stay in the Settlement Class?
    10. What are the Released Claims?

**HOW TO GET BENEFITS FROM THE SETTLEMENT**......................................**PAGE 6**
    11. How do I make a claim for Settlement benefits?
    12. What happens if my contact information changes after I submit a claim?
    13. When will I receive my Settlement benefits?

**THE LAWYERS REPRESENTING YOU** .........................................................**PAGE 7**
    14. Do I have a lawyer in this case?
    15. How will Class Counsel be paid?

**OPTING OUT FROM THE SETTLEMENT** .......................................................**PAGE 8**
    16. How do I get out of the Settlement?
    17. If I opt out, can I get anything from the Settlement?
    18. If I do not opt out, can I sue the Defendant for the same thing later?

**OBJECTING TO THE SETTLEMENT**.............................................................**PAGE 8**
    19. How do I tell the Court that I do not like the Settlement?
    20. What is the difference between objecting and asking to opt out?

**THE FINAL FAIRNESS HEARING** ..............................................................**PAGE 10**
    21. When and where will the Court decide whether to approve the Settlement?
    22. Do I have to attend the Final Fairness Hearing?
    23. May I speak at the Final Fairness Hearing?

**IF YOU DO NOTHING** ...........................................................................**PAGE 11**
    24. What happens if I do nothing at all?

**GETTING MORE INFORMATION**................................................................**PAGE 11**
    25. How do I get more information?

**Questions? Go to www.xxxxxxxxxx.com or call 1-888-XXX-XXXX**

# BASIC INFORMATION

### 1.   Why is this Notice being provided?

A federal court authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval to the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

The Honorable Sean F. Cox and Magistrate Elizabeth A. Stafford of the United States District Court of the Eastern District of Michigan are overseeing this class action. The case is known as *In Re Wright & Filippis, LLC Data Security Breach Litigation*, Case No. 2:22-cv-12908-SFC-EAS (E.D. Mich.) (the "Litigation"). The people who filed this lawsuit are called the "Plaintiffs" or "Representative Plaintiffs" and the company sued, Wright & Filippis, LLC, is called "W&F" or the "Defendant."

### 2.   What is this lawsuit about?

The Plaintiffs allege that on or about January 26 to January 28, 2022, an unauthorized user launched a ransomware-type cybersecurity attack on W&F's network and computer systems (the "Data Breach"), which potentially resulted in unauthorized access to names, dates of birth, patient numbers, social security numbers, driver's license numbers or state ID financial account numbers, and/or medical health insurance information (the "Private Information") of Settlement Class Members.

The Defendant denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing, or that any law has been violated. The Defendant denies these and all other claims made in the Litigation. By entering into the Settlement, the Defendant is not admitting any wrongdoing.

### 3.   Why is the lawsuit a class action?

In a class action, Representative Plaintiffs sue on behalf of all people who have similar claims. Together, all these people are called a Settlement Class or Settlement Class Members. One court resolves the issues for all Settlement Class Members, except for those Settlement Class Members who timely exclude themselves (opt out) from the Settlement Class.

The Representative Plaintiffs in this case are Chiquita Braggs, Scott Hamilton, Diane Huff, Shawn Kolka, and Craig Mejia.

### 4.   Why is there a settlement?

Plaintiffs and the Defendant do not agree about the claims made in this Litigation. The Litigation has not gone to trial, and the Court has not decided in favor of the Plaintiffs or the Defendant. Instead, Plaintiffs and the Defendant have agreed to settle the Litigation. Plaintiffs and the attorneys for the Settlement Class ("Class Counsel") believe the Settlement is best for all Settlement Class Members because of the Settlement benefits and the risks and uncertainty associated with continued litigation and the nature of the defenses raised by the Defendant.

# WHO IS INCLUDED IN THE SETTLEMENT?

**5.   How do I know if I am part of the settlement?**

You are a Settlement Class Member if you were mailed a notice letter notifying you that your Private Information was potentially compromised in the Data Breach that occurred on or about January 26 to January 28, 2022.

**6.   Are there exceptions to being included in the settlement?**

Yes. Excluded from the Settlement Class are (1) Defendant and its respective officers and directors; (2) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (3) the Judge assigned to evaluate the fairness of the settlement; and (4) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, abiding or abetting the criminal activity occurrence of the Data Breach or who pleads *nolo contendere* (a legal term that means "I do not wish to contend") to any such charge

**7.   What if I am not sure whether I am part of the settlement?**

If you are still not sure whether you are a Settlement Class Member, you may go to the Settlement website at www.xxxxxxxxxx.com or call the Claims Administrator's toll-free number at 1-888-xxx-xxxx.

# THE SETTLEMENT BENEFITS – WHAT YOU GET IF YOU QUALIFY

**8.   What does the settlement provide?**

If you are a Settlement Class Member, you may be able to recover the following Claimed Benefits as part of the Settlement:

**CLAIMED BENEFITS:**

All Settlement Class Members must submit a valid and timely Claim Form to receive any or all of the following Claimed Benefits:

## 1. **Documented Loss Payment**

Settlement Class Members who submit a valid and timely Claim Form are eligible to receive reimbursement of up to $5,000 per Settlement Class Member for their Documented Loss that is reasonably traceable to the Data Breach.

These Documented Losses include:
(1) Unreimbursed losses relating to fraud or identity theft;
(2) Professional fees including attorneys' and accountants' fees, and fees for credit repair services;
(3) Costs associated with freezing or unfreezing credit with any credit reporting agency;
(4) Credit monitoring costs that were incurred on or after November, 18, 2022, that you attest were caused or otherwise incurred as a result of the Data Breach; and
(5) Miscellaneous expenses such as notary, data charges (if charged based on the amount of data used) fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges.

You must submit documentation of the Documented Losses as part of your Documented Loss Payment Claim. This may include receipts or other documentation and may not be "self-prepared." "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity or support to other submitted documentation.

**2.   Credit Monitoring and Insurance Services ("CMIS")**

**In the alternative to the Documented Loss Payment or the Cash Fund Payment, class members may elect to claim three years of CMIS to be provided by a vendor agreed upon by the parties.** The CMIS benefit will provide at a minimum three credit bureau monitoring services and $1 million in identity theft insurance. Said CMIS benefits will be available to class members irrespective of whether they took advantage of any previous offering of credit monitoring from Wright & Filippis. Individuals who elected to utilize a previous offering of CMIS from Wright & Filippis, or who obtained CMIS services from another provider as a result of the Data Breach, will be permitted to postpone activation of their CMIS settlement benefit for up to 12 months.

**3.   Cash Fund Payment**

**In the alternative to the Documented Loss Payment or the CMIS benefit, Class Members may submit a claim to receive a pro rata Settlement Payment in cash ("Cash Fund Payment").** The amount of each Cash Fund Payment shall be calculated by dividing the remaining Net Settlement Funds by the number of valid claims submitted for Cash Fund Payments, after the CMIS benefit and the Document Loss Payments have been made. Class Members who submit a Claim for a Cash Fund Payment will not be entitled to select any of the other Settlement Benefits.

**9.   What are the Released Claims?**

The Settlement Agreement in **Sections 4, 1.36 and 1.37** describes the Release, Released Claims, and Released Parties in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.xxxxxxxx.com or in the public Court records on file in this lawsuit. For questions regarding the Releases or Released Claims and what the language in the Settlement Agreement means, you can also contact one of the lawyers listed **in Questions 14 & 19** of this Notice for free, or you can talk to your own lawyer at your own expense.

**10. What are the Released Claims?**

The Settlement Agreement in **Sections 4, 1.36 and 1.37** describes the Release, Released Claims, and Released Parties in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.xxxxxxxx.com or in the public Court records on file in this lawsuit. For questions regarding the Releases or Released Claims and what the language in the Settlement Agreement means, you can also contact one of the lawyers listed **in Questions 14 & 19** of this Notice for free, or you can talk to your own lawyer at your own expense.

# HOW TO GET BENEFITS FROM THE SETTLEMENT

**11. How do I make a claim for Settlement Benefits?**

Questions? Go to www.xxxxxxxxx.com or call 1-888-XXX-XXXX

6

To submit a claim for reimbursement for a Documented Loss Payment, CMIS, or Cash Fund Payment, you must timely submit a valid Claim Form. Settlement Class Members seeking benefits under the Settlement must complete and submit a Claim Form to the Claims Administrator, postmarked or submitted online on or before MONTH, DAY, YEAR. Claim Forms may be submitted online at **www.xxxxxxxxxx.com** or printed from the Settlement website and mailed to the Claims Administrator at the address on the form. The quickest way to submit a claim is online. Claim Forms are also available by calling 1-888-xxx-xxxx or by writing to:

Epiq Class Action & Claims Solutions, Inc.
Address: xxxxxxxx

**12. What happens if my contact information changes after I submit a claim?**

If you change your mailing address after you submit a Claim Form, it is your responsibility to inform the Claims Administrator of your updated information. You may notify the Claims Administrator of any changes by calling 1-888-xxx-xxxx or by writing to:

Epiq Class Action & Claims Solutions, Inc.
Address: xxxxxxxx

**13. When will I receive my Settlement benefits?**

If you file a timely and valid Claim Form, payment will be provided by the Claims Administrator after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check **www.xxxxxxxxx.com** for updates.

# THE LAWYERS REPRESENTING YOU

**14. Do I have a lawyer in this case?**

Yes, the Court has appointed The Miller Law Firm, P.C. as Chair of Class Counsel and Migliaccio & Rathod LLP, Shub & Johns LLC, and Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own layer at your own cost and expense if you want someone other than Class Counsel to represent you in this litigation.

**15. How will Class Counsel be paid?**

Class Counsel will file a motion asking the Court to award attorneys' fees and costs not to exceed (1/3) of the Settlement Fund, or approximately **$966,666.66.** They will also ask the Court to approve service awards for up to $1,500 to each of the  Class Representatives for participating in this Litigation and for their efforts in achieving the Settlement. If awarded by the Court, attorneys' fees and costs and the service awards will be paid out of the Settlement Fund. The Court may award less than these amounts.

Class Counsel's application for attorneys' fees, costs, and service awards will be made available on the Settlement website at www.xxxxxxxxx.com before the deadline for you to comment or object to the Settlement.

## OPTING OUT FROM THE SETTLEMENT

If you are a Settlement Class Members and want to keep any right you may have to sue or continue to sue the Defendant on your own based on the claim raised in this Litigation or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from or "opting out" of the Settlement.

### 16. How do I get out of the Settlement?

To opt out of the Settlement, you must mail a written notice of intent to opt out. The written notice must be signed, include your name and address, and clearly state that you wish to be excluded from the Settlement Class.

The opt-out request must be **postmarked** and set to the Claims Administrator at the following address by MONTH, DAY, 202X:

Epiq Class Action & Claims Solutions, Inc.
Address: xxxxxxxx

You cannot exclude yourself by telephone or by email.

### 17. If I opt out, can I get anything from the Settlement?

No. If you opt out, you give up any right to sue the Defendant and Released Parties for the claims this Settlement resolves and Releases relating to the Data Breach. You must opt out of this Litigation to start or continue with your own lawsuit or be part of any other lawsuit against the Defendant or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

### 18. If I do not opt out, can I sue the Defendant for the same thing later?

No. Unless you opt out, you give up any right to sue the Defendant and Released Parties for the claims this Settlement resolves and Releases relating to the Data Breach. You must opt out of this Litigation to start or continue with your own lawsuit or be part of any other lawsuit against the Defendant or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECTING TO THE SETTLEMENT

### 19. How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member, you can tell the Court you do not agree with all or any part of the Settlement or requested attorneys' fees and costs. You can also give reasons why you think the Court should not approve the Settlement or attorneys' fees and costs. To object, you must file timely written notice as provided below no later than **-DATE-**, stating you object to the Settlement. The objection must include all the following additional information:

(1) Your full name and address;
(2) The case name and docket number, *In Re Wright & Filippis, LLC Data Security Breach Litigation*, Case No. 2:22-cv-12908-SFC-EAS (E.D. Mich.);

(3) Information identifying you as a Settlement Class Member, including proof that you are a member of the Settlement Class (e.g., copy of your settlement notice, copy of original notice of the Data Breach, or a statement explaining why you believe you are a Settlement Class Member);

(4) A written statement of all reasons for the objection, accompanied by any legal support for the objection you believe is applicable;

(5) The identity of any and all counsel representing you in connection with the objection;

(6) A statement whether you and/or your counsel will appear at the Final Fairness Hearing; and

(7) Your signature or the signature of your duly authorized attorney or other duly authorized representative (if any) representing you in connection with the objection.

To be timely, written notice of an objection in the appropriate form containing the case name and docket number (*In Re Wright & Filippis, LLC Data Security Breach Litigation*, Case No. 2:22-cv-12908-SFC-EAS (E.D. Mich.)) must be filed with the Court by **-DATE-**, with copies to Class Counsel and Counsel for Defendant.

| Court | Class Counsel | Counsel for Defendant |
|---|---|---|
| Hon. Sean F. Cox<br>United States District Court<br>Eastern District of Michigan<br>Theodore Levin U.S.<br>Courthouse<br>231 W. Lafayette Blvd.,<br>Detroit, Michigan 48226 | The Miller Law Firm, P.C<br>950 W. University Dr., Ste. 300<br>Rochester, MI 48307<br>*Chair of Settlement Class Counsel*<br><br>Migliaccio & Rathod LLP<br>412 H. St. NE, Suite 302<br>Washington, DC 20009<br>*Settlement Class Counsel*<br><br>Shub & Johns LLP<br>Four Tower Bridge,<br>200 Barr Harbor Drive, Ste 400<br>Conshohocken, PA 19428<br>*Settlement Class Counsel*<br><br>Milberg Coleman Bryson Phillips<br>Grossman, PLLC<br>227 W. Monroe Street, Ste 2100<br>Chicago, IL 60606<br>Tel: 866-247-0047<br>gklinger@milberg.com<br>*Settlement Class Counsel* | Allan S. Rubin<br>Marlo Johnson Roebuck<br>Daniel C. Waslawski<br>Jackson Lewis P.C.<br>2000 Town Center,<br>Ste. 1650<br>Southfield, MI 48075 |

Any Settlement Class Member who fails to comply with the requirements for objecting in Section 6 of the Settlement Agreement waives and forfeits any and all rights they may have to appear separately and/or to object to the Settlement Agreement and will be bound by all the

terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation.

The objector or his or her counsel may also file Objections with the Court through the Court's Electronic Claims Filing system, with service on Proposed Settlement Class Counsel and Defendant's Counsel made through the Electronic Claims Filing system. For all objections mailed to Proposed Settlement Class Counsel and counsel for Defendant, Settlement Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement.

## 20. What is the difference between objecting and asking to opt out?

Objecting is simply telling the Court you do not like something about the Settlement or requested attorneys' fees and costs. You can object only if you stay in the Settlement Class (meaning you do not opt out of the Settlement). Opting out of the Settlement is telling the Court you do not want to be part of the Settlement Class or the Settlement. If you opt out, you cannot object to the Settlement.

# THE FINAL FAIRNESS HEARING

## 21. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Fairness Hearing on -DATE-, at -TIME- before Judge Sean F. Cox and Magistrate Elizabeth A. Stafford, at United State District Court, Eastern District of Michigan, United States Post Office Bldg., 1000 Washington Ave., Room 214, Bay City, MI 48708.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsels' application for attorneys' fees, costs and expenses, and the service awards to the Plaintiff. If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

Note: The date and time of the Final Fairness Hearing are subject to change. The Court may also decide to hold the hearing via Zoom or by phone. Any change will be posted at **www.W&FSettlement.com.**

## 22. Do I have to attend the Final Fairness Hearing?

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to come to Court to discuss it. As long as you timely file or mail your written objection, the Court will consider it.

## 23. May I speak at the Final Fairness Hearing?

Yes, as long as you do not exclude yourself (opt out), you can (but do not have to) participate and speak for yourself in this Litigation and Settlement. This is called making an appearance. You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself. If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed in Question 19 above—and specifically include a statement whether you and your counsel will appear at the Final Fairness Hearing.

# IF YOU DO NOTHING

**24. What happens if I do nothing at all?**

If you are a Settlement Class Member and you do nothing, you will not receive any Settlement benefits. You will give up rights explained in the "Opting Out from the Settlement" section of this Notice, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendant, the Related Entities, or any of the Released Persons about the legal issues in this Litigation that are released by the Settlement Agreement relating to the Data Breach.

# GETTING MORE INFORMATION

**25. How do I get more information?**

This notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.xxxxxxx.com, by calling 1-888-xxx-xxxx, or by writing to:

Epiq Class Action & Claims Solutions, Inc.
Address: xxxxxxxx

**PLEASE DO NOT TELEPHONE THE COURT OR
THE COURT'S CLERK OFFICE REGARDING THIS NOTICE.**

# Exhibit E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| IN RE WRIGHT & FILIPPIS, LLC DATA SECURITY BREACH LITIGATION | Case No.: 2:22-cv-12908-SFC <br> Hon. Sean F. Cox <br><br><br> JURY TRIAL DEMANDED |

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVIDING NOTICE

This case is before the Court on Plaintiffs Chiquita Braggs's, Scott Hamilton's, Diane Huff's, Shawn Kolka's, and Craig Mejia's (collectively, "Plaintiffs") Unopposed Motion for Preliminary Approval of the Class Action Settlement (the "Motion"). The Court, having considered the Motion, the supporting brief, the Parties' Settlement Agreement dated October 13, 2023 (the "Settlement Agreement"), attached hereto as Exhibit 1; the proposed Long Form Notice, Short Form Notice, and Claim Form (attached as Exhibits A, B, and C, respectively, to the Settlement Agreement); the pleadings and other papers filed in this Action; and the statements of counsel and the Parties, and for good cause shown.

**IT IS HEREBY ORDERED** as follows:

**<u>Preliminary Approval of Settlement Agreement</u>**

1.    Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

2.    This Court has jurisdiction over the Litigation, Plaintiffs, all Settlement Class Members, Defendant Wright & Filippis, LLC ("W&F" or "Defendant"), and any party to any agreement that is part of or related to the Settlement.

3.    The Court finds that the proposed Settlement set forth in the Settlement Agreement is sufficiently fair, reasonable and adequate such that it is hereby preliminary approved and notice of the settlement should be provided to the Settlement Class Members and that a hearing shall be held as set forth below.

**<u>Class Certification</u>**

4.    Solely for purposes of the Settlement, the Court conditionally certifies the following class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) ("Settlement Class"):

> All natural persons whose Private Information was compromised in the Data Breach, including all individuals who were sent the Notice of Data Privacy Incident on or around November 18, 2022.

5.    Excluded from the Settlement Class are: (i) Defendant and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court

of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

6.    Subject to final approval of the Settlement, the Court finds and concludes for settlement purposes only that the prerequisites to a class action, set forth in Fed. R. Civ. P. 23(a) and (b), are satisfied in that:

a.  The Settlement Class is so numerous that joinder of all members is impracticable;

b.  There are questions of law of fact common to the Settlement Class;

c.  Plaintiffs and Class Counsel (as defined below) fairly and adequately represent that Settlement Class;

d.  The claims of Plaintiffs are typical of those of Settlement Class Members;

e.  Common issues predominate over any individual issues affecting the members of the Settlement Class;

f.  Plaintiffs fairly and adequately protect and represent the interests of all members of the Settlement Class, and Plaintiffs' interests are aligned with the interests of all other members of the Settlement Class; and

g.  Settlement of the Litigation on a class-action basis is superior to other means of resolving this matter.

7.      The Court appoints The Miller Law Firm P.C. as Chair of Settlement Class Counsel and Migliaccio & Rathod LLP, Shub & Johns LLP, and Milberg Coleman Bryson Phillips Grossman, PLLC as Settlement Class Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

8.      The Court hereby appoints Chiquita Braggs, Scott Hamilton, Diane Huff, Shawn Kolka, and Craig Mejia as the Class Representatives for settlement purposes only on behalf of the Settlement Class.

**<u>Notice to Settlement Class Members</u>**

9.      Pursuant to Federal Rule of Civil Procedure 23(e), the Court approves the Long Form Notice and the Short Form Notice (the "Settlement Notices"), attached as Exhibits A and B, respectively, to the Settlement Agreement and attached to this Order as Exhibit 1, and finds that the dissemination of the Settlement Notices substantially in the manner and form set forth in §§ 6.1-6.3 of the Settlement Agreement attached as Exhibit 1 to this Order complies fully with the requirements of the Federal Rule of Civil Procedure 23 and due process of law, and is the best notice practicable under the circumstances.

10.    The Court further approves the Claim Form, substantially similar to Exhibit C to the Settlement Agreement attached as Exhibit 1 to this Order, which will be available both on the Settlement Website and by request.

11.    The notice procedures described above are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

12.    The Court hereby orders that, within five (5) days of entry of this Order, W&F shall provide to the Claims Administrator the contact information of Settlement Class Members, including names and physical addresses, that is currently in W&F's possession.

13.    No later than thirty-five (35) days from the date of this Order preliminarily approving the Settlement ("Notice Commencement Date"), Class Counsel shall cause the Claims Administrator to send via U.S. mail the Short Form Notice to each Settlement Class member and shall cause to be published the Long Form Notice, thereby making it available to the rest of the Settlement Class as stated in the proposed Notice Plan.

14.     Contemporaneously with seeking Final Approval of the Settlement, Class Counsel and W&F shall cause to be filed with the Court an appropriate affidavit or declaration from the Claims Administrator with respect to complying with the Notice Plan.

15.     All costs incurred in disseminating and otherwise in connection with the Settlement Notices shall be paid from the Settlement Fund.

16.     The Settlement Notices and Claim Form satisfy the requirements of due process and of Rule 23(e) of the Federal Rules of Civil Procedure and thus are approved for dissemination to the Settlement Class. The Claim Form shall be made available to the Settlement Class as set forth on the Notice Plan and shall be made available to any potential Class Member that requests one.

### Responses by Settlement Class Members and the Scheduling of the Final Approval Hearing

17.     Settlement Class Members may opt-out or object up to sixty (60) days from the Notice Commencement Date (the "Opt-Out Deadline").

18.     Any members of the Settlement Class who or that wishes to be excluded ("opt out") from the Settlement Class must send a written request to the designated Post Office Box established by the Claims Administrator postmarked on or before the Opt-Out Deadline. Members of the Settlement Class may not opt-out of the Settlement by submitting requests to opt-out as a group or class, but must in each instance individually and personally sign and submit an opt-out request. All

Settlement Class Members that opt-out of the Settlement will not be eligible to receive any benefits under the Settlement, will not be bound by any further orders or judgments entered for or against the Settlement Class, and will preserve their ability to independently pursue any claims they may have against W&F.

19.    Any member of the Settlement Class who does not properly and timely opt-out of the Settlement shall, upon entry of the Order and Final Judgment, be bound by all the terms and provisions of the Settlement Agreement and Release, whether or not such Settlement Class Member objected to the Settlement and whether or not such Settlement Class Member received consideration under the Settlement Agreement.

20.    The Court adopts the following schedule for the remaining events in this case, which ensures that the appropriate state and federal officials are served with the notification required by the Class Action Fairness Act:

| Event | Date |
|---|---|
| W&F provides CAFA Notice required by 28 U.S.C. § 1715(b) | Within 10 days after the filing of this Motion |
| W&F to provide contact information for Settlement Class Members | Within 5 days after entry of Preliminary Approval Order |
| Notice Program commences | Within 35 days after entry of Preliminary Approval Order |
| Notice Program concludes | Within 45 days after entry of Preliminary Approval Order |

| Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d): | 90 days after the appropriate governmental offices are served with CAFA notice |
|---|---|
| Postmark deadline for request for exclusion (opt-out) or objections: | 60 days after commencement of Notice Program |
| Deadline to file Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards: | No later than 14 days prior to the deadline for request for exclusion (opt-out) or objections |
| Deadline to file Plaintiffs' Motion for Final Approval of the Settlement Agreement | No later than 14 days prior to the Final Fairness Hearing |
| Postmark/Filing deadline for members of the Class to file claims | 90 days after commencement of the Notice Program |
| Deadline for Plaintiffs to file any Response to Objections or Supplement to Motion for Final Approval | No later than 7 days prior to the Final Fairness Hearing |
| Deadline for Claims Administrator to file or cause to be filed, if necessary, a supplemental declaration with the Court | At least 5 days prior to the Final Fairness Hearing |
| Final Approval Hearing | To be set by the Court and held at the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, MI 48226 in Courtroom ____ and/or by virtual attendance, details of which to be provided before the Final Approval Hearing on the Settlement Website. |

21.    A hearing on the Settlement (the "Final Approval Hearing") shall be

held before this Court on a date set by the Court.

22.     At the Final Approval Hearing, the Court will consider (a) the fairness, reasonableness, and adequacy of the proposed class Settlement and whether the Settlement should be granted final approval by the Court; (b) dismissal with prejudice of the Litigation; (c) entry of an order including the Release; (d) entry of the Final Approval Order; and (e) entry of final judgment in this Litigation. Class Counsel's application for award of attorney's fees and costs, and request for the Court to award a service award to the named Plaintiffs, shall also be heard at the time of the hearing.

23.     The date and time of the Final Approval Hearing shall be subject to adjournment by the Court without further notice to the members of the Settlement Class, other than that which may be posted by the Court. Should the Court adjourn the date for the Final Approval Hearing, that shall not alter the deadlines for mailing and publication of notice, the Opt-Out deadline, or the deadlines for submissions of settlement objections, claims, and notices of intention to appear at the Final Approval Hearing unless those dates are explicitly changed by subsequent Order. The Court may also decide to hold the hearing via zoom or telephonically. Instructions on how to appear at the Final Approval Hearing will be posted on the Settlement Website.

24.     Any person or entity who or which does not elect to be excluded from the Settlement Class may, but need not, enter an appearance through its own

attorney. Settlement Class Members that do not timely object or opt out and that do not have an attorney enter an appearance on their behalf will be represented by Class Counsel.

25.     Any person or entity who or which does not elect to be excluded from the Settlement Class may object to the proposed Settlement. Any Settlement Class Member may object to, among other things, (a) the proposed Settlement, (b) entry of Final Approval Order and the judgment approving the Settlement, (c) Class Counsel's application for fees and expenses, or (d) the service award request, by mailing a written objection, with a postmark date no later than the Objection Date, to Class Counsel and W&F's counsel. The Settlement Class Member making the objection (the "Objector") or his or her counsel may also file an objection with the Court through the Court's Electronic Court Filing ("ECF") system, with service on Class Counsel and W&F's Counsel made through the ECF system. For all objections mailed to Class Counsel and counsel for W&F, Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement.

26.     The Objector's objection must be either (1) filed with the Court no later than sixty (60) days after the Notice Commencement Date or (2) mailed to Class Counsel and W&F's counsel, with a postmark date of no later than sixty (60) days after the Notice Commencement Date. To be valid, the objection must include: (i) the Objector's full name and address; (ii) the case name and docket number, *In Re*

10

*Wright & Filippis, LLC Data Security Breach Litigation*, Case No. 2:22-cv-12908-SFC-EAS (E.D. Mich.); (iii) information identifying the Objector as a Settlement Class Member, including proof that the Objector is a member of the Settlement Class (e.g., copy of the Objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining why the Objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the Objector believes applicable; (v) the identity of any and all counsel representing the Objector in connection with the objection; (vi) a statement whether the Objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the Objector's signature or the signature of the Objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.

27.    Only Settlement Class Members that have filed and served valid and timely notices of objection shall be entitled to be heard at the Final Approval Hearing. Any Settlement Class Member who does not timely file and serve an objection in writing in accordance with the procedure set forth in the Class Notice and mandated in this Order shall be deemed to have waived any objection to (a) the Settlement; (b) the Release; (c) entry of Final Approval Order or any judgment; (d) Class Counsel's application for fees, costs, and expenses; and/or (e) the service

award request for the named Plaintiffs, whether by appeal, collateral attack, or otherwise.

28.    Settlement Class Members need not appear at the hearing or take any other action to indicate their approval of the Settlement.

29.    Upon entry of the Order and Final Judgment, all members of the Settlement Class that have not personally and timely requested to be excluded from the Settlement Class will be enjoined from proceeding against W&F with respect to all of the Released Claims.

30.    W&F shall cause to be prepared and sent all notices that are required by the Class Action Fairness Act of 2005 ("CAFA") as specified in 28 U.S.C. § 1715. The costs associated with providing notice under CAFA shall be paid from the Settlement Fund.

31.    Class Counsel and counsel for W&F shall cooperate promptly and fully in the preparation of such notices, including providing W&F with any and all information in its possession necessary for the preparation of these notices. W&F shall provide, or cause to be provided, courtesy copies of the notices to Class Counsel for the purpose of implementing the settlement. W&F shall provide notice to Class Counsel of compliance with the CAFA requirements within ten (10) days of providing notice to Attorneys General under CAFA.

## Administration of the Settlement

32.     The Court hereby appoints the claims administrator proposed by the parties, Epiq Class Action & Claims Solutions, Inc. ("Claims Administrator"). Responsibilities of the Claims Administrator shall include: (a) establishing a post office box for purposes of communicating with Settlement Class Members; (b) disseminating notice to the Class; (c) developing a website to enable Settlement Class Members to access documents; (d) accepting and maintaining documents sent from Settlement Class Members relating to claims administration; and (e) distributing settlement checks to Settlement Class Members. Pursuant to the Settlement Agreement, the Claims Administrator and costs of administration shall be paid from the Settlement Fund.

33.     In the event the Settlement Agreement and the proposed Settlement are terminated in accordance with the applicable provisions of the Settlement Agreement—the Settlement Agreement, the proposed Settlement, and all related proceedings shall, except as expressly provided to the contrary in the Settlement Agreement, become null and void, shall have no further force and effect, and Settlement Class Members shall retain all of their current rights to assert any and all claims against W&F and any other Released Entity, and W&F and any other Released Entities shall retain any and all of their current defenses and arguments thereto (including but not limited to arguments that the requirements of Fed. R. Civ.

13

P. 23(a) and (b)(3) are not satisfied for purposes of continued litigation). The Litigation shall thereupon revert forthwith to its respective procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

34.    Neither this Order nor the Settlement Agreement nor any other settlement-related document nor anything contained herein or therein or contemplated hereby or thereby nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by W&F as to the validity of any claim that has been or could have been asserted against it or as to any liability by it as to any matter set forth in this Order, or as to the propriety of class certification for any purposes other than for purposes of the current proposed Settlement.

**IT IS SO ORDERED.**


Dated: _____          _____
                                    The Honorable Sean F. Cox
                                    United States District Court Judge

14

# Exhibit F

**<u>Court Approved Legal Notice</u>**
**Case No. 22-cv-12908**
**United States District Court**
**For the Eastern District of Michigan**

### As a Result of the WRIGHT & FILIPPIS DATA BREACH, You Can Get Cash or Credit Monitoring and Insurance Services to Protect Your Information.

*This is <u>not</u> a solicitation from a lawyer.*

### This is NOT a Claim Form.

### For more information about the Settlement and how to file a Claim Form visit or call:

www.xxxxxxxxxx.com

1-888-xxx-xxxx

*In Re Wright & Filippis, LLC Data Security Breach Litigation*
P.O. Box _____
_____, __ _____

Forwarding Service Requested

Postal Service: Please do not mark barcode
Claim No.:

[CLAIMANT INFO]

---

A settlement has been reached in a class action lawsuit against Wright & Filippis, LLC. regarding a ransomware-type malware attack (the "Data Breach") on Wright & Filippis's network and computer systems that potentially resulted in unauthorized access to Social Security numbers, names, addresses, dates of birth, driver's license numbers, client identification numbers, medical diagnostic and treatment information, and health insurance information (the "Private Information") of Settlement Class Members.

**<u>Who is Included?</u>** The Court decided that Class Members include means all natural persons who are residents of the United States whose Personal Information was compromised in the Data Breach disclosed by Wright & Filippis on or about November 18, 2022, including all who were sent notice of the Data Breach.

**<u>What does the Settlement Provide?</u>** The Settlement establishes a $2,900,000 Settlement Fund to be used to pay for Credit Monitoring and Insurance Services, Documented Loss Payments for reimbursement of Documented Losses, or Cash Fund Payments to valid claimants; costs of Notice and administration; Service Awards to the Class Representatives; and Fee Award and Costs. Also, Wright & Filippis has agreed to undertake certain remedial measures and enhanced data security measures. Claimants may select **one** of the following forms of Settlement relief: (a) Credit Monitoring and Insurance Services, OR (b) Documented Loss Payments, OR (c) a Cash Fund Payment, as described below:

- **<u>Credit Monitoring and Insurance Services</u>** – three years of Credit Monitoring and Insurance Services; OR
- **<u>Documented Loss Payments</u>** – reimbursement for certain Documented Losses, i.e., money spent or lost, that is more likely than not related to the Wright & Filippis Data Breach (up to $5,000), not otherwise reimbursable by insurance; OR
- **<u>Cash Fund Payments</u>** –a cash payment. The Cash Fund Payments may be increased or reduced pro rata depending on the number of Class Members that participate in the Settlement.

**<u>How To Get Benefits:</u>** You must complete and file a Claim Form online or by mail postmarked by **Month XX, 202x**, including required documentation. You can file your claim online at **<u>www.xxxxxxxxxx.com</u>**. You may also get a paper Claim Form at the website, or by calling the toll-free number, and submit by mail.

**<u>Your Other Options.</u>** If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month XX, 202x**. If you do not exclude yourself, you will release any claims you may have against Wright & Filippis or Released Parties (as defined in the Settlement Agreement) related to the Wright & Filippis Data Breach, as more fully described in the Settlement Agreement, available at the settlement website. If you do not exclude yourself, you may object to the Settlement by **Month XX, 202x**.

**<u>The Final Approval Hearing.</u>** The Court has scheduled a hearing in this case (*In re Wright & Filippis Data Security Litig.*, Case No. 22-cv-12908, United States District Court for the Eastern District of Michigan) for **Month XX, 202x**, to consider: whether to approve the Settlement, Service Awards, attorneys' fees and expenses, as well as any objections. You or your attorney may attend and ask to appear at the hearing, but you are not required to do so. The hearing may be held remotely, so please check the settlement website for those details.

**More Information.** Complete information about your rights and options, as well as the Claim Form, the Long Form Notice, and Settlement Agreement are available at **<u>www.xxxxxxxxxx.com</u>**, or by calling toll free 1-888-xxx-xxxx.

# Exhibit 2

# THE MILLER LAW FIRM

## A Professional Corporation

**950 W. University Dr., Ste. 300**
**Rochester, MI  48307**
**(248) 841-2200**

**www.millerlawpc.com**

# THE MILLER LAW FIRM, P.C. | FIRM RESUME

The Miller Law Firm, P.C. (the "Firm") is one of the premier litigation law firms in the United States and Michigan's leading class action firm.  A recognized leader in the area of complex commercial litigation, the Firm is ranked Tier 1 in Detroit by *U.S. News-Best Lawyers* "Best Law Firms" for commercial litigation.  Since the Firm's founding in 1993, the Firm has developed a national reputation for successfully prosecuting securities fraud and consumer class actions on behalf of its clients.  As Lead Counsel or Co-Lead Counsel appointed by judges throughout the United States in some of the country's largest and most complex cases, the Firm has achieved over $5 billion in settlements, recoveries and/or verdicts on behalf of injured class members.

### **<u>Highlights of Results Obtained</u>**

2023        *Cooper (nee Zimmerman) v. The 3M Company and Wolverine*
            (United States District Court, Western District of Michigan)
            (Case No. 1:17-cv-01062) (Co-Lead Counsel)

            Result:  $54 million settlement

            *Reynolds v. FCA*
            (United States District Court, Eastern District of Michigan)
            (Case No. 2:19-cv-11745) (Co-Lead Counsel)

            Result:  Over $30 million settlement value

            *Kain v. The Economist Newspaper NA, Inc.*
            (United States District Court, Eastern District of Michigan)
            (Case No. 4:21-cv-11807) (Co-Lead Counsel)

            Result:  $9.5 million settlement

            *Ketover v. Kiplinger Washington Editors, Inc.*
            (United States District Court, Eastern District of Michigan)
            (Case No. 1:21-cv-12987) (E. Powell Miller, Phil Fraietta, Joe Marchese, Frank Hedin)

            Result:  $6.8 million settlement

            *Moeller v. The Week Publications, Inc.*
            (United States District Court, Eastern District of Michigan)
            (Case No. 1:22-cv-10666) (E. Powell Miller, Phil Fraietta, Joe Marchese, Frank Hedin)

            Result:  $5.1 million settlement

*Thomsen v. Morley*
(United States District Court, Eastern District of Michigan)
(Case No. 1:22-cv-10271) (Plaintiffs' Executive Committee)

Result: $4.3 million settlement

2022    *In re; National Prescription Opiate Litigation (CVS, Walgreens and Walmart retail pharmacy and two manufacturers Allergan and Teva)*
(United States District Court, Northern District Ohio, MDL Court)
(Case No. 1:17-md-2804) (Represented several Michigan counties who were parties to and benefited from the global settlement)

Result: $50 billion global settlement

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*,
(United States District Court, District of Kansas)
(Case No. 2:17-md-02785) (Plaintiffs' Steering Committee)

Result: $609 million in settlements

*Wood, et al. v. FCA US LLC*
(United States District Court, Eastern District of Michigan)
(Case No. 5:20-cv-11054) (Co-Lead Counsel)

Result: Over $108 million settlement value

*Persad, et al. v. Ford Motor Company*
(United States District Court, Eastern District of Michigan)
(Case No. 2:17-cv-12599) (Co-Lead Counsel)

Result: Over $42 million settlement value

*Loftus v. Outside Integrated Media, LLC*
(United States District Court, Eastern District of Michigan)
(Case No. 2:21-cv-11809) (Co-Lead Counsel)

Result: Approximately $1 million settlement

*Graham, et al. v. University of Michigan, et al.*,
(United States District Court, Eastern District of Michigan)
(Case No. 2:21-cv-11168) (Co-Lead Counsel)

Result: Injunctive relief settlement mandating University reforms to address and prevent sexual misconduct

John Doe MC-1 v. University of Michigan, et. al.
(United States District Court, Eastern District of Michigan)
(Case No. 2:20-cv-10568) (Represented several victims of sexual
abuse in private, confidential settlement)

Result:  Confidential settlement

2021      *In re; National Prescription Opiate Litigation (Distributor and
          Manufacturer Janssen Pharmaceuticals Settlement)*
          (United States District Court, Northern District of Ohio, MDL Court)
          (Case No. 1:17-md-2804) (Represented several Michigan counties
          who were parties to and benefited from the global settlement.)

          Result:  $26 billion global settlement

          *Simmons, et al. v. Apple, Inc.*
          (Superior Court of the State of California, County of Santa Clara)
          (Case No. 17CV312251) (Co-Lead Counsel)

          Result:  $9.75 million settlement

          *Dougherty v Esperion Therapeutics, Inc., et. Al.*
          (United States District Court, Eastern District of Michigan)
          (Case No. 2:16-cv-10089) (Local Counsel)

          Result:  $18.25 million settlement

          *In re Broiler Chicken Antitrust Litigation*
          (United States District Court, Northern District of Illinois, Eastern
          Division) (Case No. 1:16-cv-08637)

          Result:  $93.5 million in settlements in 2021

2020      *In re Resistors Antitrust Litigation*
          (United States District Court, Northern District of California)
          (Case No. 3:15-cv-03820) (Informal member of Steering Committee)

          Result:  $33.4 million in settlements in 2020

          *In re Capacitors Antitrust Litigation*
          (United States District Court, Northern District of California)
          (Case No. 03:17-md-02801) (Informal member of Steering
          Committee)

          Result:  $30.95 million in settlements in 2020

2019        *Carl Palazzolo, et al. Fiat Chrysler Automobiles N.V., et al.*
             (United States District Court, Eastern District of Michigan)
             (Case No. 16-cv-12803) (Co-Lead Counsel)

             Result:  $14.75 million settlement

             *Zimmerman v. Diplomat Pharmacy, Inc., et al.*
             (United States District Court, Eastern District of Michigan)
             (Case No. 2:16-cv-14005) (Liaison Counsel)

             Result:  $14.1 million settlement

2018        *In re Freight Forwarders Antitrust Litigation*
             (United States District Court, Eastern District of New York)
             (Case No. 08-cv-00042) (Counsel for Class Representative)

             Result:  $1 billion settlement

2017        *Foster v. L3 Communications, EO Tech*
             (United States District Court, Western District of Missouri)
             (Case No. 15-cv-03519) (Co-Lead Counsel)

             Result:  $51 million settlement (100% recovery)

2016        *In re Automotive Parts Antitrust Litigation*
             (United States District Court, Eastern District of Michigan)
             (Case No. 12-md-02311) (Liaison Counsel)

             Result:  Over $1 billion in settlements

             *GM Securities Class Action/New York Teachers Retirement System v.*
             *General Motors Company*
             (United States District Court, Eastern District of Michigan)
             (Case No. 4:14-cv-11191) (Local Counsel)

             Result:  $300 million settlement

             *ERISA Class Action/Davidson v. Henkel Corporation*
             (United Sates District Court, Eastern District of Michigan)
             (Case No. 12-cv-14103) (Lead Counsel)

             Result:  $3.35 million settlement (100% Recovery for 41 member class)

             *Pat Cason-Merenda and Jeffrey A. Suhre v. VHS of Michigan, Inc.,*
             *dba Detroit Medical Center (Antitrust)*
             (United States District Court, Eastern District of Michigan)
             (Case No. 2:06-cv-15601) (Special Trial Counsel)

Result:  $42 million settlement

2015        *In re AIG 2008 Securities Litigation*
            (United States District Court, Southern District of New York)
            (Case No. 08-cv-04772) (Co-Lead Counsel)

            Result:  $970.5 million settlement

2014        *City of Farmington Hills Employees Retirement System v. Wells
            Fargo Bank, N.A.*
            (United States District Court, District of Minnesota)
            (Case No. 10-cv-04372) (Co-Lead Counsel and Primary Trial Counsel)

            Result:  $62.5 million settlement

            *The Shane Group, Inc., et al. v. Blue Cross Blue Shield of Michigan*
            (United States District Court, Eastern District of Michigan)
            (Case No. 2:10-cv-14360) (Co-Lead Counsel)

            Result:  $30 million settlement

            *In re Refrigerant Compressors Antitrust Litigation*
            (United States District Court, Eastern District of Michigan)
            (Case No. 09-md-02042) (Co-Lead Counsel)

            Result:  $30 million settlement

2013        *The Board of Trustees of the City of Birmingham Employees et. al. v.
            Comerica Bank et. al.*
            (United States District Court, Eastern District of Michigan)
            (Case No. 2:09-13201) (Co-Lead Counsel)

            Result:  $11 million settlement

            *In Re Caraco Pharmaceutical Laboratories, Ltd. Securities Litigation*
            (United States District Court, Eastern District of Michigan)
            (Case No. 2:09-cv-12830) (Co-Lead Counsel)

            Result:  $2.975 million settlement

            *In Re TechTeam Global Inc. Shareholder Litigation*
            (Oakland County Circuit Court, State of Michigan)
            (Case No. 10-114863-CB)  (Liaison Counsel)

            Result:  $1.775 million settlement

*General Retirement System of the City of Detroit and Police and Fire Retirement System of the City of Detroit vs. UBS Securities, LLC (Structured Investment Vehicle)*
(United States District Court, Eastern District of Michigan)
(Case No. 2:10-cv-13920) (Lead Counsel)

Result:   Confidential settlement

2010      *Epstein, et al. v. Heartland Industrial Partners, L.P., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:06-CV-13555) (Substantial role)

Result:  $12.2 million settlement

*In Re Skilled Healthcare Group, Inc. Securities Litigation*
(United States District Court, Central District of California)
(Case No. 09-5416) (Substantial role)

Result:  $3 million settlement

2009      *In Re Proquest Company Securities Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 4:06-CV-11579) (Substantial role; argued Motion to Dismiss)

Result:  $20 million settlement

*In Re Collins & Aikman Corporation Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 03-CV-71173) (Substantial role)

Result:  $10.8 million settlement

*In re IT Group Securities Litigation*
(United States District Court, Western District of Pennsylvania)
(Civil Action No. 03-288) (Co-Lead Counsel)

Result:  $3.4 million settlement

2008      *In re Mercury Interactive Securities Litigation*
(United States District Court, Northern District of California)
(Civil Action No. 03:05-CV-3395-JF) (Substantial role)

Result:  $117 million settlement

*In Re General Motors Corporation Securities and Derivative Litigation*
(United States District Court, Eastern District of Michigan)
(Master Case No. 06-MD-1749) (Co-Lead Counsel)

Status: Obtained major corporate governance reforms to address accounting deficiencies

2007    *Wong v. T-Mobile USA, Inc.*
(United States District Court, Eastern District of Michigan)
(Case No. 05-CV-73922) (Co-Lead)

Result:  Settlement for 100% of damages

*In re CMS Energy Corporation Securities Litigation*
(United States District Court, Eastern District Michigan)
(Master File No. 2:02 CV 72004) (Substantial role)

Result:  $200 million settlement

2005    *In re Comerica Securities Fraud Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 2:02-CV-60233) (Substantial role)

Result:  $21 million in total settlements

*Street v. Siemens*
(Philadelphia State Court)
(Case No. 03-885) (Co-Lead Counsel)

Result:  $14.4 million (100% recovery)

*Redmer v. Tournament Players Club of Michigan*
(Wayne County Circuit Court) (Case No. 02-224481-CK) (Co-Lead)

Result:  $3.1 million settlement

2004    *Passucci v. Airtouch Communications, Inc.*
(Wayne County Circuit Court) (Case No. 01-131048-CP) (Co-Lead)

Result:  Estimated settlement value between $30.9 and $40.3 million

*Johnson v. National Western Life Insurance*
(Oakland County Circuit Court)
(Case No. 01-032012-CP) (Substantial role)

Result:  $10.7 million settlement

2003    *Felts v. Starlight*
(United States District Court, Eastern District Michigan)
(Case No. 01-71539) (Co-Lead)

Result: Starlight agrees to stop selling ephedrine as an ingredient in its weight loss dietary supplement product

*In re Lason Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 99-CV-76079) (Co-Lead)

Result: $12.68 million settlement

2001    *Mario Gasperoni, et al. v. Metabolife International, Inc.*
(United States District Court, Eastern District Michigan)
(Case No. 00-71255) (Co-Lead)

Result: Nationwide settlement approved mandating changes in advertising and labeling on millions of bottles of dietary supplement, plus approximately $8.5 million in benefits

1999    *Pop v. Art Van Furniture and Alexander Hamilton Insurance Company*
(Wayne County Circuit Court) (Case No. 97-722003-CP) (Co-Lead)

Result: Changes in sales practices and $9 million in merchandise.

*Schroff v. Bombardier*
(United States District Court, Eastern District Michigan)
(Case No. 99-70327) (Co-Lead)

Result: Recall of more than 20,000 defective Seadoos throughout North America; repair of defect to reduce water ingestion problem; extended warranties; and approximately $4 million in merchandise.

*In re National Techteam Securities Litigation*
(United States District Court, Eastern District Michigan)
(Master File No. 97-74587) (Substantial role)

Result: $11 million settlement

*In Re F&M Distributors, Inc., Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 95-CV-71778-DT) (Minor role)

Result: $20 million settlement

1998    *In Re Michigan National Corporation Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No 95 CV 70647 DT) (Substantial role)

Result:  $13.3 million settlement

1995 *In re Intel Pentium Processor Litigation*
 (Superior Court, Santa Clara County, California) (Master File No. 745729)
 (Substantial role)

 Result: Intel agreed to replace millions of defective Pentium chips on demand
 without any cost to consumers

Exhibit 3

**M&R**

MIGLIACCIO&RATHOD LLP

## SUMMARY

The attorneys at Migliaccio & Rathod LLP ("M&R") have decades of experience in complex civil litigation and have successfully prosecuted a number of noteworthy consumer protection, data breach and privacy, civil rights, and wage theft cases.  The firm's attorneys, located in Washington D.C. and San Francisco, focus primarily on class or collective actions and take all of their cases on a contingent basis. The attorneys at the firm have litigated cases leading to recoveries of hundreds of millions of dollars for consumers, workers, and other victims of corporate misconduct. M&R has a track record of investing the time, energy, and resources necessary to develop cases which implicate significant economic, societal, privacy, and health concerns.

## NOTABLE MATTERS AND SUCCESSES

o   *In Re: Kia Hyundai Vehicle Theft Litigation*, No. 8:22-ml-03052-JVS-KES (C.D. Cal.). Represent plaintiffs in MDL concerning a security vulnerability in millions of vehicles manufactured by Hyundai and Kia that made them susceptible to theft. A non-reversionary common fund settlement totaling $80-$145 million is pending approval and the litigation resulted in a software update being provided to class members to address the underlying security vulnerability.

o   *Valsartan N-Nitrosodimethylamine (NDMA) Products Liability Litigation*, MDL Case No: 1:19-md-02875-RBK-JS (D.N.J.). Represent plaintiffs in multi-district litigation arising from worldwide recalls of generic Valsartan that had been found to be contaminated with probable human carcinogens. M&R was appointed to the Plaintiffs' Steering Committee and serves as co-chair of the medical monitoring committee. The court granted class certification for medical monitoring for several states and appointed M&R attorney as one of two class counsel.

o   *In re: Philips Recalled CPAP, Bi-Level Pap, and Mechanical Ventilator Products Litigation*, MDL No. 3014 (W.D. Pa.). Represent plaintiffs in MDL. M&R attorney one of 12 appointed to Plaintiff Steering Committee and co-chairs the Science and Experts Committee as well as chairs the Class Action and Experts Subcommittee.

o   *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 535 (6th Cir. 2012). Represented classes of insureds against several major insurance companies for the failure to use technological advances in verifying the addresses of insureds, leading to overcharges. The Sixth Circuit opinion was foundational for a relaxed standard for ascertainability in that circuit. Litigation culminated in several multi-million dollar settlements.

o   *Carmack v. Snap-On Inc.*, 2:22-cv-695 (E.D. Wis.). M&R was sole settlement class counsel in settlement for nationwide class of employees whose information was compromised in a data breach. The settlement provided for reimbursement of certain categories of losses as well as enhancement of cybersecurity practices.



o   *McHenry v. Advent Health Partners, Inc.*, 3:22-cv-00287 (M.D. Tenn.). M&R was settlement class counsel, along with one other firm, in settlement for nationwide class of patients whose private information was exposed in a cyberattack. The settlement provided for reimbursement of certain categories of losses as well as enhancement of cybersecurity practices.

o   *Carlotti v. ASUS Computer International, et al*, No. 18-cv-00369 (N.D. Cal.). Represented plaintiffs in a class action suit brought on behalf of purchasers of ASUS Rog Strix GL502VS or GL502VSK laptops with defective batteries or which overheat due to their insufficient cooling system. Benefits of the resulting settlement include cash payment of up to $110 or credit certificate of up to $210 for any impacted individual. Settlement valued at $16 million.

o   *Brown et al. v. Hyundai Motor America, et ano.,* Case. No. 2:18-cv-11249 (D.N.J.) M&R was appointed co-lead class counsel in an action brought arising from Hyundai's alleged manufacture, design, marketing and sale of vehicles with a piston-slap defect. The case settled on a class-action basis, and class members were provided with an extended warranty, and reimbursement of expenses.

o   *In re National Security Agency Telecommunications Records Litigation*, Case No. 3:06-md-01791 (N.D. Cal.). Represented Sprint subscribers in privacy suit against telecom companies to enjoin the alleged disclosure to the National Security Agency of telephone calling records. Appointed, with co-counsel, interim lead counsel for the Sprint subscriber class in the MDL proceedings. The litigation was ultimately dismissed after Congress granted retroactive immunity to the telecom companies.

o   *Wheeler et al. v. Lenovo (United States) Inc.*, Case No. 13-0007150 (D.C. Sup. Ct.) and *Kacsuta v. Lenovo (United States)*, *Inc.*, Case No. 13-00316 (C.D. Cal.). Represented plaintiffs in a class action brought on behalf of purchasers of Lenovo laptops that suffered from Wi-Fi connectivity problems. Served among the Court-appointed class counsel in a nationwide settlement where Lenovo agreed to refund $100 cash or issue a $250 voucher (which required no purchase to use) to owners of the laptops.

o   *Fath et al. v. Honda North America, Inc.*, Case No. 0:18-cv-01549 (D. Minn.). M&R served on the Plaintiff Steering Committee in this nationwide action arising from Honda's alleged manufacture, design, marketing and sale of vehicles with a fuel dilution defect. The case settled on a class action basis, and class members were provided with an extended warranty, reimbursement of expenses, and a product update where applicable.

o   *Washington v. Navy Federal Credit Union*, Case No. 2019 CA 005735 B (D.C. Super. Ct.). Represented a settlement class of individuals whose rights were allegedly violated by Navy Federal Credit Union when they had their vehicles repossessed. The court granted approval of the $800,000 common fund class action settlement in the Fall of 2020. Each class member received no less than $748.12.



o *Hill v. County of Montgomery et al.*: Case No.: 9:14-cv-00933 (N.D.N.Y.). M&R served as co-lead counsel in this conditions of confinement civil rights class action for the alleged provision of insufficient sustenance in the Montgomery County Jail in upstate New York. After years of litigation, the case settled on a class action basis for $1,000,000, providing significant relief to the class of inmates and detainees.

o *Vasquez et al. v. Libre by Nexus, Inc. et al.*: Case No. 4:17- cv-00755 (N.D.Cal.). Represented migrants released from detention who allegedly suffered from unfair and deceptive practices – including having to wear an ankle monitor – by the middleman that arranged for bond to be posted. A nationwide class action settlement has been granted final approval.

o *In re: JUUL Labs, Inc. Products Litigation*, Case No. 3:18-cv-02499 (N.D. Cal.) M&R was appointed as co-lead interim class counsel prior to formation of an MDL in action brought on behalf of a nationwide class arising from marketing and sale of electronic cigarettes by JUUL, the world's largest e-cigarette manufacturer. M&R wrote key aspects of the motion to dismiss briefing, which was later relied on in MDL opinions. In the MDL, M&R assisted with class representative discovery.

o *Adeli v. Silverstar Automotive, Inc.*, Case No. 5:17-cv-05224 (W.D. Ark.). M&R was co-lead trial counsel in this individual consumer fraud suit for economic losses that resulted in a trial verdict of over $5.8 million, the vast majority of which was in punitive damages (judgment later reduced to $533,622, inclusive of a reduced but sizable punitive damages amount, which was affirmed by the Eighth Circuit Court of Appeals).

o *Bendetowies et al. v. Facebook, Inc.*: Case No. 1:18-cv-06263 (N.D.Cal.). Represented consumers in a class action against Facebook for its failure to exercise reasonable care in securing and safeguarding its account holders' Private Information. Plaintiffs alleged that Facebook's security failures exposed Plaintiffs' and Class members' Private Information to a massive security breach affecting approximately 50 million Facebook users. The failures put Plaintiffs' and Class members' personal and financial information and interests at serious, immediate, and ongoing risk.

o *Sonya O. Carr v. Transit Employee Federal Credit Union*: Case No. 19-cv-005735 (D.C. Super. Ct.). Represented a settlement class of individuals whose rights were allegedly violated by Transit Employee Federal Credit Union when they had their vehicles repossessed. The court granted approval of a$215,000 common fund class action settlement. Each class member received no less than $1,000.

o *Matthews v. TCL Communications et al.*, Case No. 3:17-cv-95 (W.D.N.C.). Represented plaintiffs in a class action brought on behalf of purchasers of Alcatel OneTouch Idol 3 smartphones who alleged that a firmware update removed Band 12 LTE functionality from their phones, greatly reducing their functionality. Served as Court-appointed class counsel in a class action settlement which provided class members with either the reinstatement of Band 12 LTE functionality on their phones, or new phones with LTE Band 12 functionality.



o   *Snodgrass v. Bob Evans*, Case No. 2:12-cv-768 (S.D. Ohio). Represented Bob Evans' Assistant
    Managers in a case alleging that Bob Evans, a restaurant chain with hundreds of locations
    predominantly in the Midwest, had misclassified its Assistant Managers as exempt from
    federal and state overtime laws. After a landmark ruling on the application of the so-called
    "fluctuating workweek" method of payment, the lawsuit settled for $16.5 million. The gross
    recovery per class member was approximately $6,380. In issuing its order approving the
    settlement, the court took special note of the "competence of class counsel in prosecuting this
    complex litigation."

o   *Corbin v. CFRA, LLC*, Case No. 1:15-cv-00405 (M.D.N.C.).  Represented 1,520 servers in
    collective action against major IHOP franchise for wage theft violations, culminating in $1.725
    million settlement.

o   *Craig v. Rite Aid*, Case No. 4:08-CV-2317 (M.D. Pa.).  Represented Rite Aid Assistant
    Managers in a case alleging that Rite Aid had misclassified its Assistant Managers as exempt
    from federal and state overtime laws. Plaintiffs alleged that their primary duties involved
    manual labor such as loading and unloading boxes, stocking shelves, cashiering and other
    duties which are not exempt under federal and state overtime laws.  After extensive litigation,
    the case settled for $20.9 million, covering over 1,900 current and former assistant store
    managers. In issuing its order approving the settlement, the court stated that the settlement
    "represents an excellent and optimal settlement award for the Class Members" resulting from
    "diligent, exhaustive, and well-informed negotiations."

o   *Peppler, et al. v. Postmates, Inc.*, Case No. 2015 CA 006560 (D.C. Sup. Ct.) and *Singer, et al.
    v. Postmates, Inc.*, 4:15-cv-01284-JSW (N.D. Cal.).  Represented plaintiffs in a wage theft
    class action against application-based courier startup company, alleging that the couriers were
    misclassified as independent contractors.  M&R was named class counsel in the settlement
    agreement providing for $8.75 million in relief to a nationwide class.

o   *Bland v. Calfrac Well Services*, Case No. 2:12-cv-01407 (W.D. Pa.). Represented oil field
    workers in a nationwide collective and class action lawsuit against Defendant Calfrac Well
    Services for its alleged failure to properly pay overtime to its field operators. After extensive
    litigation, the case settled for $6 million, which provided a gross recovery per class member of
    between $250 and approximately $11,500.

o   *Nelson v. Sabre Companies LLC*, Case No. 1:15-cv-0314 (N.D.N.Y.).  M&R was lead counsel
    in this nationwide collective action that settled for $2.1 million on behalf of oil and gas workers
    for unpaid overtime.

o   *Beture v. Samsung Electronics America*, Case No. 17-cv-05757 (D.N.J.). M&R was appointed
    as co-lead interim class counsel in action brought on behalf of a nationwide class arising from
    a hardware defect affecting hundreds of thousands of Samsung Galaxy Note 4 smartphones.



o   *McFadden et al. v. Microsoft Corporation*, Case No. 2:20-cv-00640 (W.D. Wash.) M&R was appointed as co-lead interim class counsel in an action brought on behalf of a nationwide class arising from a hardware defect affecting Microsoft X-Box video game controllers.

o   *Restaino et al. v. Mario Badescu, Inc.*, Case No. MID-L-5830-14 (N.J. Super. Ct.). Represented 36 individuals who had become physically addicted to undisclosed corticosteroids in a purportedly botanical face cream, and sought damages for personal injuries arising from the symptoms of topical steroid withdrawal. After three years of litigation, the case settled for significant relief to the plaintiffs.

o   *Walsh et al. v. Globalstar, Inc.*, Case No. 3:07-cv-01941 (N.D. Cal.), represented Globalstar satellite telephone service customers who brought claims that Globalstar knew that it was experiencing failures in its satellite constellation and its satellite service was rapidly deteriorating and was no longer useful for its intended purpose, yet failed to disclose this information to its potential and existing customers. Served as Court-appointed class counsel in a nationwide settlement that provided an assortment of benefit options, including, but not limited to, monetary account credits, free minutes, or cash back for returned equipment.

o   *Delandro v. County of Allegheny*, Case No. 06-927 (W.D. Pa.). Represented pre-trial detainees who were subjected to unlawful strip searches prior to their admission at Allegheny County Jail, located in Pittsburgh, PA. After winning class certification, partial summary judgment on liability, and an injunction, the case settled for $3 million.

o   *Nnadili v. Chevron*, Case No. 02-1620 (D.D.C.). Represented owners and residents of properties in the District of Columbia that were contaminated with gasoline constituents from leaking underground storage tanks that were installed by Chevron. The plaintiffs, who resided in over 200 properties in the Riggs Park neighborhood of Northeast Washington, D.C., alleged that Chevron's contamination interfered with the use and enjoyment of their property, impacted their property values, constituted a trespass on their land, and caused fear and emotional distress. The United States Environmental Protection Agency conducted an extensive investigation into the contamination. After approximately five years of litigation, the case settled for $6.2 million.

o   *Ousmane v. City of New York,* Case No. 402648/04 (NY Sup. Ct.).  Represented New York City Street vendors in a pro bono class action suit against the City of New York for excessive fines and helped secure a settlement with a value of over $1 million.

o   *Stillman v. Staples*, Case No. 07-849 (D.N.J.). Represented Staples Assistant Managers in Fair Labor Standards Act Claims for unpaid overtime. Served as a member of the trial team where the plaintiffs won a nearly $2.5 million verdict against Staples for unpaid overtime on behalf of 342 sales managers after a six-week jury trial. After the verdict, nearly a dozen wage and hour cases against Staples from across the country were consolidated in a multi-district litigation. Served in a central role in the consolidated litigation, which lasted nearly two years after the *Stillman* verdict. The consolidated litigation ultimately settled for $42 million.



## <u>ATTORNEYS</u>

### *Nicholas A. Migliaccio*

Nicholas Migliaccio has been practicing for over 20 years and litigates across the firm's practice areas. He has successfully prosecuted numerous noteworthy class and mass action cases over the course of his career, and has been appointed class counsel in both litigation and settlement classes. He has been recognized by his peers as a Superlawyer in 2016 - 2023.

Mr. Migliaccio graduated from the State University of New York at Binghamton in 1997 (B.A., *cum laude* in Environmental Studies and Philosophy) and received his law degree from Georgetown University Law Center in 2001, where he was an Editor of the Georgetown International Environmental Law Review.

### <u>Notable Cases Include</u>:

- Represented assistant managers in a Fair Labor Standards Act misclassification case and served as a member of the trial team for a six-week jury trial that resulted in a $2.5 plaintiffs' verdict. After the verdict, nearly a dozen wage and hour cases against the defendant from across the country were consolidated in a multi-district litigation. Served in a central role in the consolidated litigation, which ultimately settled for $42 million.
- Represented worker class in wage theft assistant manager misclassification case against national restaurant chain that culminated in a $16.5 million settlement
- Represented worker class in wage theft rate miscalculation case against multinational fracking company, resulting in $6 million settlement
- Represented plaintiffs in a consumer class in defective laptop case against multinational computer manufacturer, resulting in a nationwide settlement where defendant agreed to refund $100 cash or issue a $250 voucher (which required no purchase to use) to owners of the laptops.
- Represented pre-trial detainees who were subjected to unlawful strip searches prior to their admission at Allegheny County Jail, located in Pittsburgh, PA. After winning class certification, partial summary judgment on liability, and an injunction, the case settled for $3 million.
- Represented owners and residents of properties in the District of Columbia that were contaminated with gasoline constituents from leaking underground storage tanks that were installed by a major oil company. The plaintiffs alleged that the contamination interfered with the use and enjoyment of their property, impacted their property values, constituted a trespass on their land, and caused fear and emotional distress. After extensive litigation, the case settled for $6.2 million.
- Represented New York City street vendors in a pro bono class action suit against the City of New York for excessive fines and helped secure a settlement with a value of over $1 million.
- Appointed to leadership in recent major data breach cases involving hospitals and health records, including in *In re Netgain Technology, LLC, Consumer Data Breach Litigation*,



No. 0:21-cv-01210 (D. Minn.) and in *In re Eskenazi Health Data Incident Litigation*, No. 49D01-2111-PL-038870 (Ind. Sup. Ct.)

**Admissions:**

- New York
- Washington, D.C.
- United States Court of Appeals for the Third Circuit
- United States Court of Appeals for the Fourth Circuit
- United States Court of Appeals for the Sixth Circuit
- United States District Court for the District of Colorado
- United States District Court for the District of Columbia
- United States District Court for the District of Maryland
- United States District Court for the Eastern District of Michigan
- United States District Court for the Eastern District of New York
- United States District Court for the Northern District of New York
- United States District Court for the Southern District of New York
- United States District Court for the Western District of New York
- United States District Court for the Western District of Pennsylvania

**Education:**

- Georgetown University Law Center, J.D., 2001
- State University of New York at Binghamton, BA, 1997

**Publications and Speaking Engagements:**

- Co-authored "Environmental Contamination Treatise: Overview of the Litigation Process," in R. Simons, Ph.D, When Bad Things Happen to Good Property (Environmental Law Institute, 2005).
- Presentation on *The Motor Carrier Act Exception to the FLSA's Overtime Provisions - 13(b)(1) and the SAFETEA-LU Amendments*, Worker's Injury Litigation Group / Ohio Association of Justice Meeting, Winter 2014.
- Presentation on *Litigating Fair Labor Standards Act Collective Action Cases,* Worker's Injury Litigation Group / Ohio Association of Justice Convention, Fall 2011.

**Awards:**

- SuperLawyers, 2016, 2017, 2018, 2019, 2020, and 2021



*Jason S. Rathod*

Jason S. Rathod is a founding partner of Migliaccio & Rathod LLP and regarded as one of the most accomplished plaintiff-side class action litigation lawyers under the age of 40, particularly in the areas of consumer protection and defective products. Mr. Rathod has been appointed to leadership teams in some of the most high-profile cases in the country. In *In Re: Philips Recalled CPAP, Bi-Level Pap, and Mechanical Ventilator Products Litigation*, he is among a small group of lawyers appointed to the Plaintiffs' Steering Committee and serves as the co-chair of the Science and Experts Committee. He was also recently appointed to serve on the experts committee in the *In Re: Kia Hyundai Vehicle Theft* MDL. Mr. Rathod has been quoted in the national press, including in The Wall Street Journal and Washington Post. In addition to his consumer protection work, Mr. Rathod also prosecutes data privacy, wage theft, civil rights, and environmental protection cases.

Mr. Rathod has been recognized as a leader in his field beyond the courtroom. He is the author of several published works, including a law review article on aggregate litigation in poor countries. Another recent law review article that he co-authored, comparing public and private enforcement in the United State and Europe, was cited by the Consumer Financial Protection Bureau in its proposed rule prohibiting class action waivers in the fine print of consumer contracts.

Mr. Rathod graduated from Grinnell College in 2006 (B.A. with honors in Political Science and Religious Studies). After college, he traveled to Fiji, Mauritius, South Africa, Trinidad & Tobago, Guyana, and Suriname on a Watson Fellowship, studying the Indian Diaspora. He graduated law school from the Duke University School of Law in 2010, where he was an Articles Editor of the Duke Law Journal. In law school, he also worked for the Self-Employed Women's Association in Ahmedabad, India on behalf of street vendors seeking an injunction against the city government for unlawful harassment and evictions.

**<u>Notable Cases Include</u>:**

- Representing consumer classes in insurance overcharge cases, including by drafting appellate briefs about the propriety of class certification. The Sixth Circuit Court of Appeals affirmed order for the classes 3-0, leading to several multi-million-dollar settlements;
- Representing consumer in consumer fraud trial for economic losses that resulted in verdict for the Plaintiff on all counts and a multimillion dollar punitive damages award (later reduced on remittitur, but still totaling in the hundreds of thousands of dollars and representing a 25:1 ratio of punitive to economic damages);
- Representing consumer class of laptop purchasers against multinational corporation in nationwide class action settlement valued at over $16 million;
- Representing consumer class of vehicle purchasers and lessees in nationwide class action settlement, following allegations of engine defect;

- Representing consumer class of vehicle purchasers and lessees in nationwide class action settlement, alleging oil dilution defect;
- Representing consumer classes in two cases in D.C. Superior Court arising from the alleged unlawful repossession of vehicles, resulting in classwide settlements with significant pro rata payments and injunctive relief, including debt relief;
- Representing consumer class at trial in product defect class action;
- Representing worker class in wage theft assistant manager misclassification case against national restaurant chain that culminated in a $16.5 million settlement;
- Representing worker class and collective against multinational startup company for independent contractor misclassification claims, resulting in $8.75 million settlement;
- Representing worker class in wage theft rate miscalculation case against multinational fracking company, resulting in $6 million settlement;
- Representing over 1,500 servers in multistate collective action, resulting in $1.72 million settlement;
- Representing consumer class in defective laptop case against multinational computer manufacturer; and
- Representing consumer class in defective construction case against multinational home builder, drafting key briefs leading to class certification and maintenance of suit in court, rather than arbitration.
- Appointed to leadership in recent major data breach cases involving hospitals and health records, including in *In re Netgain Technology, LLC, Consumer Data Breach Litigation*, No. 0:21-cv-01210 (D. Minn.) and in *In re Eskenazi Health Data Incident Litigation*, No. 49D01-2111-PL-038870 (Ind. Sup. Ct.)

**Education:**

- Duke University School of Law, J.D. 2010
- Grinnell College, B.A., 2006

**Admissions:**

- Illinois
- Washington, D.C.
- United States Court of Appeals for the District of Columbia Circuit
- United States Court of Appeals for the Second Circuit
- United States Court of Appeals for the Third Circuit
- United States Court of Appeals for the Fourth Circuit
- United States Court of Appeals for the Eighth Circuit
- United States District Court for the District of Columbia
- United States District Court for the District of Maryland
- United States District Court for the District of Nebraska
- United States District Court for the Northern District of Illinois
- United States District Court for the Western District of Pennsylvania
- United States District Court for the District of Colorado



- United States District Court for the Eastern District of Michigan
- United States District Court for the Western District of Michigan

**<u>Publications and Speaking Engagements</u>:**

- *Arbitration Tactics and Strategy* (July 2020) (CLE presentation), American Association for Justice ("AAJ")
- *Fighting for Food Policy Progress Across Legal Arenas* (panelist), Food Systems Virtual Summit with CUNY Urban Food Policy Institute (April 2020)
- *Human Capital and Fragmentation* (Nov. 15, 2019) (panelist), ClassCrits Conference
- *Plaintiffs, Procedure & Power* (Nov. 3, 2018) (panelist), ClassCrits Conference
- *DNA Barcoding analysis of seafood accuracy in Washington, D.C. restaurants*, PeerJ (April 25, 2017) (co-authored)
- *The Arc and Architecture of Private Enforcement Regimes in the United States and Europe: A View Across the Atlantic*, 14 U.N.H. L. Rev. 303 (2016) (co-authored)
- *Trying the Class Action: Practical Tips from the Pros* (AAJ) (June 4, 2015) (panelist)
- *Emerging Markets, Vanishing Accountability: How Populations in Poor Countries Can Use Aggregate Litigation to Vindicate Their Rights*, 24 Transnat'l L. & Contemp. Probs. 69 (2014)
- *Note: Not Peace, But a Sword: Navy v. Egan and the Case Against Judicial Abdication in Foreign Affairs*, 59 Duke L.J. 595 (2009)

**<u>Awards</u>**

- SuperLawyers Rising Stars, 2017, 2018, 2019, 2020, 2021, 2022, and 2023



*Mark Patronella*

Mark Patronella is an Associate at the firm and litigates class actions across the firm's practice areas. He takes particular pride in helping consumers obtain fair compensation for predatory behavior on the part of large corporations.

Mr. Patronella has been recognized for his considerable commitment to pro bono practice.  He dedicated well over one thousand hours to representing asylum-seekers, tenants facing eviction, and environmental initiatives.

Mr. Patronella graduated magna cum laude from Drew University in 2015 (B.A. with honors in Economics). He graduated law school from Duke University School of Law in 2018, where he was a Staff Editor of the Duke Environmental Law and Policy Forum and served as a teaching assistant for an environmental law course. Throughout law school, he provided legal services for a number of local and national environmental organizations.

**Education:**

- Duke University School of Law, J.D., 2018
- Drew University, B.A., 2015

**Admissions:**

- New Jersey
- Washington D.C.
- United States District Court for the Southern District of Texas
- United States District Court for the Eastern District of Texas
- United States District Court for the Eastern District of Michigan



*Eugenie Montague*

Eugenie Montague is Of Counsel to the firm and litigates cases across the firm's areas of practice including in consumer protection, data breach, and wage theft class actions.

**Education:**

- Duke University School of Law, J.D. 2009
- UC Irvine, Master of Fine Arts, Fiction, 2010
- Colby College, B.A.

**Admissions:**

- California



*Bryan Faubus*

Bryan Faubus is Senior Counsel at the firm and litigates cases across the firm's areas of practice including in consumer protection, data breach, and wage theft class actions.

Mr. Faubus received a B.A. in Urban Studies, with Honors, from the University of Texas at Austin in 2005, and a J.D., *cum laude*, from Duke University School of Law, where he was the Online Editor of the Duke Law Journal. Mr. Faubus authored *Narrowing the Bankruptcy Safe Harbor for Derivatives to Combat Systemic Risk*, 59 DUKE L.J. 801 (2010). Prior to joining Migliaccio & Rathod LLP, he practiced commercial litigation and real estate law at two large, international law firms and securities, antitrust, and consumer protection law at a California-based plaintiff's law firm.

<u>Education:</u>

- Duke University School of Law, J.D. 2010
- University of Texas – Austin, B.A. 2005

<u>Admissions:</u>

- New York



*Matthew Smith*

Matthew ("Matt") Smith Faubus is Senior Counsel at the firm and litigates in the firm's consumer protection and civil rights practice areas. He joined M&R after practicing with nationally recognized plaintiffs' firms based in Washington D.C. and the San Francisco Bay Area. Previous successes include an $18 million trial judgment on behalf of a class of retired steelworkers, as well as contributions to antitrust, civil rights, and employee benefits cases that have resulted in substantial settlements and judgments in favor of the class. After graduating *magna cum laude* from Duke Law School where he was inducted into the honor's society, he clerked for the Hon. Rosemary Barkett on the United States Court of Appeals for the Eleventh Circuit.

**Education:**

- Duke University School of Law, J.D., *magna cum laude*, Order of the Coif, 2011
  - LLM, International and Comparative Law
  - Notes Editor, Duke Law Journal
- UC Santa Cruz, MA, History of Consciousness
- Columbia University, BA, *cum laude*

**Admissions:**

- New York
- California

# Exhibit 4



SHUB & JOHNS LLC

Four Tower Bridge
200 Barr Harbor Drive
Suite 400 - PMB 99452
Conshohocken, PA 19428

(610) 477-8380
SHUBLAWYERS.COM
INFO@SHUBLAWYERS.COM



### SHUB & JOHNS LLC

Four Tower Bridge
200 Barr Harbor Drive
Suite 400 - PMB 99452
Conshohocken, PA 19428

(610) 477-8380
JSHUB@SHUBLAWYERS.COM
BJOHNS@SHUBLAWYERS.COM
SHOLBROOK@SHUBLAWYERS.COM
DGOMEZ@SHUBLAWYERS.COM
NBJOTVEDT@SHUBLAWYERS.COM
LRUSSO@SHUBLAWYERS.COM



**Jonathan Shub** is a co-founder of Shub & Johns LLC. Mr. Shub graduated from American University (Washington, D.C.), B.A., in 1983 and Delaware Law School of Widener University (now Widener University Delaware School of Law), cum laude, in 1988. While enrolled in Delaware Law School of Widener University, he served as the Law Review Articles Editor. Jon was a Wolcott Fellow Law Clerk to the Hon. Joseph T. Walsh, Delaware Supreme Court in 1988. He is a member of the American Association of Justice (past chairman of class action litigation section), the American Bar Association and the Consumer Attorneys of California. Jon was named a Pennsylvania SuperLawyer from 2005-2009 and 2011-2019. Jon is also an active member of his local synagogue and an avid political fundraiser.

Jon is recognized as one of the nation's leading class action consumer rights lawyers, based on his extensive experience and successes representing classes of individuals and businesses in a vast array of matters involving unlawful conduct. Jon has gained notable attention in the area of defective consumer electronics and computer hardware as a result of many leadership positions in federal and state cases against companies such as Hewlett-Packard, Maytag, IBM and Palm. In

fact, Maximum PC Magazine, a leading industry publication, said years back that "Shub is becoming renowned for orchestrating suits that have simultaneously benefited consumers and exposed buggy hardware." He also has vast experience in mass tort class actions such as Vioxx, light tobacco litigation, and in consumer class actions such as energy deregulation. He is currently heavily involved in litigation on behalf of businesses that were denied insurance coverage involving COVID-19.

Jon launched his career in the Washington office of Fried, Frank, Harris, Shriver & Jacobson, where he worked on complex commercial matters including corporate investigations and securities litigation. He then moved into a practice of consumer protection and advocacy. Prior to joining Kohn, Swift & Graf, P.C., Jon was the resident partner in the Philadelphia office of Seeger Weiss LLP. He is a frequent lecturer on cutting edge class action issues, and is a past chairman of the Class Action Litigation Group of the American Association for Justice. Jon regularly appears in state and federal courts nationwide, and in many high profile consumer protection cases. Jon's leadership roles require him to develop the theories of liability for the entire class as well as the overall trial strategy for the cases. Most recently, Jon was co-lead and co-trial counsel in a case against municipality for violation of a state privacy law. The case was tried before U.S. District Judge Wendy Beetlestone, and resulted in a jury award of approximately $68,000,000 to the Class.

**Jon's experience in class action litigation includes the following leadership positions:**

- Serves as lead counsel in New York against KIWI Energy LLC for deceptive advertising of                            residential energy practices.
- Served as co-lead counsel in Illinois against Direct Energy for deceptive advertising ofresidential energy practices.
- Served as co-lead counsel in Pennsylvania against PG&E for deceptive advertising of residentialenergy practices.
- Served as co-lead counsel in settled national litigation against CPG International for deceptive advertising in connections with deceptive advertising of AZEK-branded decking products.
- Served as executive committee counsel in settled national litigation against Western Union fordeceptive practices in connection with money transfers.
- Served as co-lead counsel in litigation against Facebook for deceptive advertising practices.
- Served as co-lead counsel in a national class action against Palm involving defective smart phones.
- Served as co-lead counsel in a national class action against Nissan for defective tires on its 350Zmodel.
- Served as co-lead counsel in a national class action against Hewlett Packard claiming defects incertain printer models.
- Served as co-lead counsel in litigation against Vonage for consumer fraud.
- Served as co-lead counsel in litigation against Maytag, where he was instrumental in negotiating a $42.5 million nationwide settlement for a class of more than 200,000 Maytag customers.
- Served as co-lead counsel in a nationwide class settlement against IBM that affected more than 3million hard drive purchasers.

**Publications and Presentations:**
- Moderator, Class Actions, Annual Meeting of American Association of Justice, 2015, 2016
- Speaker, Class Actions, Annual Meeting of American Association of Justice, 2015, 2016
- Speaker, "Finding the Right Class Action", New Jersey Association of Justice, June, 2016
- Speaker, "Nuts and Bolts of MDL Practice", Class Action Symposium, Chicago, Illinois, June, 2016
- Speaker, Computer Technology and Consumer Products Class Actions", Consumer Attorneys of California 46th Annual Convention, November 2007
- Frequent speaker, American Association for Justice (formerly ATLA)
- Author, Distinguishing Individual from Derivative Claims in the Context of Battles for Corporate Control", 13 Del. J. Corp. L 579 (1998)
- Author, "Shareholder Rights Plans? Do They Render Shareholders Defenseless Against Their Own Management", 12 Del J. Corp, L. 991 (1997)
- Co-author, "Once Again, the Court Fails to Rein in RICO", Legal Times (April 27, 1992)
- Co-author, "Failed One-Share, One Vote Rule Let SEC Intrude in Boardroom", National LawJournal (October 8, 1990).



**Benjamin F. Johns**, a co-founding partner at Shub & Johns LLC, is a consumer protection advocate with nearly two decades of litigation experience. He is admitted to practice in all of the state and federal courts in Pennsylvania and New Jersey, and has personally argued in the Third Circuit, the D.C. Circuit, PA Supreme Court, and PA Commonwealth Court. Over the course of his career, Mr. Johns has taken and defended hundreds of depositions, argued and won dispositive motions (including contested motions for class certification), and been appointed to leadership positions by various courts across the country. He was recently described by the legal publication Law360 as being a "data breach specialist." He was the lead litigator at his prior firm in a case against Apple which resulted in a $50 million settlement and was the No. 1 ranked Consumer Fraud settlement in California for 2022 by TopVerdict.com.

Mr. Johns is currently serving as court appointed interim co-lead counsel in several consumer data breach class actions, including *Nelson v. Connexin Software Inc. d/b/a Office Practicum,* No. 2:22-cv-04676-JDW (E.D. Pa.); *In re NCB Management Services, Inc. Data Breach Litig.,* No. 2:23-cv-1236-KNS (E.D. Pa.); *In re Onix Group, LLC Data Breach Litig.* No. 23-2288-KSM (E.D. Pa.); *In re CorrectCare Data Breach Litig.,* No. 5:22-319-DCR (E.D. Ky.); *In re Community Health Systems, Inc. Data Sec. Litig.,* No. 3:23-cv-00285 (M.D. Tenn.); *In re R&B Corporation of Virginia d/b/a Credit Control Corporation, Data Security Breach Litig.,* No. 4:23-CV-66 (E.D. Va.); *Deevers v. Wing Financial Services LLC,* No. 22-CV-0550-CVE-JFJ (N.D. Okla.); and *Nelson v. Webster Bank, N.A.,* No. CV-23-6171285-S (Conn. Super. Ct.).

Mr. Johns was elected by fellow members of the Philadelphia Bar Association to serve a three-year term on the Executive Committee of the organization's Young Lawyers Division. He

also served on the Editorial Board of the Philadelphia Bar Reporter and the Board of Directors for the Dickinson School of Law Alumni Society. Mr. Johns has been published in the Philadelphia Lawyer magazine and the Philadelphia Bar Reporter.  While in college, Mr. Johns was on the varsity basketball team and spent a semester studying abroad in Osaka, Japan. He graduated from Harriton High School in 1998 as the then all-time leading scorer in the history of the boys' basketball program. Ben has been named a "Lawyer on the Fast Track" by The Legal Intelligencer, a "Top 40 Under 40" attorney by The National Trial Lawyers, and a Pennsylvania "Rising Star"/"Super Lawyer."

**Over the course of his career, Mr. Johns has provided substantial assistance in the prosecution of the following cases:**

- *In re Macbook Keyboard Litig.,* No. 5:18-cv-02813-EJD (N.D. Cal.) (Mr. Johns took and defended numerous depositions and successfully argued two motions to dismiss and co-argued plaintiffs' motion for class certification in this widely-covered case against Apple which ultimately settled for a $50 million common fund. In granting final approval to the settlement, the district court wrote that plaintiffs' counsel "achieved excellent results for the class.")

- *Kostka v. Dickey's Barbecue Restaurants Inc*., No. 3:20-CV-03424-K (N.D. Tex.) (Mr. Johns served as co-lead counsel in this consumer data breach case which resulted in a $2.35 million common fund settlement).

- *Udeen v. Subaru of Am., Inc.,* No. 18-17334 (RBK/JS) (D.N.J.) (Mr. Johns was co-lead counsel in this consumer class action involving allegedly defective infotainment systems in certain Subaru automobiles, which resulted a settlement valued at $6.25 million. At the hearing granting final approval of the settlement, the district court commented that the plaintiffs' team "are very skilled and very efficient lawyers…They've done a nice job.")

- *Breneman v. Keystone Health,* Case No. 2023-618 (Pa. Ct. Com. Pl.) (Mr. Johns was co-lead counsel in this medical data breach class action which resulted in a $900,000 common fund settlement).

- *Hughes v. UGI Storage Co.,* 263 A.3d 1144 (Pa. 2021) (Mr. Johns argued this precedent-setting *de facto* takings matter before the Pennsylvania Supreme Court in October of 2021, in which he secured a 6-0 reversal of the underlying Commonwealth Court decision that had affirmed the trial court's dismissal of the case)

- *In re Nexus 6P Product Liability Litig.*, No. 5:17-cv-02185-BLF (N.D. Cal.) (Mr. Johns served as co-lead counsel – and argued two of the motions to dismiss – in this defective smartphone class action.  The case resulted in a settlement valued at $9.75 million, which Judge Beth Labson Freeman described as "substantial" and an "excellent resolution of the case.")

- *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal.) (Mr. Johns served as court-appointed co-lead counsel in this consumer class action concerning allegedly defective MyFord Touch infotainment systems, which settled for $17 million shortly before trial.)

- *Weeks v. Google LLC*, 5:18-cv-00801-NC, 2019 U.S. Dist. LEXIS 215943, at *8-9 (N.D. Cal. Dec. 13, 2019) (Mr. Johns was co-lead counsel – and successfully argued against a motion to dismiss – in this defective smartphone class action. A $7.25 million settlement was reached, which Magistrate Judge Nathanael M. Cousins described as being an "excellent result.")

- *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC (D. Colo.) (Mr. Johns served as co-lead counsel of behalf of a class of millions of cardholders who were impacted by a data breach at Chipotle restaurants. After largely defeating a motion to dismiss filed by Chipotle, the case resulted in a favorable settlement for affected consumers. At the final approval of the settlement, the district court noted that class counsel has "extensive experience in class action litigation, and are very familiar with claims, remedies, and defenses at issue in this case.")

- *Bray et al. v. GameStop Corp.*, 1:17-cv-01365-JEJ (D. Del.) (Mr. Johns served as co-lead counsel for consumers affected by a data breach at GameStop. After largely defeating a motion to dismiss, the case was resolved on favorable terms that provided significant relief to GameStop customers. At the final approval hearing, the District Judge found the settlement to be "so comprehensive that really there's nothing else that I need developed further," that "the settlement is fair," "reasonable," and "that under the circumstances it is good for the members of the class under the circumstances of the claim.")

- *In re: Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litig.*, No. 15-cv-18-JLL-JAD (D.N.J.) (Mr. Johns served on the Plaintiffs' Steering Committee in this MDL proceeding, which involved allegedly defective wood-composite decking, and which ultimately resulted in a $20 million settlement.)

- *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.) (Mr. Johns was actively involved in these Multidistrict Litigation proceedings, which involve allegations that dozens of banks reorder and manipulate the posting order of debit transactions. Settlements collectively in excess of $1 billion were reached with several banks. Mr. Johns was actively involved in prosecuting the actions against U.S. Bank ($55 million settlement) and Comerica Bank ($14.5 million settlement).)

- *Physicians of Winter Haven LLC, d/b/a Day Surgery Center v. STERIS Corporation*, No. 1:10-cv-00264-CAB (N.D. Ohio) (Mr. Johns was the primary associate working on this case which resulted in a $20 million settlement on behalf of hospitals and surgery centers that purchased a sterilization device that allegedly did not receive the required pre-sale authorization from the FDA.)

- *West v. ExamSoft Worldwide, Inc.,* No. 14-cv-22950-UU (S.D. Fla.) (Mr. Johns was co-lead counsel in this case which resulted in a $2.1 million settlement on behalf of July 2014 bar exam applicants in several states who paid to use software for the written portion of the exam which allegedly failed to function properly)

- *Henderson v. Volvo Cars of North America, LLC,* No. 2:09-cv-04146-CCC-JAD (D. N.J.) (provided substantial assistance in this consumer automobile case that settled after the plaintiffs prevailed, in large part, on a motion to dismiss)

- *In re Marine Hose Antitrust Litig.,* No. 08-MDL-1888 (S.D. Fla.) (settlements totaling nearly $32 million on behalf of purchasers of marine hose.)

- *In re Philips/Magnavox Television Litig.,* No. 2:09-cv-03072-CCC-JAD (D. N.J.) (settlement in excess of $4 million on behalf of consumers whose flat screen televisions failed due to an alleged design defect. Mr. Johns argued against one of the motions to dismiss.)

- *Allison, et al. v. The GEO Group*, No. 2:08-cv-467-JD (E.D. Pa.), and *Kurian v. County of Lancaster*, No. 2:07-cv-03482-PD (E.D. Pa.) (settlements totaling $5.4 million in two civil rights class action lawsuits involving allegedly unconstitutional strip searches at prisons)



**Samantha E. Holbrook,** a partner at Shub & Johns LLC, has extensive experience in consumer protection class action litigation. Prior to joining the firm, Ms. Holbrook practiced at two different national class action law firms where she represented consumers and investors in nationwide class actions.  Ms. Holbrook has experience handling and litigating all aspects of the prosecution of national class action litigation asserting claims under state and federal law challenging predatory lending practices, product defects, breach of fiduciary duty, antitrust claims, consumer fraud and unfair and deceptive acts and practices in federal courts throughout the country.

Ms. Holbrook has also obtained favorable recoveries on behalf of multiple nationwide classes of borrowers whose insurance was force-placed by their mortgage services.

Ms. Holbrook received her law degree from Temple University Beasley School of Law. While in law school, she served as the President of the Moot Court Honor Society and President of the Student Animal Legal Defense Fund. She was also a member of Temple's nationally recognized Trial Team. Upon graduating, she served as an adjunct professor for Temple coaching its Trial Team from 2013-2018. Ms. Holbrook received her undergraduate degrees from the Pennsylvania State University in Political Science and Spanish. While in college, Ms. Holbrook spent a semester studying abroad in Sevilla, Spain. She is proficient in Spanish. Ms. Holbrook also currently serves as the Board President for Citizens for a No-Kill Philadelphia, a Philadelphia-

based animal welfare advocacy organization, and serves on the Board of Directors of City of Elderly Love, a senior-focused animal rescue organization.

Ms. Holbrook has been recognized by Pennsylvania Super Lawyers as a Rising Star for each year from 2020-2023. She has also been recognized as a Top Young Rising Attorney in Pennsylvania in 2020, and a Pennsylvania & Delaware Top Attorneys Rising Stars in 2021. She is admitted to practice in all federal and state courts in Pennsylvania and New Jersey.

**Over the course of her career, Ms. Holbrook has provided substantial assistance in the prosecution of the following cases:**

- *Suarez v. Nissan North America*, No. 3:21-cv-00393 (M.D. Tenn.) (appointed lead class counsel in a consumer class action alleging defective headlamps in Nissan Altima vehicles which reached a settlement valued at over $50 million that provides reimbursements, free repairs, and an extended warranty);

- *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-03424-K (N.D. Tex.) (appointed as additional interim class counsel on behalf of consumers whose sensitive payment card information was exposed in a data breach at Dickey's restaurant chains);

- *In re Wawa, Inc. Data Security Litig.*, No. 2:19-cv-06019-GEKP (E.D. Pa.) (achieved $12 million settlement on behalf of consumers whose sensitive payment card information was exposed to criminals as part of a highly-publicized data breach);

- *Lacher et al v. Aramark Corp., 2:19-cv-00687* (E.D. Pa. 2019) (represented a class of Aramark's current and former managers alleging that Aramark breached its employment contracts by failing to pay bonuses and restricted stock unit compensation to managers nationwide);

- *Turner v. Sony Interactive Entertainment LLC*, No. 4:21-cv-02454-DMR (N.D. Cal.) (class action lawsuit alleging that Sony's PlayStation 5 DualSense Controller suffers from a "drift defect" that results in character or gameplay moving on the screen without user command or manual operation of the controller thereby compromising its core functionality);

- *Board of Trustees of the AFTRA Retirement Fund, et al. v. JPMorgan Chase Bank, N.A.,* 09-CV-686 (SAS), 2012 WL 2064907 (S.D.N.Y. June 7, 2012) (approving $150 million settlement); and

- *In re 2008 Fannie Mae ERISA Litigation*, Case No. 09-cv-1350 (S.D.N.Y.) ($9 million settlement on behalf of participants in the Federal National Mortgage Association Employee Stock Ownership Plan).



**Damian Gomez** joined Shub & Johns LLC as an intake paralegal in March 2022. Damian graduated from the University of Texas at Austin in 2021 with a Bachelor's degree in History with a focus on Classical Studies, as well as a Certificate in Creative Writing. Damian's prior professional experiences include building relationship and communication skills with clientele while working as an Intake Specialist at Filevine, a legal software company. Various courses in copywriting and email marketing have alike prepared him for his initial role as intake paralegal at Shub & Johns.

Damian's current title at Shub & John's is Client Intake Specialist. His responsibilities include conducting widespread investigations and initial research into potential class action and consumer protection cases, interviewing and vetting potential clients and class representatives, and assisting in legal projects as necessary. Aside from legal assistance, Damian manages Shub & Johns's Marketing and Outreach ventures, writes for and oversees the Shub & Johns's website content, and runs Shub & Johns social media accounts.



**Nailah Bjotvedt** joined Shub & Johns LLC as a law clerk in January 2023. Nailah graduated from Drexel University in 2020 with a bachelor's degree in business administration, majoring in business and legal studies with a political science minor. Her prior professional experiences include serving as a law clerk for a prominent class action firm where she developed communication and writing skills. She is a third-year law student at Delaware Law School, graduating in May 2023. She currently assists staff attorneys at the law school's veterans law clinic, helping appeal adverse VA decisions.

Nailah's responsibilities at Shub include conducting widespread investigations and initial research into potential class action and consumer protection cases, interviewing and vetting potential clients and class representatives. She has been tasked with a wide variety of various legal projects and is actively exposed to all phases of the litigation process, assisting attorneys with filings, research, brief writing and more.



**Lacey Russo** began her career in the legal field in 2001, working in the Intellectual Property group at an international AmLaw 100 firm. She continued working on complex litigation matters, including consumer protection, ERISA, antitrust and fiduciary duty protection for over 15 years at a large plaintiffs' class action law firm before joining Shub & Johns in 2023. Lacey has worked on cases before state, federal and appellate courts across the country. She brings experience in assisting attorneys through every aspect of the litigation process.

Lacey studied at Villanova University and Algonquin College, graduating in 1999 with a bachelor's degree in paralegal studies.

Exhibit 5



FIRM RESUME

# WHO WE ARE

Established by members of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP, the firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights and have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar client service. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to leadership roles in prominent mass torts and class actions.

*Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder rights services, both domestically and globally.*

Milberg's previous litigation efforts helped to create a new era of corporate accountability that put big companies on notice. The strategic combination of four leading plaintiffs' firms offers clients expanded capabilities, greater geographical coverage, enhanced financial breadth, and increased operational capacity. It also enables the firm to serve diverse and global clients who are seeking to enforce their rights against well-financed corporations - wherever they operate.

**www.milberg.com**

# PRACTICE AREAS

## ANTITRUST & COMPETITION LAW

Today, on a global scale, consolidated corporate entities exercise dominating market power, but proper enforcement of antitrust law ensures a fair, competitive marketplace. Milberg prosecutes complex antitrust class actions against large, well-funded corporate defendants in healthcare, technology, agriculture, and manufacturing. Our leading practitioners successfully represent plaintiffs affected by price-fixing, monopolization, monopoly leveraging tying arrangements, exclusive dealing, and refusals to deal. The firm continues aggressively vindicating rights of plaintiffs victimized by antitrust violations, holding companies accountable for anticompetitive behavior.

## COMPLEX LITIGATION

With 50 years of vetted success, Milberg handles complex, high-stakes cases at any stage of the litigation process. Our attorneys have experience litigating complex cases for businesses and plaintiffs outside of the class action context, including business torts, contract disputes, anti-SLAPP motions, corporations, LLCs, partnerships, real estate, and intellectual property.

## CONSUMER PRODUCTS

Milberg's consumer litigation group focuses on protecting victims of deceptive marketing and advertising of goods and services, or those who have bought defective products. Our attorneys are experienced in handling a wide array of consumer protection lawsuits, including breach of contract, failure to warn, false or deceptive advertising of goods and services, faulty, dangerous, or defective products, warranty claims and unfair trade practices cases. Milberg has achieved real-world recoveries for clients, often requiring corporations to change the way they do business. Our team of attorneys has extensive experience representing plaintiffs against well-resourced and sophisticated defendants.

## CONSUMER SERVICES

Consumers have rights, and companies providing consumer services have a legal obligation to abide by contractual agreements made with customers. Companies must also follow state and federal laws that prohibit predatory, deceptive, and unscrupulous business practices. Milberg's Consumer Services litigation group protects consumers whose rights have been violated by improperly charged fees, predatory and discriminatory lending, illegal credit reporting practices, and invasion of privacy.
We also enforce consumer rights by upholding The Fair Credit Reporting Act and Telephone Consumer Protection Act.

## CLASS ACTION LAWSUITS

Milberg pioneered federal class action litigation, and is recognized as a leader in defending the rights of victims of corporate and large-scale wrongdoings. We have the manpower, resources, technology, and experience necessary to provide effective representation in nationwide class action lawsuits. Our attorneys have led class actions resulting in settlements of up to billions of dollars across a variety of practice areas, including defective consumer products, pharmaceutical drugs, insurance, securities, antitrust, environmental and toxic torts, consumer protection, and breach of contract.

## DANGEROUS DRUGS & DEVICES

For some patients, medication and medical devices improve their lives. For others, the drugs and equipment have questionable benefits at best, and serious, unintended side effects at worst. Taking on drug and device makers requires a law firm that can stand up to the world's largest, most poweful companies. Our defective drug lawyers have held leadership roles in many national drug and device litigations, recovering billions of dollars in compensation.

## DATA BREACH, CYBERSECURITY & BIOMETRIC DATA LAWSUITS

Technology changes faster than laws regulate it. Staying ahead of legal technical issues requires a law firm that can see the full picture of innovation and apply past lessons to navigate fast-moving developments, putting consumers ahead of corporate interests. Our data breach and privacy lawyers work at the cutting edge of technology and law, creating meaningful checks and balances against technology and the companies that wield it. Cybersecurity threats continue evolving and posing new consumer risks. Milberg will be there every step of the way to protect consumer privacy and hold big companies accountable.

## ENVIRONMENTAL & TOXIC TORTS LITIGATION

Litigation is key in fighting to preserve healthy ecosystems and hold environmental lawbreakers accountable. But in today's globalized world, pollutants—and polluters—are not always local. Corporations have expanded their reach and ability to cause harm. Our environmental litigation practice focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. The companies involved in harmful environmental practices are large, wealthy, and globally influential, but as an internationally recognized plaintiffs' firm, Milberg has the strength and resources to present clients seeking to enforce their environmental rights against well-financed corporations—wherever they operation.

## FINANCE & INSURANCE LITIGATION

Big banks and public insurance firms are obligated by their corporate charters to put shareholders' interests ahead of client interests. However, that doesn't mean they can deceive clients to profit at their expense. Milberg's attorneys handle hundreds of insurance-related disputes, including first party bad faith insurance cases, business interruption cases, and hurricane insurance cases. As one of the nation's stop class action law firms, we are well-positioned to pursue insurance bad faith cases on a statewide or nationwide basis.

## PUBLIC CLIENT REPRESENTATION

The ability of governments to serve and protect their residents is often threatened by the combination of lower revenues and rising costs. Budget shortfalls are increasing in part because private companies externalize costs, but while corporate profits grow, public interest pays the price. Effectuating meaningful change through litigation, Milberg partners with state and local governments to address the harms facing its residents. Internationally, Milberg's Public Client Practice has achieved success against global powerhouse corporations, including drug, tobacco, mining, and oil and gas companies.

## SECURITIES LITIGATION

Over 50 years ago, Milberg pioneered litigation claims involving investment products, securities, and the banking industry by using class action lawsuits. Our litigation set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg continues to aggressively pursue these cases on behalf of institutional and individual investors harmed by financial wrongdoing. Inventors of securities class actions, Milberg has decades of experience holding companies accountable both in the United States and globally.

## WHISTLEBLOWER & QUI TAM

Blowing the whistle on illegal or unethical conducted is a form of legally protected speech. Milberg's whistleblower attorneys have led actions that returned hundreds of millions of dollars in ill-gotten gains, resulting in significant awards of our clients. Our legacy of standing up to corporate power extends to advocating for greater transparency. In addition to representing whistleblowers, we fight back against corporate-backed laws seeking to deter them from making disclosures.

*"Scoring impressive victories against companies guilty of outrageous behavior."*

- FORBES

*"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*

**- NEW YORK TIMES**

## LEADERSHIP ROLES

In re: Google Play Consumer Antitrust Litigation, 20-CV-05761 (N.D. Cal.)
In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation MDL No. 2973
In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation
In re: Blackbaud Data Privacy MDL No. 2972
In re: Paragard IUD Products Liability Litigation MDL No. 2974
In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation MDL No. 3009
In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation
In re: Allergan Biocell Textured Breast Implant Product Liability Litigation

In re: Zicam
In re: Guidant Corp. Implantable Defibrillators
In re: Ortho Evra
In re: Yaz
In re: Kugel Mesh
In re: Medtronic Sprint Fidelis Leads
In re: Stand 'N Seal
In re: Chantix
In re: Fosamax
In re: Olmesartan (Benicar)
In re: Onglyza (Saxagliptin) And Kombiglyze XR
In re: Risperdal and Invega Product Liability Cases

In re: Mirena
In re: Incretin
In re: Reglan
In re: Levaquin Litigation
In re: Zimmer Nexgen Knee
In re: Fresenius Granuflo
In re: Propecia
In re: Transvaginal Mesh
In re: Fluoroquinolones
In re: Depuy Pinnacle
In re: Recalled Abbott Baby Formula

## NOTABLE RECOVERIES

$3.2 Billion Settlement - In re: Tyco International Ltd., Securities Litigation, MDL 1335 (D.N.H.)

$4 Billion Settlement - In re: Prudential Insurance Co. Sales Practice Litigation, No. 95-4704 (D.N.J.)

$1.14 Billion Settlement - In Re: Nortel Networks Corp. Securities Litigation, No. 01-1855 (S.D.N.Y.)

$1 Billion-plus Trial Verdict - Vivendi Universal, S.A. Securities Litigation

$1 Billion Settlement - NASDAQ Market-Makers Antitrust Litigation

$1 Billion Settlement - W.R. Grace & Co.

$1 Billion-plus Settlement - Merck & Co., Inc. Securities Litigation

$775 Million Settlement - Washington Public Power Supply System Securities Litigation

# LOCATIONS

**CALIFORNIA**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

402 West Broadway, Suite 1760
San Diego, California 92101

**FLORIDA**
2701 South Le Jeune Road
Coral Gables, Florida 33134

**ILLINOIS**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

**KENTUCKY**
19 North Main Street
Madisonville, Kentucky 42431

**LOUISIANA**
5301 Canal Boulevard
New Orleans, Louisiana 70124

**MICHIGAN**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

**NEW JERSEY**
1 Bridge Plaza North, Suite 275
Fort Lee, New Jersey 07024

**NEW YORK**
100 Garden City Plaza,
Garden City
New York 11530

405 E 50th Street
New York 10022

**NORTH CAROLINA**
900 West Morgan Street
Raleigh, North Carolina 27603

**SOUTH CAROLINA**
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

**TENNESSEE**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

518 Monroe Street
Nashville, Tennessee 37208

**PUERTO RICO**
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

**WASHINGTON**
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

**WASHINGTON, D.C.**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015–2052

**NETHERLANDS**

**GERMANY**

**PORTUGAL**

**UNITED KINGDOM**



www.milberg.com

# **Selected Resume**

**Gary M. Klinger** is a Partner at Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg").[1] At only 37-years old, Mr. Klinger has gained extensive experience serving as leadership in numerous high-profile consumer and privacy class actions. Notably, Mr. Klinger has settled on a class-wide basis more than forty class actions, the majority of which were privacy cases, as lead or co-lead counsel recovering more than a hundred million dollars for consumers in the process. Some of Mr. Klinger's representative cases include the following:

- Carrera Aguallo v. Kemper Corp., Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger obtained final approval of a class-wide settlement valued at $17.6 million for a major class action involving more than six million consumers);
- Heath v. Insurance Technologies Corp., No. 21-cv-01444 (N.D. Tex.) (where Mr. Klinger obtained approval of a class-wide settlement for $11 million);
- In Re: Procter & Gamble Aerosol Products Marketing and Sales Practices Litigation, 2:22-md-03025-MHW-CMV (N.D. Ohio) (where Mr. Klinger serves as one of the lead attorneys in multi-district litigation against Procter & Gamble and successfully reached a settlement valued over $10 million);
- Smid v. Nutranext, LLC, Case No. 20L0190 (Cir. Ct. St. Clair, County) (class counsel in consumer class action involving heavy metals in prenatal vitamins; final approval granted to $7M settlement)
- In re: Herff Jones Data Breach Litigation, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.) (where Mr. Klinger obtained approval of a class-wide settlement for $4.35 million);
- In re: CaptureRx Data Breach Litigation, No. 5:21-cv-00523-OLG (W.D. Tex.) (where Mr. Klinger obtained approval of a class-wide settlement for $4.75 million);
- In re Arthur J. Gallagher Data Breach Litigation, No. 1:21-cv-04056 (N.D. Ill.) (where Mr. Klinger serves as appointed co-lead counsel to represent more than 3 million class members in a major class action).

Mr. Klinger has also successfully litigated class actions through contested class certification. In *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members. *Id.* At the time, it was the largest litigation class ever to be certified for violations of the Telephone Consumer Protection Act. In a nationwide class settlement hearing in the U.S. District Court for the Northern District of California, Judge Richard Seeborg personally commended Mr. Klinger for "quite a substantial recovery for class members." Judge Seeborg further stated he could not recall any class action case where "the amounts going to each class member were as substantial" as that obtained by Mr. Klinger (and his co-counsel).

Mr. Klinger is admitted to practice in the State of Illinois and the following federal courts: The U.S. District Court of Colorado, The U.S. District Court of Central District of Illinois, The U.S.

---

[1] A copy of Milberg's Firm Resume is attached hereto as Exhibit A.

District Court of Northern District of Illinois, The U.S. District Court of Southern District of Illinois, The U.S. District Court of Southern District of Indiana, The U.S. District Court of Eastern District of Michigan, The U.S. District Court of District of Nebraska, The U.S. District Court of Eastern District of Texas, and The U.S. District Court of Eastern District of Wisconsin.

Mr. Klinger received his undergraduate degree and juris doctorate (*cum laude*) from the University of Illinois.

Mr. Klinger is presently pursuing his Masters of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law.

Mr. Klinger is also a member of the International Association of Privacy Professionals.

# EXHIBIT 6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| IN RE WRIGHT & FILIPPIS, LLC DATA SECURITY BREACH LITIGATION | Case No.: 2:22-cv-12908-SFC<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

### [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVIDING NOTICE

This case is before the Court on Plaintiffs Chiquita Braggs's, Scott Hamilton's, Diane Huff's, Shawn Kolka's, and Craig Mejia's (collectively, "Plaintiffs") Unopposed Motion for Preliminary Approval of the Class Action Settlement (the "Motion"). The Court, having considered the Motion, the supporting brief, the Parties' Settlement Agreement dated October 13, 2023 (the "Settlement Agreement"), attached hereto as Exhibit 1; the proposed Long Form Notice, Short Form Notice, and Claim Form (attached as Exhibits A, B, and C, respectively, to the Settlement Agreement); the pleadings and other papers filed in this Action; and the statements of counsel and the Parties, and for good cause shown.

1

**IT IS HEREBY ORDERED** as follows:

## Preliminary Approval of Settlement Agreement

1.     Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

2.     This Court has jurisdiction over the Litigation, Plaintiffs, all Settlement Class Members, Defendant Wright & Filippis, LLC ("W&F" or "Defendant"), and any party to any agreement that is part of or related to the Settlement.

3.     The Court finds that the proposed Settlement set forth in the Settlement Agreement is sufficiently fair, reasonable and adequate such that it is hereby preliminary approved and notice of the settlement should be provided to the Settlement Class Members and that a hearing shall be held as set forth below.

## Class Certification

4.     Solely for purposes of the Settlement, the Court conditionally certifies the following class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) ("Settlement Class"):

> All natural persons whose Private Information was compromised in the Data Breach, including all individuals who were sent the Notice of Data Privacy Incident on or around November 18, 2022.

5.     Excluded from the Settlement Class are: (i) Defendant and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court

of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

6.     Subject to final approval of the Settlement, the Court finds and concludes for settlement purposes only that the prerequisites to a class action, set forth in Fed. R. Civ. P. 23(a) and (b), are satisfied in that:

    a.  The Settlement Class is so numerous that joinder of all members is impracticable;

    b.  There are questions of law of fact common to the Settlement Class;

    c.  Plaintiffs and Class Counsel (as defined below) fairly and adequately represent that Settlement Class;

    d.  The claims of Plaintiffs are typical of those of Settlement Class Members;

    e.  Common issues predominate over any individual issues affecting the members of the Settlement Class;

    f.  Plaintiffs fairly and adequately protect and represent the interests of all members of the Settlement Class, and Plaintiffs' interests are aligned with the interests of all other members of the Settlement Class; and

3

      g.  Settlement of the Litigation on a class-action basis is superior to other means of resolving this matter.

7.    The Court appoints The Miller Law Firm P.C. as Chair of Settlement Class Counsel and Migliaccio & Rathod LLP, Shub & Johns LLP, and Milberg Coleman Bryson Phillips Grossman, PLLC as Settlement Class Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

8.    The Court hereby appoints Chiquita Braggs, Scott Hamilton, Diane Huff, Shawn Kolka, and Craig Mejia as the Class Representatives for settlement purposes only on behalf of the Settlement Class.

## Notice to Settlement Class Members

9.    Pursuant to Federal Rule of Civil Procedure 23(e), the Court approves the Long Form Notice and the Short Form Notice (the "Settlement Notices"), attached as Exhibits A and B, respectively, to the Settlement Agreement and attached to this Order as Exhibit 1, and finds that the dissemination of the Settlement Notices substantially in the manner and form set forth in §§ 6.1-6.3 of the Settlement Agreement attached as Exhibit 1 to this Order complies fully with the requirements of the Federal Rule of Civil Procedure 23 and due process of law, and is the best notice practicable under the circumstances.

10.    The Court further approves the Claim Form, substantially similar to Exhibit C to the Settlement Agreement attached as Exhibit 1 to this Order, which will be available both on the Settlement Website and by request.

11.    The notice procedures described above are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

12.    The Court hereby orders that, within five (5) days of entry of this Order, W&F shall provide to the Claims Administrator the contact information of Settlement Class Members, including names and physical addresses, that is currently in W&F's possession.

13.    No later than thirty-five (35) days from the date of this Order preliminarily approving the Settlement ("Notice Commencement Date"), Class Counsel shall cause the Claims Administrator to send via U.S. mail the Short Form Notice to each Settlement Class member and shall cause to be published the Long Form Notice, thereby making it available to the rest of the Settlement Class as stated in the proposed Notice Plan.

14.     Contemporaneously with seeking Final Approval of the Settlement, Class Counsel and W&F shall cause to be filed with the Court an appropriate affidavit or declaration from the Claims Administrator with respect to complying with the Notice Plan.

15.     All costs incurred in disseminating and otherwise in connection with the Settlement Notices shall be paid from the Settlement Fund.

16.     The Settlement Notices and Claim Form satisfy the requirements of due process and of Rule 23(e) of the Federal Rules of Civil Procedure and thus are approved for dissemination to the Settlement Class. The Claim Form shall be made available to the Settlement Class as set forth on the Notice Plan and shall be made available to any potential Class Member that requests one.

### Responses by Settlement Class Members and the Scheduling of the Final Approval Hearing

17.     Settlement Class Members may opt-out or object up to sixty (60) days from the Notice Commencement Date (the "Opt-Out Deadline").

18.     Any members of the Settlement Class who or that wishes to be excluded ("opt out") from the Settlement Class must send a written request to the designated Post Office Box established by the Claims Administrator postmarked on or before the Opt-Out Deadline. Members of the Settlement Class may not opt-out of the Settlement by submitting requests to opt-out as a group or class, but must in each instance individually and personally sign and submit an opt-out request. All

6

Settlement Class Members that opt-out of the Settlement will not be eligible to receive any benefits under the Settlement, will not be bound by any further orders or judgments entered for or against the Settlement Class, and will preserve their ability to independently pursue any claims they may have against W&F.

19.    Any member of the Settlement Class who does not properly and timely opt-out of the Settlement shall, upon entry of the Order and Final Judgment, be bound by all the terms and provisions of the Settlement Agreement and Release, whether or not such Settlement Class Member objected to the Settlement and whether or not such Settlement Class Member received consideration under the Settlement Agreement.

20.    The Court adopts the following schedule for the remaining events in this case, which ensures that the appropriate state and federal officials are served with the notification required by the Class Action Fairness Act:

| Event | Date |
|---|---|
| W&F provides CAFA Notice required by 28 U.S.C. § 1715(b) | Within 10 days after the filing of this Motion |
| W&F to provide contact information for Settlement Class Members | Within 5 days after entry of Preliminary Approval Order |
| Notice Program commences | Within 35 days after entry of Preliminary Approval Order |
| Notice Program concludes | Within 45 days after entry of Preliminary Approval Order |

| Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d): | 90 days after the appropriate governmental offices are served with CAFA notice |
|---|---|
| Postmark deadline for request for exclusion (opt-out) or objections: | 60 days after commencement of Notice Program |
| Deadline to file Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards: | No later than 14 days prior to the deadline for request for exclusion (opt-out) or objections |
| Deadline to file Plaintiffs' Motion for Final Approval of the Settlement Agreement | No later than 14 days prior to the Final Fairness Hearing |
| Postmark/Filing deadline for members of the Class to file claims | 90 days after commencement of the Notice Program |
| Deadline for Plaintiffs to file any Response to Objections or Supplement to Motion for Final Approval | No later than 7 days prior to the Final Fairness Hearing |
| Deadline for Claims Administrator to file or cause to be filed, if necessary, a supplemental declaration with the Court | At least 5 days prior to the Final Fairness Hearing |
| Final Approval Hearing | To be set by the Court and held at the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, MI 48226 in Courtroom ___ and/or by virtual attendance, details of which to be provided before the Final Approval Hearing on the Settlement Website. |

21.    A hearing on the Settlement (the "Final Approval Hearing") shall be

held before this Court on a date set by the Court.

22.    At the Final Approval Hearing, the Court will consider (a) the fairness, reasonableness, and adequacy of the proposed class Settlement and whether the Settlement should be granted final approval by the Court; (b) dismissal with prejudice of the Litigation; (c) entry of an order including the Release; (d) entry of the Final Approval Order; and (e) entry of final judgment in this Litigation. Class Counsel's application for award of attorney's fees and costs, and request for the Court to award a service award to the named Plaintiffs, shall also be heard at the time of the hearing.

23.    The date and time of the Final Approval Hearing shall be subject to adjournment by the Court without further notice to the members of the Settlement Class, other than that which may be posted by the Court. Should the Court adjourn the date for the Final Approval Hearing, that shall not alter the deadlines for mailing and publication of notice, the Opt-Out deadline, or the deadlines for submissions of settlement objections, claims, and notices of intention to appear at the Final Approval Hearing unless those dates are explicitly changed by subsequent Order. The Court may also decide to hold the hearing via zoom or telephonically. Instructions on how to appear at the Final Approval Hearing will be posted on the Settlement Website.

24.    Any person or entity who or which does not elect to be excluded from the Settlement Class may, but need not, enter an appearance through its own

attorney. Settlement Class Members that do not timely object or opt out and that do not have an attorney enter an appearance on their behalf will be represented by Class Counsel.

25.     Any person or entity who or which does not elect to be excluded from the Settlement Class may object to the proposed Settlement. Any Settlement Class Member may object to, among other things, (a) the proposed Settlement, (b) entry of Final Approval Order and the judgment approving the Settlement, (c) Class Counsel's application for fees and expenses, or (d) the service award request, by mailing a written objection, with a postmark date no later than the Objection Date, to Class Counsel and W&F's counsel. The Settlement Class Member making the objection (the "Objector") or his or her counsel may also file an objection with the Court through the Court's Electronic Court Filing ("ECF") system, with service on Class Counsel and W&F's Counsel made through the ECF system. For all objections mailed to Class Counsel and counsel for W&F, Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement.

26.     The Objector's objection must be either (1) filed with the Court no later than sixty (60) days after the Notice Commencement Date or (2) mailed to Class Counsel and W&F's counsel, with a postmark date of no later than sixty (60) days after the Notice Commencement Date. To be valid, the objection must include: (i) the Objector's full name and address; (ii) the case name and docket number, *In Re*

10

*Wright & Filippis, LLC Data Security Breach Litigation*, Case No. 2:22-cv-12908-SFC-EAS (E.D. Mich.); (iii) information identifying the Objector as a Settlement Class Member, including proof that the Objector is a member of the Settlement Class (e.g., copy of the Objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining why the Objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the Objector believes applicable; (v) the identity of any and all counsel representing the Objector in connection with the objection; (vi) a statement whether the Objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the Objector's signature or the signature of the Objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.

27.     Only Settlement Class Members that have filed and served valid and timely notices of objection shall be entitled to be heard at the Final Approval Hearing. Any Settlement Class Member who does not timely file and serve an objection in writing in accordance with the procedure set forth in the Class Notice and mandated in this Order shall be deemed to have waived any objection to (a) the Settlement; (b) the Release; (c) entry of Final Approval Order or any judgment; (d) Class Counsel's application for fees, costs, and expenses; and/or (e) the service

award request for the named Plaintiffs, whether by appeal, collateral attack, or otherwise.

28.    Settlement Class Members need not appear at the hearing or take any other action to indicate their approval of the Settlement.

29.    Upon entry of the Order and Final Judgment, all members of the Settlement Class that have not personally and timely requested to be excluded from the Settlement Class will be enjoined from proceeding against W&F with respect to all of the Released Claims.

30.    W&F shall cause to be prepared and sent all notices that are required by the Class Action Fairness Act of 2005 ("CAFA") as specified in 28 U.S.C. § 1715. The costs associated with providing notice under CAFA shall be paid from the Settlement Fund.

31.    Class Counsel and counsel for W&F shall cooperate promptly and fully in the preparation of such notices, including providing W&F with any and all information in its possession necessary for the preparation of these notices. W&F shall provide, or cause to be provided, courtesy copies of the notices to Class Counsel for the purpose of implementing the settlement. W&F shall provide notice to Class Counsel of compliance with the CAFA requirements within ten (10) days of providing notice to Attorneys General under CAFA.

## Administration of the Settlement

32.     The Court hereby appoints the claims administrator proposed by the parties, Epiq Class Action & Claims Solutions, Inc. ("Claims Administrator"). Responsibilities of the Claims Administrator shall include: (a) establishing a post office box for purposes of communicating with Settlement Class Members; (b) disseminating notice to the Class; (c) developing a website to enable Settlement Class Members to access documents; (d) accepting and maintaining documents sent from Settlement Class Members relating to claims administration; and (e) distributing settlement checks to Settlement Class Members. Pursuant to the Settlement Agreement, the Claims Administrator and costs of administration shall be paid from the Settlement Fund.

33.     In the event the Settlement Agreement and the proposed Settlement are terminated in accordance with the applicable provisions of the Settlement Agreement—the Settlement Agreement, the proposed Settlement, and all related proceedings shall, except as expressly provided to the contrary in the Settlement Agreement, become null and void, shall have no further force and effect, and Settlement Class Members shall retain all of their current rights to assert any and all claims against W&F and any other Released Entity, and W&F and any other Released Entities shall retain any and all of their current defenses and arguments thereto (including but not limited to arguments that the requirements of Fed. R. Civ.

P. 23(a) and (b)(3) are not satisfied for purposes of continued litigation). The Litigation shall thereupon revert forthwith to its respective procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

34.     Neither this Order nor the Settlement Agreement nor any other settlement-related document nor anything contained herein or therein or contemplated hereby or thereby nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by W&F as to the validity of any claim that has been or could have been asserted against it or as to any liability by it as to any matter set forth in this Order, or as to the propriety of class certification for any purposes other than for purposes of the current proposed Settlement.

**IT IS SO ORDERED.**


Dated: _____          _____
                                     The Honorable Sean F. Cox
                                     United States District Court Judge